# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JERRY NATALE, on behalf of himself and all others similarly situated | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| PFIZER INC., a Delaware Corporation | ) ) ) |
| Defendant. | ) ) ) |

Civil No.: _____

# 05 10590 WGY

RECEIPT # _____
AMOUNT $ _150 00_____
SUMMONS ISSUED_N/A_____
LOCAL RULE 4.1_____
WAIVER FORM _____
MCF ISSUED_____
BY DPTY. CLK._M.P._____
DATE ____3/25/05_____

MAGISTRATE JUDGE _JGD___

## NOTICE OF REMOVAL

TO:    United States District Court for the District of Massachusetts

Pursuant to 28 U.S.C. §1441, *et seq.,* Defendant Pfizer Inc. ("Pfizer") hereby removes the state court action, *Jerry Natale v. Pfizer Inc.,* Civil Action No. 05-494, from the Superior Court of Massachusetts, Middlesex County, to the United States District Court for the District of Massachusetts, and alleges as follows:

1.    This action is brought by plaintiff seeking certification of a statewide class consisting of all "Massachusetts consumers who purchased Listerine during the Class Period. (February 11, 2002 through the present)." Complaint ("Compl.") ¶ 40. Plaintiff asserts a claim under common law fraud. Plaintiff, on behalf of himself and the proposed class members, seeks, *inter alia:* (1) "damages, including the amounts that [class members] paid to purchase Listerine during the Class Period"; (2) "attorneys' fees and costs of suit"; and (3) [s]uch other relief as this Court deems just and appropriate." *See* Compl. ¶ 51; Ad Damnum Clause.

2.      There is federal diversity jurisdiction over this putative nationwide class action pursuant to the provisions of P.L. 109-2 (the "Class Action Fairness Act" or the "Act"), codified at 28 U.S.C. §§ 1332(d), 1453, because: (1) the putative class action consists of at least 100 proposed class members; (2) the citizenship of at least one proposed class member is different from that of Pfizer, the only defendant; and (3) the matter in controversy, after aggregating the claims of the proposed class members, exceeds $5 million, exclusive of interest and costs. *See* Point I, *infra*.

## I.      JURISDICTIONAL BASIS FOR REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT

3.      In the Class Action Fairness Act, Congress granted the federal courts diversity jurisdiction over putative class actions where: (1) the putative class action consists of at least 100 proposed class members; (2) the citizenship of at least one proposed class member is different from that of the defendant; and (3) the matter in controversy, after aggregating the claims of the proposed class members, exceeds $5 million, exclusive of interest and costs. P.L. 109-2 § 4(a). Each of these requirements is satisfied here.

## A.      <u>Number of Class Members</u>

4.      Plaintiff brings this action on behalf of all "Massachusetts consumers who purchased Listerine during the Class Period. (February 11, 2002 through the present)." Complaint ("Compl.") ¶ 40. Plaintiff alleges "it is apparent that the number of consumers of Listerine would be at least in the tens of thousands." *Id.* ¶ 41. Accordingly, the requirement that the number of members in the putative class be 100 or more is satisfied. P.L. 109-2 § 4(a)(5).

## B.      <u>Diversity of Citizenship</u>

2

5.     The complaint alleges that the named plaintiff (Jerry Natale) is a resident of the State of Massachusetts. Compl. ¶ 3. Upon information and belief, at all relevant times, the named plaintiff is, and was, a citizen of the State of Massachusetts. Plaintiff seeks certification of a proposed statewide class consisting of all "Massachusetts consumers who purchased Listerine during the Class Period. (February 11, 2002 through the present)." *Id.* ¶ 40. Therefore, at all relevant times, the proposed class members include persons who are not citizens of either Delaware or New York.

6.     At all relevant times, defendant Pfizer is, and was, a corporation existing under the laws of the State of Delaware, having its principal place of business in the State of New York, and, accordingly, is a citizen of Delaware and New York.

7.     Under 28 U.S.C. § 1332(d)(2) (as amended by P.L. 109-2), because there is diversity of citizenship between at least one proposed class member and Pfizer, the requisite diversity of citizenship is satisfied.

## C.     Amount in Controversy

8.     Plaintiff, on behalf of himself and the proposed class members, seeks, *inter alia:* (1) "damages, including the amounts that [class members] paid to purchase Listerine during the Class Period"; (2) "attorneys' fees and costs of suit; and (3) [s]uch other relief as this Court deems just and appropriate." *See* Compl. ¶ 51; Ad Damnum Clause. Plaintiff asserts that because of "the prevalence of Listerine within this Commonwealth . . . the number of consumers of Listerine would be at least in the tens of thousands"; moreover, plaintiff seeks to represent a proposed class of all "Massachusetts consumers who purchased Listerine . . . ([from] February 11, 2002 through the present)." *Id.* ¶ 40, 41. Given that the prospective class represents an overwhelming number of consumers who purchased

Listerine over a three-year period, it is clear that the aggregate claims of all class members exceed $5 million, exclusive of interest and costs. Accordingly, the requisite amount in controversy for federal diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332(d)(2) & (6) (as amended by P.L. 109-2), is satisfied.[1]

9.      The statement in the complaint that neither plaintiff "nor any individual member of the class has damages exceeding $75,000 each" is irrelevant for the purposes of removal under the Class Action Fairness Act. Compl. ¶ 6. First, the statement does not in any way limit the *aggregate* amount claimed by all of the proposed class members in meeting the $5 million jurisdictional threshold under the Class Action Fairness Act. P.L. 109-2 § 4(a). Second, the statement is ineffective because plaintiff has failed "to stipulate or otherwise formally commit that under no circumstances would [plaintiff] seek or accept more" than $75,000. E.g., *Gabrielle v. Allegro Resorts Hotels,* 210 F. Supp. 2d 62, 66 (D.R.I. 2002). Indeed, under Massachusetts law, plaintiff's damages are not limited to the amount pled in the complaint, and he "may be awarded greater damages than the ad damnum clause." Reporter's Notes, *Mass. R. Civ. P. 54(c)* (1973); *see also Republic Floors of New England, Inc. v. Weston Racquet Club, Inc.,* 520 N.E.2d 160, 166 (Mass. App. Ct. 1988).

**D.      The Class Action Fairness Act Applies to this Action.**

10.     Section 9 of the Class Action Fairness Act provides that "[t]he amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act [February 18, 2005]." *See* P.L. 109-2 § 9. Under the Class Action

---

[1] Pfizer does not concede that the named plaintiff or any proposed class member would be entitled to such relief or any of the relief sought in the complaint. However, the plaintiff's "claim, whether well or ill founded in fact, fixes the right of the defendant to remove." *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 294 (1938).

Fairness Act, an action is "commenced" when it is commenced in federal court. Because this action is being commenced in federal court "on or after the date of enactment" of the Class Action Fairness Act, the Act applies to this action.

11.    A wealth of authority holds that a jurisdictional statute, applicable only to actions "commenced on or after" the effective date, applies to actions removed to federal court after the effective date, even though the action was filed in state court before the effective date. *Cedillo v. Valcar Enters., 773* F. Supp. *932 (N.D.* Tex. 1991); *Hunt v. Transport Indem. Ins. Co.,* 1990 WL *192483* (D. Hawaii July *30,* 1990); *Abernathy v. Consol. Cab Co.,* 169 F. Supp. 831 (D. Kan. 1959); *Casteel v. Great Southern Trucking Co.,* 167 F. Supp. *435 (E.D.* Tenn. 1958); *Lorraine Motors, Inc. v. Aetna Cas. & Sur. Co.,* 166 F. Supp. 319 (E.D.N.Y. 1958).

*12.*    In *Cedillo,* the court held that the term "commenced" should be read as com-menced in federal court — rather than state court — "because the pertinent time for determining federal jurisdiction is the date on which such jurisdiction is invoked." *Cedillo,* 773 F. Supp. at 939. The court there expressly addressed an issue virtually identical to the one presented by this removal; namely, whether a statute expanding federal jurisdiction — the Supplemental Jurisdiction statute *(28 U.S.C. § 1367)* — applied to an action filed in state court before the statute's effective date, but removed after the effective date. As here, Section 1367 provided that it applied only to "actions *commenced* on or after" the effective date. P.L. 101-650, title III, §310(c) (emphasis added). In denying remand, the court in *Cedillo* held that the new statute was "fully applicable" to the removed action because the date federal jurisdiction was first "invoked" was after the effective date of the statute, and thus the action was "commenced" after the effective date. 773 F. Supp. at 939.

13.    Similarly, in *Lorraine Motors,* the court expressly considered whether an amendment to the federal jurisdiction statute (increasing the minimum jurisdictional amount from $3,000 to $10,000) — which, as here, applied only to "actions *commenced* on or after the date of the enactment" (P.L. *85-554, § 3;* emphasis added) — applied to an action filed in state court before the effective date and removed to federal court after the effective date. The court held that the term "commenced" means "actions commenced in the [federal] District Court, whether by original jurisdiction or removal" on or after the effective date, and thus the new jurisdictional provision applied to the action. 166 F. Supp. at 323.

14.    In *Abernathy,* the court considered the identical question presented by *Lorraine Motors.* Citing *Lorraine Motors* with approval, the court in *Abernathy* held that it "must rule" that the action removed to federal court after the date of enactment was "commenced' after the date of the enactment" and the new jurisdictional provisions applied to the removed action. 169 F. Supp. at 834.

15.    The court in *Casteel* also considered the same question. Holding that the term "commenced" "means commenced in the federal court, the court held, relying on the principle set forth in a leading treatise, that "the law in effect at the time of the application to remove controls. 167 F. Supp. at 436 (citing 76 C.J.S. Removal of Causes § 2). *Accord, Hunt v. Transport Indem. Ins. Co.,* 1990 WL 192483 (D. Hawaii July 30, 1990) (action "commenced" when removed to federal court and new minimum amount in controversy requirement applied to action).

16.    As in *Cedillo, Lorraine Motors, Abernathy, Casteel* and *Hunt,* in determining when this removed action was "commenced" for purposes of the applicability of the Class Action Fairness Act (expanding the scope of federal jurisdiction), the relevant date is the

first time federal "jurisdiction is invoked." *Cedillo,* 773 F. Supp. at 939. The Class Action Fairness Act is "fully applicable," *id.,* to this removed action because federal jurisdiction is first invoked on March 25, 2005, and thus the action is "commenced" in federal court after the effective date of the Act, February 18, 2005.

17.    Moreover, when Congress has intended that a removal statute apply only to cases "commenced" in state court after the statute's effective date, Congress has explicitly so stated. Thus, in 1986, when Congress amended the removal statute to permit removal of an entire action that contains state law claims and a separate and independent federal law claim, Congress provided that the amendment would "apply with respect to claims in civil actions commenced *in State courts* on or after the date of the enactment." P.L. 99-336, § 3(b), 100 Stat. 633 (June 19, 1986) (emphasis added). Because Congress did not expressly include the limiting language "in State courts in the Class Action Fairness Act, the Act applies to actions filed in state court prior to the effective date, but removed (and thus "commenced" in federal court) on or after the effective date.

18.    Applying the Class Action Fairness Act to cases in which federal jurisdiction is invoked on or after the Act's date of enactment is consistent with the express "purpose" of the Act: to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." P.L. 109-2, § 2(b)(2).

19.    The Act's legislative history reflects that the purpose of the Act was to *"encourage* the exercise of federal jurisdiction over class actions." S. Rep. 108-123 at 45 (emphasis added).

20. Consistent with the Congressional intent to expand federal jurisdiction, the term "commenced" should be interpreted as "commenced in federal court" and thus authorizes federal courts to exercise jurisdiction over any case removed on or after the effective date.

21. This putative class action seeking recovery from an out-of-state defendant is precisely the type of "abuse" that Congress sought to remedy in enacting the Class Action Fairness Act. *See* P.L. 109-2, § 2(a)(4)(B) (finding that state court judges were "sometimes acting in ways that demonstrate bias against out-of-State defendants"). To construe the term "commenced" as anything other than "commenced in federal court" and preclude federal jurisdiction over this action would be contrary to Congress' intent to expand the number of cases (and, in particular, class actions) subject to federal jurisdiction.

22. Plaintiff may seek to rely on a recent district court decision in another Circuit holding that the Class Action Fairness Act did not apply to an action filed in state court prior to the effective date, but removed after the effective date. *Pritchett v. Office Depot, Inc.,* 2005 WL 563979 (D. Col. Mar. 9, 2005), *petition for permission to appeal denied* (10th Cir. Mar.18, 2005). *Pritchett* is not controlling here.

23. First, in contravention of the requirement in 28 U.S.C. § 1446(b) that an action be removed within 30 days of service of the complaint, the defendant in *Pritchett* removed the action almost two years after service, and, indeed, after the June 2004 certification of a class in the state court. 2005 WL 563979, at *1. That is, the defendant attempted to apply the Class Action Fairness Act retroactively to revive a right to remove that had expired years earlier. By contrast, here Pfizer *timely* removed this action from state court within 30 days of service of the complaint. Accordingly, the *Pritchett* court's concern

that permitting removal of that action "would permit the removal of nearly every presently-pending class action in every state court, resulting in a sudden tidal wave of filings on an already burdened federal judiciary, rather than the gradual, incremental flow of newly-filed class actions" *(id.* at *4), is not present here. Moreover, here, unlike in *Pritchett*, where the class has already been certified, applying the Act would not "deem certain substantive provisions of the Act [where a class had already been certified] to apply to presently-pending cases, potentially frustrating the expectations of current litigants." *Id.* at *4. Because the Act is only being applied prospectively to actions commenced in federal court after the effective date – and because of the requirement that the action be removed within 30 days of service — there is no risk of the Act disrupting cases where a class has already been certified.

24.    Second, as in *Cedillo* – a decision that *Pritchett* did not address -- Congress intended in the Class Action Fairness Act to *expand* federal jurisdiction. Holding that the Act applies to actions filed in federal court, provided that the 30-day rule of § 1446(b) is satisfied, will effectuate Congress' intent to expand federal jurisdiction. In concluding that the Class Action Fairness Act did "not purport to abrogate [the] long-standing rule" that "statutes conferring jurisdiction on federal courts are to be strictly construed and all doubts must be resolved against federal jurisdiction" *(id.* at *4), the court in *Pritchett* acted directly contrary to Congress' stated intent to expand federal jurisdiction in order to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." P.L. 109-2, § 2(b)(2).[2]

---

[2] In the context of statutes increasing the requisite jurisdictional minimum, a few courts – contrary to the holdings in *Cedillo, Abernathy, Casteel, Lorraine Motors* and *Hunt* – held that "commenced" means "commenced in state court" and declined to apply the new jurisdictional provisions to cases removed to federal court after the statutes' respective effective dates. *Rhinehart v. Cincinnati, Inc.,* 716 F. Supp. 7 (E.D.

25.    Accordingly, for the reasons stated above, the provisions of the Class Action Fairness Act – which permit removal of class actions where the putative class consists of 100 or more persons, the citizenship of any proposed class member is diverse from that of any defendant, and the matter in controversy after aggregating the class members' claims exceeds $5 million (exclusive of interest and costs) – applies to this action. As shown in Points I.A - C, *supra,* those requirements are met.

## II.    PROCEDURAL REQUIREMENTS FOR REMOVAL

26.    On February 11, 2005, plaintiff filed his Complaint in the Superior Court of Massachusetts, Middlesex County, and on February 23, 2005, plaintiff served a copy of the Complaint on Pfizer. Because this Notice of Removal is being filed within 30 days of the service of that Complaint, it is timely under 28 U.S.C. § 1446(b). Certified copies of all process and pleadings of the state court action will be provided to this Court pursuant to Rule 81.1 of the Local Rules of the United States District Court for the District of Massachusetts.

27.    The United States District Court for the District of Massachusetts embraces the county in which the state court action is now pending, and thus, this Court is a proper venue for this action pursuant to 28 U.S.C. § 101.

28.    Pfizer is filing written notice of this removal with the Clerk of the State Court in which the action is currently pending, pursuant to 28 U.S.C. § 1446(d). Copies of the Notice of Filing Notice of Removal, together with this Notice of Removal, are being served upon plaintiffs' counsel pursuant to 28 U.S.C. § 1446(d).

---

Mich. 1989); *Kieffer v. Travelers Fire Ins. Co.,* 167 F. Supp. 398 (D. Md. 1958); *Lomax v. Duchow,* 163 F. Supp. 873 (D. Neb. 1958). But for the reasons set forth in Paragraphs 10-21, *supra,* "commenced" means "commenced in federal court," which is consistent with the express legislative purpose of expanding federal jurisdiction over class actions.

WHEREFORE, Defendant Pfizer respectfully removes this action from the Superior Court of Massachusetts, Middlesex County, bearing Cause No. 2005-0122-D, to this Court, pursuant to 28 U.S.C. § 1441, *et seq.*

DATED this 25th day of March, 2005.

Respectfully submitted,

PFIZER, INC.
By its attorneys,

William M. Cowan, Esquire, BBO #566940
Dora Kripapuri, Esquire, BBO #654236
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000

OF COUNSEL:

Thomas Smart, Esquire
Richard DeSevo, Esquire
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022
(212) 836-8000

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Notice of Removal* was served

on this 25th day of March, 2005 via first class mail upon counsel of record:

David Pastor, Esquire
Douglas J. Hoffman, Esquire
Gilman and Pastor LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA  01906

Roy A. Katriel, Esquire
The Katriel Law Firm, P.C.
1101 30th Street, NW, Suite 500
Washington, D.C.  20007

Jacqueline Sailer, Esquire
Eric J. Belfi, Esquire
Murray, Frank & Sailer, LLP
275 Madison Avenue, Suite 801
New York, NY  10016

William M. Cowan





COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT
DEPARTMENT OF THE TRIAL COURT

JERRY NATALE, on behalf of himself
and all others similarly situated,

               Plaintiff,

    v.

PFIZER INC.,

               Defendant.

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX
FEB 11 2005

Civil Action No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

05- 494

## NATURE OF THE ACTION

1.    Plaintiff Jerry Natale brings this action individually and on behalf of all similarly situated Massachusetts consumers of Listerine® Antiseptic Mouthrinse ("Listerine"). Defendant Pfizer sells over-the-counter products in the oral health care market. Pfizer sells Listerine® Antiseptic Mouthrinse ("Listerine"), an essential oil-containing antiseptic mouthwash.

2.    In June 2004, Pfizer launched an advertising campaign touting Listerine as a substitute for flossing, communicating that "Listerine's as effective as Floss - Clinical studies prove it," a message that is unsupported by Pfizer's clinical studies and which even Pfizer admits is false. The same false and misleading message was also, until recently, placed on the Listerine packaging, both as a stickered label and a "bottle hanger." Plaintiff seeks to recover damages for the harm that Pfizer has already inflicted on Plaintiff and the Class as a result of Pfizer's misrepresentations.

00004128.WPD ; 1

## PARTIES

3.     Plaintiff Jerry Natale is a resident of Massachusetts who purchased Listerine during the Class Period. Plaintiff brings this action individually and on behalf of all other similarly situated Massachusetts consumers who purchased Listerine during the Class Period.

4.     Defendant Pfizer is a Delaware corporation with its principal place of business at 235 East 42nd Street, New York, New York 10017. Pfizer manufactures consumer and pharmaceutical products. Pfizer advertises, distributes and sells its products throughout the United States, including in Massachusetts.

## JURISDICTION AND VENUE

5.     This Court has personal jurisdiction over Defendant pursuant to M.G.L. c. 223A, § 3, because Defendant transacts significant commerce within this Commonwealth and Middlesex County through its promotion and sale of Listerine. Venue is proper pursuant to M.G.L., c. 223, § 1, as Plaintiff resides in Middlesex County. Further, venue is proper within this county because the acts complained of occurred within this county, purchase of Listerine by consumer class members occurred within this county, and therefore injury occurred within this county.

6.     Neither the individual Plaintiff nor any individual member of the class has damages exceeding $75,000 each.

## FACTUAL BACKGROUND

**The Importance of Flossing**

7.     Dental plaque is a gel-like or mucoid mass consisting of bacteria and an organic matrix derived from saliva and extracellular bacterial products. Plaque adheres to the teeth and

00004128.WPD ; 1                                  2

other surfaces in the mouth, including the shallow groove between the tooth and the gums and in periodontal pockets. Plaque can cause tooth decay as well as gingivitis or periodontitis.

8.      Characteristics of gingivitis can include, among other things, tissue swelling and redness, a glossy surface to the gums, increased tissue temperature, and bleeding upon brushing. Periodontitis is a severe gum disease characterized by inflammation of the gums, increased probing depth, and destruction of the periodontal ligament which connects the teeth to the adjacent bone.

9.      Oral care is an important part of overall health care. Flossing, a mechanical interdental cleaner, is critical to good oral health. The American Dental Association ("ADA") recommends flossing at least once a day to maintain good oral hygiene. Among other things, flossing is needed to remove plaque and food particles mechanically from between the teeth and under the gum line. While rinsing may flush matter off of the tooth surface, rinsing cannot go along the root's surface and scrape off debris or dislodge larger food particles as does floss. By mechanically removing plaque and food particles, flossing prevents and controls, among other things, gingivitis, tooth decay and periodontitis. It is undisputed, even by Pfizer, that maintaining good oral health requires the use of floss or other mechanical interdental cleaners.

10.      Defendant Pfizer markets over-the-counter antiseptic essential oil-containing mouthrinses under the brand name Listerine. As opposed to a mechanical device like floss, Listerine is a chemotherapeutic mouthwash used in oral hygiene. Although Listerine may have certain adjunctive benefits when used in combination with regular flossing, Listerine has never been proven to be, and is not, a substitute for flossing, as Pfizer itself has repeatedly acknowledged.

11.   Pfizer's Listerine advertising is based upon data from two studies, sponsored by Pfizer, purportedly designed to compare the efficacy of essential oil antiseptic mouthrinse versus dental floss in controlling plaque and mild to moderate interproximal (between the teeth) gingivitis. These six-month unsupervised studies followed subjects with mild to moderate gingivitis and purportedly found that rinsing twice daily as directed with an essential oil antiseptic mouthrinse was at least as effective as flossing daily, but solely in reducing interproximal gingivitis and plaque. Pfizer's clinical studies were limited and did not examine the mouthrinse's efficacy with respect to tooth decay, periodontitis, removal of food debris, severe gingivitis, or any oral conditions other than interproximal gingivitis and plaque.

12.   Recognizing the studies' limitations and the undisputed fact that rinsing could not replace flossing, Pfizer's clinical studies concluded only that rinsing was an effective "adjunct" to a brushing and flossing regimen. In reports of the studies, Pfizer appropriately recognized that "[p]rofessional recommendations to floss daily should continue to be reinforced[]" and that Pfizer does "not wish to suggest that the mouthrinse should be used instead of dental floss or any other interproximal cleaning device."

13.   Indeed, in a report to dental professionals announcing that Pfizer was commencing a consumer advertising campaign based upon these studies, Pfizer acknowledged that the studies "were not designed to suggest that Listerine is a replacement for floss." Pfizer further promised dental professionals, "[r]est assured, as with the professional campaign, we will promote responsibly and emphasize to patients that rinsing with Listerine cannot take the place of flossing."

14.   Pfizer's assurances have proven hollow. Despite the universal recognition that

00004128.WPD ; 1                                    4

flossing is necessary for good oral health care, Pfizer began disseminating and continues to run Listerine advertising that effectively communicates that Listerine is a complete replacement for and provides all the benefits of flossing.

## Pfizer's False and Misleading Advertising in June 2004

15.    In June 2004 Pfizer launched an advertising campaign in the United States effectively telling consumers that Listerine can be used as a replacement for flossing - a claim that Pfizer itself has acknowledged is not true. The centerpiece of that campaign was a splashy comparative television commercial referred to as the "Big Bang" spot containing false and misleading claims about the efficacy of Listerine as compared to dental floss.

16.    The Big Bang commercial began with a screen filled with a swirl of Listerine, designed presumably to look like a string of floss, and a full-screen declaration, along with a voiceover, stating that "Listerine's as effective as floss." The only qualifier to this statement was a tiny disclaimer on the bottom reading, "Against plaque and gingivitis between teeth." The voiceover then stated, "Clinical studies prove it" while the screen showed both floss and a stream of Listerine.

17.    The commercial then cut to a person using the Listerine mouthwash with a voiceover stating "So even if you don't floss like you should, now you can get its healthy benefits from simply rinsing." The commercial did not qualify in any way this broad and misleading statement that simply rinsing with Listerine can give you all of the healthy benefits of flossing. Showing Listerine weaving in between teeth like a piece of floss, the commercial continued by again stating that Listerine is as effective as floss, while in tiny print at the bottom of the screen appeared the contradictory statement, "Floss daily." The commercial then closed with an appeal

to consumers to rinse rather than floss because of rinsing's ease and efficacy.

## Pfizer's False and Misleading Advertising in August 2004

18.    On August 13, 2004, Pfizer aired a revised Big Bang spot comparing Listerine to flossing.  This commercial communicated the same false and misleading messages that were conveyed in Pfizer's earlier commercial.

19.    Again, the commercial began with a swirl of Listerine and the full-screen declaration that "Listerine's as effective as floss" with the same tiny print disclaimer at the bottom of the screen stating, "Against plaque and gingivitis between teeth."  This was followed by a voiceover to the same effect, also stating that "Clinical studies prove it."

20.    While showing a container of dental floss and then a swirl of Listerine designed to look like a string of floss, the voiceover continued on to say, "Of course, you should floss but if you don't floss like you should, you can get flosses' {sic] plaque-fighting benefits by rinsing." The commercial then showed Listerine weaving in between teeth like a piece of floss accompanied by a voiceover, "Listerine kills the germs that cause plaque, even between teeth." In tiny print at the bottom of the screen, Pfizer added the contradictory small-print super, "Not a replacement for floss. Ask your dentist."

21.    Finally, the commercial concluded, like its predecessor, with an appeal to consumers to rinse rather than floss because of rinsing's ease and supposed efficacy. Emblazoned across the screen yet again was the phrase "Listerine's as effective as floss" with the qualifier in tiny print at the bottom of the screen, "Against plaque and gingivitis between teeth." Finally, in large print, the screen read:  "As easy as rinsing.  As effective as flossing," accompanied by a voiceover with the same words.

## Pfizer's Subsequent False and Misleading Advertising

22.    On or about September 15, 2004, Pfizer began airing its second revised Big Bang television commercial. This commercial continued to communicate a message to consumers that Listerine is a substitute for floss in all respects.

23.    The new commercial opened the same way as the prior ones, with a swirl of Listerine and the full-screen declaration that "Listerine's as effective as floss." Again, Pfizer attached a tiny print disclaimer at the bottom of the screen stating, "Against plaque and gingivitis between teeth" followed by a voiceover to the same effect and the statement that "Clinical studies prove it."

24.    The commercial then shows a container of dental floss and a swirl of Listerine designed to look like a string of floss, accompanied by the revised voiceover, "There's no replacement for flossing but if you don't floss like you should, you can get its plaque-fighting benefits by rinsing." The commercial next shows Listerine weaving in between teeth like a piece of floss with a voiceover stating, "Listerine kills the germs that cause plaque, even between teeth, so it's as effective as floss against plaque and gingivitis" and a small-print super, "Ask your dental professional."

25.    Finally, the commercial concludes, like its predecessors, by encouraging consumers to rinse rather than floss because of rinsing's ease and supposed efficacy. Again, the phrase "Listerine's as effective as floss" is prominently displayed in the screen with a small-print disclaimer at the bottom of the screen, "Against plaque and gingivitis between teeth." Finally, in large print the screen reads "As easy as rinsing. As effective as flossing, against plaque and gingivitis," accompanied by a voiceover with the same words.

26.     Like the prior incarnations of the Big Bang spot, Pfizer's revised commercial communicated that consumers do not need to floss to obtain flossing's benefits because Listerine is just as effective as floss. This message of overall efficacy is patently false.

27.     As set forth above, flossing is necessary to remove mechanically plaque and food particles from between the teeth and under the gum line. A rinse such as Listerine cannot - and certainly has not been "clinically proven" - to remove food particles in the teeth (especially if the teeth are close together) or to remove plaque under the gum line. Moreover, as noted above, rinses are not as effective as floss with respect to tooth decay and periodontitis. Nor does the Listerine advertising distinguish between mild, moderate and severe gingivitis, even though its clinical study participants were limited to those with mild and moderate gingivitis.

28.     Pfizer's substitution of the written super "Not a replacement for floss" with a voiceover stating "There's no replacement for flossing," is ineffective to change the commercial's false and misleading message. This phrase is directly belied by the remainder of the voiceover sentence which reassures consumers that if they do not floss, they can get the plaque-fighting benefits of floss from Listerine. Moreover, this brief statement is ineffective against the contradictory and repeated message contained in the commercial that Listerine is as effective as flossing.

29.     Pfizer's attempts to limit the commercial to plaque and interproximal gingivitis are also futile. At the outset, most of the disclaimers are in small print and inconspicuously located at the bottom of the screen. Even the addition of the full screen statement at the end of the commercial that Listerine is "As effective as flossing, against plaque and gingivitis," does not correct the false and misleading impression conveyed by the commercial in its entirety. Only if a

study required participants to rinse twice a day for thirty seconds, a procedure that is extremely difficult to tolerate given the alcohol content and strength of Listerine. Even Pfizer has recognized that consumers have great difficulty using Listerine as directed, as shown by another of their television commercials depicting a man trying, with great effort, to keep the product in his mouth for thirty seconds.

32. Finally, the studies do not appear to have controlled for the use of oral hygiene procedures outside the assigned treatment. In fact, the study report states that subjects were instructed to "use their assigned regimen in addition to their usual oral hygiene procedures for six months." Accordingly, it is possible that some participants in the Listerine arm of the study used other oral hygiene procedures such as flossing, water picks, or other mechanical cleaners that have already been proven to remove plaque.

**Print and Internet Advertising**

33. In addition to the Big Bang television commercial, Pfizer is running print advertisements touting the same false and misleading message - namely, that Listerine is a complete replacement for flossing. For example, it has run a full page coupon insert that shows a scale - equally balanced - with floss on one side and Listerine on the other. Printed above the scale is the statement, "Only Listerine Antiseptic is clinically proven to be As Effective as Floss" with the remainder of the sentence - "at Reducing Plaque and Gingivitis between the Teeth" -- in smaller print. Similarly, Pfizer has attached bottle hangers with this advertisement on Listerine bottles. Pfizer has also placed prominent red stickers on the Listerine bottles that say "Now Clinically Proven, As Effective As Floss" with a small print disclaimer "Against Plaque and Gingivitis Between the Teeth."

00004128.WPD ; 1                    10

34.    During the Class Period, Pfizer also advertised in a CVS drug store circular with a picture of Listerine bottles and the unqualified and prominent statement "As Good As Flossing." Finally, Pfizer's Listerine website made the same claims regarding Listerine's efficacy as compared to floss that are made in the Big Bang television commercial and even contained the commercial itself in case consumers "haven't seen it on the air."

**The Harm to Plaintiff and the Class**

35.    The representations made by Defendant in its sale and marketing of Listerine were materially false and misleading. Plaintiff and class members purchased a product that was not as represented and, accordingly, had an actual value of the time of purchase less than the value paid for the product. It is undeniable that many consumers purchased Listerine based on the mistaken belief that it is a suitable replacement for dental floss. Pfizer's false and misleading Listerine advertising also poses a public health risk. For decades, dental professionals and the ADA have stressed to consumers that flossing is necessary to maintain good oral health. Even Pfizer admits that consumers should continue to floss and that it would be irresponsible to undermine professional recommendations that flossing is necessary. However, its Listerine advertising does just that, undoing years of effort by the dental community to educate consumers about the benefits of flossing. Class members have taken away the false message that Listerine is a total replacement for flossing, causing great harm to their oral health. Pfizer's false and misleading claims have confused consumers, and have resulted in benefits to Pfizer at the consumers' expense.

## PREVIOUS LITIGATION AGAINST PFIZER FOR ITS
## MISLEADING MARKETING OF LISTERINE

36.    Plaintiffs do not bring this action on a clean slate. Rather, Pfizer has already been subject to complaints and a preliminary injunction concerning its false and misleading marketing of Listerine.

37.    In September 2004, McNeil-PPC, Inc. ("PPC"), a subsidiary of Johnson & Johnson and the leading seller of dental floss and other mechanical interdental cleaning products, filed suit in the U.S. District Court for the Southern District of New York against Pfizer under the Lanham Act based on Pfizer's false advertising regarding the supposed benefits of Listerine as compared to dental floss. By that action, PPC sought to (i) enjoin Pfizer from continuing to air false and misleading comparative advertisements concerning Listerine and floss, (ii) require Pfizer to disseminate corrective advertising, (iii) recover damages for the harm that Pfizer had already inflicted on PPC, and (iv) halt the public health hazard created by Pfizer's false advertising.

38.    On January 6, 2004, the Court granted a granted the preliminary injunction, ordering Pfizer to cease advertisements that claim the mouthwash is as effective as floss in reducing interproximal plaque and gingivitis. That Court concluded that the Listerine claims represent "false and misleading advertising" and pose a public health risk, as they "present a danger of undermining the efforts of dental professionals — and the ADA — to convince consumers to floss on a daily basis."

39.    While PPC's complaint sought redress for the harm occasioned to PPC as a competitor of Pfizer, Plaintiffs here seek redress for the harm and injury borne by Massachusetts

consumers as a result of Pfizer's false and deceptive practices concerning the marketing of Listerine.

## CLASS ACTION ALLEGATIONS

40.    Pursuant to Mass. R. Civ. P. 23, Plaintiffs bring this action as a class action on behalf of themselves and all other similarly situated Massachusetts consumers who purchased Listerine during the Class Period. (February 11, 2002 through the present).

41.    Although the number of putative class member plaintiffs is not known to Plaintiffs with precision, based on the annual sales of Listerine and the prevalence of Listerine within this Commonwealth, it is apparent that the number of consumers of Listerine would be at least in the tens of thousands, thereby making joinder impracticable

42.    Plaintiff's claims are typical of the claims of the putative class members. Specifically, Plaintiff claims that Defendant's false and misleading representations about Listerine injured Plaintiff and consumers alike by conveying false and/or misleading information about the product that Plaintiff and the putative class members purchased.

43.    Plaintiff is an adequate representative to represent the interests of the absent class members. Like all the putative class members, Plaintiff is a Massachusetts consumer of Listerine who purchased Listerine during the Class Period. Like all the putative class members, Plaintiff claims that Defendant's representations about Listerine were false and misleading, and that therefore, Defendant is liable under applicable Massachusetts law. Plaintiff has retained qualified counsel, experienced in class action and consumer litigation, to vigorously prosecute this action on behalf of the putative class members.

44.    There are common questions of fact and law making this action particularly

00004128.WPD ; 1                          13

appropriate for classwide treatment. These common questions include:

    a.    Whether Defendant's representations about Listerine were false and/or misleading;

    b.    Whether Defendant, in making the misrepresentations and omissions about Listerine, knew that its statements were false and misleading or acted in reckless disregard thereof;

    c.    Whether Defendant, in making the misrepresentations and omissions about Listerine, intended that reasonable consumers would rely upon and act on the basis of those misrepresentations and omissions in deciding to purchase Listerine;

    d.    Whether Plaintiff and class members purchased Listerine in reasonable and justifiable reliance on the truth of Defendant's representations and/or on the absence of the Defendant's material omissions; and

    e.    Whether Defendant's conduct injured consumers and, if so, the extent of the injury.

45.    These common questions, and other common questions of fact and law present in this action easily predominate over any individual issues (although there are unlikely to be any such individual issues).

46.    This action is also best managed as a class action. Given the relatively low price of the product at issue here, absent a class action, it would not be feasible for any individual consumer to assert a claim against Defendant. Further, given the large number of consumers of Listerine, allowing individual actions to proceed in lieu of a class action would run the risk of

yielding inconsistent and conflicting adjudications.

## COUNT I
## (COMMON LAW FRAUD)

47.     Plaintiff hereby incorporates by reference each and every allegation of this complaint as if fully restated herein.

48.     In its advertising, packaging and marketing of Listerine, Defendant made the material misrepresentations, statements and omissions set forth above with knowledge of their false and misleading nature and/or in reckless disregard thereof.

49.     At the time Defendant made the materially false and misleading representations, statements and omissions, it intended that consumers, including Plaintiff and other class members, would rely upon and act on the basis of those misrepresentations and omissions in deciding to purchase Listerine.

50.     Plaintiff and members of the class, without knowledge of the falsity of the Defendant's material misrepresentations and omissions, and believing them to be true, and in reasonable and justifiable reliance on the truth and completeness thereof, made purchases of Listerine during the Class Period.

51.     As a proximate result of the Defendant's fraudulent conduct, as alleged herein, Plaintiff and class members suffered damages, including the amounts that they paid to purchase Listerine during the Class Period.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for an Order from this Court as follows:

1.     Certifying this action as a class action on behalf of all Massachusetts consumers

of Listerine during the Class Period;

    2.      Designating Plaintiffs and Plaintiff's counsel as class representative and class counsel, respectively;

    3.      Entering Judgment against Defendant and in favor of Plaintiff and the Class on all claims;

    4.      Requiring Defendant to Pay Plaintiff's Actual Damages;

    5.      Requiring Defendant to pay Plaintiff's reasonable attorneys' fees and costs of suit; and

    6.      Such other relief as this Court deems just and appropriate.

Plaintiff demands a jury trial on all counts so triable.

Dated: February 11, 2005                    Respectfully submitted,

*David Pastor*

David Pastor (BBO#391000)
Douglas J. Hoffman (BBO#640472)
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
Telephone: (781) 231-7850
Facsimile: (781) 231-7840

Attorneys for Plaintiffs

Of Counsel

Roy A. Katriel
THE KATRIEL LAW FIRM, P.C.
1101 30th Street, NW   Suite 500
Washington, DC 20007
Telephone: (202) 625-4342
Facsimile: (202) 625-6774

00004128.WPD ; 1              16

Jacqueline Sailer
Eric J. Belfi
MURRAY, FRANK & SAILER, LLP
275 Madison Avenue  Suite 801
New York, NY 10016-1101
Telephone:  (212) 682-1818
Facsimile:  (212) 682-1892

00004128.WPD; 1                            17

COMMONWEALTH OF MASSACHUSETTS

MIDDLEESEX, ss.

SUPERIOR COURT
CIVIL ACTION NO. 05-494

---

JERRY NATALE, on behalf of himself and )
all others similarly situated, )
                                  )
          Plaintiffs, )
                                    )
v. )
                                    )
PFIZER, INC. )
                                    )
          Defendant. )

---

## <u>NOTICE OF APPEARANCE</u>

TO THE CLERK OF THE COURT:

     Attorney William M. Cowan, Esquire, of the law firm Mintz, Levin, Cohn, Ferris,

Glovsky and Popeo, P.C. hereby enters his appearance as counsel for defendant Pfizer, Inc. in the

above referenced action.

     Attorneys Thomas Smart and Richard DeSevo of the law firm Kaye Scholer LLP also

appear <u>of counsel</u> on behalf of defendant Pfizer, Inc.

                                           William M. Cowan Esq., BBO # 566940
                                         Mintz, Levin, Cohn, Ferris,
                                           Glovsky and Popeo, P.C.
                                         One Financial Center
                                         Boston, MA 02111
                                         (617) 542-6000

OF COUNSEL:

Thomas Smart, Esquire
Richard DeSevo, Esquire
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022
(212) 836-8000

DATED: March 18, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Notice of Appearance* was

served on this 18th day of March, 2005 via first class mail upon counsel of record:

David Pastor, Esquire
Douglas J. Hoffman, Esquire
Gilman and Pastor LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA  01906

Roy A. Katriel, Esquire
The Katriel Law Firm, P.C.
1101 30th Street, NW, Suite 500
Washington, D.C.  20007

Jacqueline Sailer, Esquire
Eric J. Belfi, Esquire
Murray, Frank & Sailer, LLP
275 Madison Avenue, Suite 801
New York, NY  10016

William M. Cowan

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                    SUPERIOR COURT
                                                 CIVIL ACTION NO. 05-494

_____  )
                                   )
JERRY NATALE, on behalf of himself and  )
all others similarly situated,          )
                                   )
            Plaintiffs,            )
                                   )
v.                                 )
                                   )
PFIZER, INC.                       )
                                   )
            Defendant.             )
_____  )

## ASSENTED-TO MOTION TO EXTEND TIME
## TO MOVE, ANSWER OR OTHERWISE RESPOND TO COMPLAINT

Defendant Pfizer, Inc. hereby moves that the time in which it may move, answer or

otherwise respond to the Complaint filed herein be extended to and include Friday, April 29,

2005. This agreed upon response date occurs well before the response date established by the

Tracking Order in this matter. Plaintiff, by the signature of his counsel, assents to this motion.

PFIZER, INC.

By its attorneys,

William M. Cowan, Esquire
BBO #566940
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000

OF COUNSEL:

Thomas Smart, Esquire
Richard DeSevo, Esquire
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022
(212) 836-8000

Assented to:
JERRY NATALE
by his counsel

David Pastor, Esquire
Gilman and Pastor LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
(781) 231-7850

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Assented-To Motion to Extend*

*Time to Move, Answer or Otherwise Respond to Complaint* was served on this 18th day of

March, 2005 via first class mail upon counsel of record:

David Pastor, Esquire
Douglas J. Hoffman, Esquire
Gilman and Pastor LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA  01906

Roy A. Katriel, Esquire
The Katriel Law Firm, P.C.
1101 30th Street, NW, Suite 500
Washington, D.C.  20007

Jacqueline Sailer, Esquire
Eric J. Belfi, Esquire
Murray, Frank & Sailer, LLP
275 Madison Avenue, Suite 801
New York, NY  10016

William M. Cowan

LIT 1510273v1

# Commonwealth of Massachusetts
## County of Middlesex
## The Superior Court

Civil Docket **MICV2005-00494**

RE:    Natale, On Behalf Of Himself And All Others Similarly Situated v Pfizer, Inc.

TO:    William M Cowan, Esquire
       Mintz Levin Cohn Ferris Glovsky & Popeo PC
       1 Financial Center
       Boston, MA 02111

### CLERK'S NOTICE

This is to notify you that in the above referenced case the Court's action on **03/24/2005**:

*RE: Assented-to MOTION to Extend Time to Move, Answer or Otherwise Respond to Complaint to be extended to and include April 29, 2005.*

**is as follows:**

**MOTION (P#3) After review, Motion ALLOWED up until 4/29/05. Dated 3/23/05. (Kenneth J. Fishman, Justice) Notices mailed March 24, 2005**

Dated at Cambridge, Massachusetts this 24th day of March, 2005.

                                          Edward J. Sullivan,
                                          Clerk of the Courts

                          BY:

                                          Leona Kusmirek
                                          Assistant Clerk

Telephone: 617-494-4010 EXT 4251

Copies mailed 03/24/2005

### ***ATTENTION: SUFFOLK COUNTY SUPERIOR COURT ONLY***
On or after **April 4, 2005** all lawyers, litigants, witnesses  etc. who have a notice to appear before **Suffolk County Superior Court for Criminal** business are to report to the Superior County Courthouse. On or after **April 11, 2004** all lawyers, litigants, witnesses etc. who have a notice to appear before for the **Suffolk County Superior Court for Civil** business  are to report to The Suffolk County Courthouse. The Suffolk County Courthouse is located at Three Pemberton Square, Boston 02108.

cvdresult_2.wpd 2703788 motallow certusi

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. **Title of case (name of first party on each side only)** ___Jerry Natale v. Pfizer, Inc.___

2. **Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).**

   [X] I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   [ ] II.   195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.            for patent, trademark or copyright cases

   [ ] III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

   [ ] IV.   220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

   [ ] V.    150, 152, 153.

3. **Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.**

   Kwaak v. Pfizer, Inc., C.A. No. 05-0122-D (Middlesex Superior Court)

4. **Has a prior action between the same parties and based on the same claim ever been filed in this court?**

   YES [ ]    NO [X]

5. **Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)**

   YES [ ]    NO [X]

   **If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?**

   YES [ ]    NO [ ]

6. **Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?**

   YES [ ]    NO [X]

7. **Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).**

   YES [ ]    NO [X]

   A.    **If yes, in which division do all of the non-governmental parties reside?**

         Eastern Division [ ]        Central Division [ ]        Western Division [ ]

   B.    **If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?**

         Eastern Division [ ]        Central Division [ ]        Western Division [ ]

8. **If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)**

   YES [ ]    NO [X]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME   William M. Cowan

ADDRESS   Mintz, Levin, Cohn, Ferris, Glovsky and Popeo PC, One Financial Center, Boston,

TELEPHONE NO.   617-542-6000                                        MA 02111

(CategoryForm.wpd - 2/15/05)

☜JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a)   PLAINTIFFS | DEFENDANTS |
|---|---|
| Jerry Natale | Pfizer, Inc. |

**(b)** County of Residence of First Listed Plaintiff   Middlesex
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   New York County, NY
(IN U.S. PLAINTIFF CASES ONLY)  (and DE)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

See attachment

Attorneys (If Known)

See attachment

05 10590

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government
Defendant

☒ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                           and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane   **PERSONAL INJURY** | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product   ☐ 362 Personal Injury - | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability          Med. Malpractice | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &   ☐ 365 Personal Injury - | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander          Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'   ☐ 368 Asbestos Personal | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability          Injury Product | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine          Liability | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product   **PERSONAL PROPERTY** | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability          ☐ 370 Other Fraud | | | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle   ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle   ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability          Property Damage | Act | ☐ 862 Black Lung (923) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal   ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury          Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting          ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment          Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/          **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations     ☐ 530 General | Security Act | ☐ 871 IRS—Third Party | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare          ☐ 535 Death Penalty | | 26 USC 7609 | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -   ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment          ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities -   ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☐ 1   Original
Proceeding

☒ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
another district
(specify)

☐ 6   Multidistrict
Litigation

☐ 7   Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1332
Brief description of cause:
Common Law Fraud

## VII. REQUESTED IN
COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S)
IF ANY

(See instructions):

JUDGE   Middlesex Superior Court   DOCKET NUMBER   MICV2005-0122D

DATE   March 25, 2005

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

**Attorneys for Plaintiffs:**
David Pastor, Esq.
Douglas J. Hoffman, Esquire
Gilman and Pastor LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906

Roy A. Katriel, Esquire
The Katriel Law Firm, P.C.
1101 30th Street, NW, Suite 500
Washington, D.C. 20007

Jacqueline Sailer, Esquire
Eric J. Belfi, Esquire
Murray, Frank & Sailer, LLP
275 Madison Avenue, Suite 801
New York, NY 10016

**Attorneys for Defendant:**
William Cowan, Esq.
Dora Kripapuri, Esq.
Mintz Levin Cohn Ferris Glovsky and
Popeo, P.C.
One Financial Center
Boston, MA 02111

Thomas Smart, Esq.
Richard DeSevo, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022
(212) 836-80000

LIT 1512168v1