MICV2005-00494

05-10590-WGY

JERRY NATALE

V.

PFIZER, INC

****REMOVED TO US DISTRICT COURT****

**Commonwealth of Massachusetts**
**SUPERIOR COURT DEPARTMENT**
**THE TRIAL COURT**
**CAMBRIDGE**

MICV2005-00494

I, Anne M. Cherubino, Deputy Assistant Clerk of the Superior Court, within and for said County of Middlesex, do certify that the annexed papers are true copies made by photographic process of pleadings entered in the Superior Court on the 11th of February, in the year of our Lord, Two Thousand Five



In testimony whereof, I hereunto set my hand and affix the seal of said Superior Court, at Cambridge, in said County, this 29th of March, in the year of our Lord, Two Thousand Five

*Anne M. Cherubino*
Deputy Assistant Clerk

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT
CIVIL ACTION NO. 05-494

JERRY NATALE, on behalf of
himself and all others similarly situated,     )
)
)
            Plaintiffs,     )
)
v.     )
)
PFIZER, INC,     )
)
            Defendant.     )
)

## NOTICE OF FILING OF NOTICE OF REMOVAL

Defendant Pfizer, Inc. hereby gives notice that it has filed in the United States District

Court for the District of Massachusetts a Notice of Removal of the above-entitled action, a

certified copy of which is attached hereto as Exhibit A.

Respectfully submitted,

PFIZER, INC.

By its attorneys,

William M. Cowan, Esq. BBO # 566940
Dora Kripapuri, Esq. BBO # 654236
Mintz, Levin, Cohn, Ferris,
  Glovsky and Popeo, P.C.
One Financial Center
Boston, MA  02111
(617) 542-6000

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX

MAR 2 8 2005

CLERK

Dated:  March 25, 2005

I hereby certify that a true copy of the
above document was served upon the
attorney of record for each party by
mail/hand on march 25, 2005
Dora Kripapuri.

LIT 1512144v1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

FILED
IN CLERKS OFFICE

2005 MAR 25  P 2: 47

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| JERRY NATALE, on behalf of himself and all others similarly situated | )<br>)<br>) Civil No.: |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| PFIZER INC., a Delaware Corporation | )<br>)<br>) |
| Defendant. | )<br>) |

**05    10590 WGY**

I hereby certify on 3/25/05 that the foregoing document is true and correct copy of the
☐ electronic docket in the captioned case
☐ electronically filed original filed on
☒ original filed in my office on 3/25/05
Sarah A. Thornton
Clerk, U.S. District Court
District of Massachusetts
By:_____
Deputy Clerk

**NOTICE OF REMOVAL**

TO:   United States District Court for the District of Massachusetts

Pursuant to 28 U.S.C. §1441, *et seq.,* Defendant Pfizer Inc. ("Pfizer") hereby removes the state court action, *Jerry Natale v. Pfizer Inc.,* Civil Action No. 05-494, from the Superior Court of Massachusetts, Middlesex County, to the United States District Court for the District of Massachusetts, and alleges as follows:

1.     This action is brought by plaintiff seeking certification of a statewide class consisting of all "Massachusetts consumers who purchased Listerine during the Class Period. (February 11, 2002 through the present)." Complaint ("Compl.") ¶ 40. Plaintiff asserts a claim under common law fraud. Plaintiff, on behalf of himself and the proposed class members, seeks, *inter alia:* (1) "damages, including the amounts that [class members] paid to purchase Listerine during the Class Period"; (2) "attorneys' fees and costs of suit; and (3) [s]uch other relief as this Court deems just and appropriate." *See* Compl. ¶ 51; Ad Damnum Clause.

2.      There is federal diversity jurisdiction over this putative nationwide class action pursuant to the provisions of P.L. 109-2 (the "Class Action Fairness Act" or the "Act"), codified at 28 U.S.C. §§ 1332(d), 1453, because: (1) the putative class action consists of at least 100 proposed class members; (2) the citizenship of at least one proposed class member is different from that of Pfizer, the only defendant; and (3) the matter in controversy, after aggregating the claims of the proposed class members, exceeds $5 million, exclusive of interest and costs. *See* Point I, *infra*.

## I.      JURISDICTIONAL BASIS FOR REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT

3.      In the Class Action Fairness Act, Congress granted the federal courts diversity jurisdiction over putative class actions where: (1) the putative class action consists of at least 100 proposed class members; (2) the citizenship of at least one proposed class member is different from that of the defendant; and (3) the matter in controversy, after aggregating the claims of the proposed class members, exceeds $5 million, exclusive of interest and costs. P.L. 109-2 § 4(a). Each of these requirements is satisfied here.

### A.      Number of Class Members

4.      Plaintiff brings this action on behalf of all "Massachusetts consumers who purchased Listerine during the Class Period. (February 11, 2002 through the present)." Complaint ("Compl.") ¶ 40. Plaintiff alleges "it is apparent that the number of consumers of Listerine would be at least in the tens of thousands." *Id.* ¶ 41. Accordingly, the requirement that the number of members in the putative class be 100 or more is satisfied. P.L. 109-2 § 4(a)(5).

### B.      Diversity of Citizenship

2

5.     The complaint alleges that the named plaintiff (Jerry Natale) is a resident of the State of Massachusetts. Compl. ¶ 3. Upon information and belief, at all relevant times, the named plaintiff is, and was, a citizen of the State of Massachusetts. Plaintiff seeks certification of a proposed statewide class consisting of all "Massachusetts consumers who purchased Listerine during the Class Period. (February 11, 2002 through the present)." *Id.* ¶ 40. Therefore, at all relevant times, the proposed class members include persons who are not citizens of either Delaware or New York.

6.     At all relevant times, defendant Pfizer is, and was, a corporation existing under the laws of the State of Delaware, having its principal place of business in the State of New York, and, accordingly, is a citizen of Delaware and New York.

7.     Under 28 U.S.C. § 1332(d)(2) (as amended by P.L. 109-2), because there is diversity of citizenship between at least one proposed class member and Pfizer, the requisite diversity of citizenship is satisfied.

## C.     <u>Amount in Controversy</u>

8.     Plaintiff, on behalf of himself and the proposed class members, seeks, *inter alia:* (1) "damages, including the amounts that [class members] paid to purchase Listerine during the Class Period"; (2) "attorneys' fees and costs of suit; and (3) [s]uch other relief as this Court deems just and appropriate." *See* Compl. ¶ 51; Ad Damnum Clause. Plaintiff asserts that because of "the prevalence of Listerine within this Commonwealth . . . the number of consumers of Listerine would be at least in the tens of thousands"; moreover, plaintiff seeks to represent a proposed class of all "Massachusetts consumers who purchased Listerine . . . ([from] February 11, 2002 through the present)." *Id.* ¶ 40, 41. Given that the prospective class represents an overwhelming number of consumers who purchased

3

Listerine over a three-year period, it is clear that the aggregate claims of all class members exceed $5 million, exclusive of interest and costs. Accordingly, the requisite amount in controversy for federal diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332(d)(2) & (6) (as amended by P.L. 109-2), is satisfied.[1]

      9.     The statement in the complaint that neither plaintiff "nor any individual member of the class has damages exceeding $75,000 each" is irrelevant for the purposes of removal under the Class Action Fairness Act. Compl. ¶ 6. First, the statement does not in any way limit the *aggregate* amount claimed by all of the proposed class members in meeting the $5 million jurisdictional threshold under the Class Action Fairness Act. P.L. 109-2 § 4(a). Second, the statement is ineffective because plaintiff has failed "to stipulate or otherwise formally commit that under no circumstances would [plaintiff] seek or accept more" than $75,000. E.g., *Gabrielle v. Allegro Resorts Hotels*, 210 F. Supp. 2d 62, 66 (D.R.I. 2002). Indeed, under Massachusetts law, plaintiff's damages are not limited to the amount pled in the complaint, and he "may be awarded greater damages than the ad damnum clause." Reporter's Notes, *Mass. R. Civ. P. 54(c)* (1973); *see also Republic Floors of New England, Inc. v. Weston Racquet Club, Inc.,* 520 N.E.2d 160, 166 (Mass. App. Ct. 1988).

**D.    The Class Action Fairness Act Applies to this Action.**

     10.    Section 9 of the Class Action Fairness Act provides that "[t]he amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act [February 18, 2005]." *See* P.L. 109-2 § 9. Under the Class Action

---

[1] Pfizer does not concede that the named plaintiff or any proposed class member would be entitled to such relief or any of the relief sought in the complaint. However, the plaintiff's "claim, whether well or ill founded in fact, fixes the right of the defendant to remove." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938).

4

Fairness Act, an action is "commenced" when it is commenced in federal court. Because this action is being commenced in federal court "on or after the date of enactment" of the Class Action Fairness Act, the Act applies to this action.

11.    A wealth of authority holds that a jurisdictional statute, applicable only to actions "commenced on or after" the effective date, applies to actions removed to federal court after the effective date, even though the action was filed in state court before the effective date. *Cedillo v. Valcar Enters., 773* F. Supp. *932 (N.D.* Tex. 1991); *Hunt v. Transport Indem. Ins. Co.,* 1990 WL *192483* (D. Hawaii July *30,* 1990); *Abernathy v. Consol. Cab Co.,* 169 F. Supp. 831 (D. Kan. 1959); *Casteel v. Great Southern Trucking Co.,* 167 F. Supp. *435 (E.D.* Tenn. 1958); *Lorraine Motors, Inc. v. Aetna Cas. & Sur. Co.,* 166 F. Supp. 319 (E.D.N.Y. 1958).

*12.*    In *Cedillo,* the court held that the term "commenced" should be read as commenced in federal court — rather than state court — "because the pertinent time for determining federal jurisdiction is the date on which such jurisdiction is invoked." *Cedillo,* 773 F. Supp. at 939. The court there expressly addressed an issue virtually identical to the one presented by this removal; namely, whether a statute expanding federal jurisdiction — the Supplemental Jurisdiction statute *(28 U.S.C. § 1367)* — applied to an action filed in state court before the statute's effective date, but removed after the effective date. As here, Section 1367 provided that it applied only to "actions *commenced* on or after" the effective date. P.L. 101-650, title III, §310(c) (emphasis added). In denying remand, the court in *Cedillo* held that the new statute was "fully applicable" to the removed action because the date federal jurisdiction was first "invoked" was after the effective date of the statute, and thus the action was "commenced" after the effective date. 773 F. Supp. at 939.

5

13.     Similarly, in *Lorraine Motors,* the court expressly considered whether an amendment to the federal jurisdiction statute (increasing the minimum jurisdictional amount from $3,000 to $10,000) — which, as here, applied only to "actions *commenced* on or after the date of the enactment" (P.L. *85-554, § 3;* emphasis added) — applied to an action filed in state court before the effective date and removed to federal court after the effective date. The court held that the term "commenced" means "actions commenced in the [federal] District Court, whether by original jurisdiction or removal" on or after the effective date, and thus the new jurisdictional provision applied to the action. 166 F. Supp. at 323.

14.     In *Abernathy,* the court considered the identical question presented by *Lorraine Motors.* Citing *Lorraine Motors* with approval, the court in *Abernathy* held that it "must rule" that the action removed to federal court after the date of enactment was "commenced' after the date of the enactment" and the new jurisdictional provisions applied to the removed action. 169 F. Supp. at 834.

15.     The court in *Casteel* also considered the same question. Holding that the term "commenced" "means commenced in the federal court, the court held, relying on the principle set forth in a leading treatise, that "the law in effect at the time of the application to remove controls. 167 F. Supp. at 436 (citing 76 C.J.S. Removal of Causes § 2). *Accord, Hunt v. Transport Indem. Ins. Co.,* 1990 WL 192483 (D. Hawaii July 30, 1990) (action "commenced" when removed to federal court and new minimum amount in controversy requirement applied to action).

16.     As in *Cedillo, Lorraine Motors, Abernathy, Casteel* and *Hunt,* in determining when this removed action was "commenced" for purposes of the applicability of the Class Action Fairness Act (expanding the scope of federal jurisdiction), the relevant date is the

6

first time federal "jurisdiction is invoked." *Cedillo,* 773 F. Supp. at 939. The Class Action

Fairness Act is "fully applicable," *id.,* to this removed action because federal jurisdiction is

first invoked on March 25, 2005, and thus the action is "commenced" in federal court after

the effective date of the Act, February 18, 2005.

17.    Moreover, when Congress has intended that a removal statute apply only to

cases "commenced" in state court after the statute's effective date, Congress has explicitly so

stated.  Thus, in 1986, when Congress amended the removal statute to permit removal of an

entire action that contains state law claims and a separate and independent federal law claim,

Congress provided that the amendment would "apply with respect to claims in civil actions

commenced *in State courts* on or after the date of the enactment." P.L. 99-336, § 3(b), 100

Stat. 633 (June 19, 1986) (emphasis added). Because Congress did not expressly include the

limiting language "in State courts in the Class Action Fairness Act, the Act applies to actions

filed in state court prior to the effective date, but removed (and thus "commenced" in federal

court) on or after the effective date.

18.    Applying the Class Action Fairness Act to cases in which federal jurisdiction is

invoked on or after the Act's date of enactment is consistent with the express "purpose" of

the Act: to "restore the intent of the framers of the United States Constitution by providing

for Federal court consideration of interstate cases of national importance under diversity

jurisdiction." P.L. 109-2, § 2(b)(2).

19.    The Act's legislative history reflects that the purpose of the Act was to

"*encourage* the exercise of federal jurisdiction over class actions." S. Rep. 108-123 at 45

(emphasis added).

7

20.     Consistent with the Congressional intent to expand federal jurisdiction, the term "commenced" should be interpreted as "commenced in federal court" and thus authorizes federal courts to exercise jurisdiction over any case removed on or after the effective date.

21.     This putative class action seeking recovery from an out-of-state defendant is precisely the type of "abuse" that Congress sought to remedy in enacting the Class Action Fairness Act. *See* P.L. 109-2, § 2(a)(4)(B) (finding that state court judges were "sometimes acting in ways that demonstrate bias against out-of-State defendants"). To construe the term "commenced" as anything other than "commenced in federal court" and preclude federal jurisdiction over this action would be contrary to Congress' intent to expand the number of cases (and, in particular, class actions) subject to federal jurisdiction.

22.     Plaintiff may seek to rely on a recent district court decision in another Circuit holding that the Class Action Fairness Act did not apply to an action filed in state court prior to the effective date, but removed after the effective date. *Pritchett v. Office Depot, Inc.,* 2005 WL 563979 (D. Col. Mar. 9, 2005), *petition for permission to appeal denied* (10th Cir. Mar.18, 2005). *Pritchett* is not controlling here.

23.     First, in contravention of the requirement in 28 U.S.C. § 1446(b) that an action be removed within 30 days of service of the complaint, the defendant in *Pritchett* removed the action almost two years after service, and, indeed, after the June 2004 certification of a class in the state court. 2005 WL 563979, at *1. That is, the defendant attempted to apply the Class Action Fairness Act retroactively to revive a right to remove that had expired years earlier. By contrast, here Pfizer *timely* removed this action from state court within 30 days of service of the complaint. Accordingly, the *Pritchett* court's concern

8

that permitting removal of that action "would permit the removal of nearly every presently-pending class action in every state court, resulting in a sudden tidal wave of filings on an already burdened federal judiciary, rather than the gradual, incremental flow of newly-filed class actions" *(id.* at *4), is not present here. Moreover, here, unlike in *Pritchett*, where the class has already been certified, applying the Act would not "deem certain substantive provisions of the Act [where a class had already been certified] to apply to presently-pending cases, potentially frustrating the expectations of current litigants." *Id.* at *4. Because the Act is only being applied prospectively to actions commenced in federal court after the effective date – and because of the requirement that the action be removed within 30 days of service — there is no risk of the Act disrupting cases where a class has already been certified.

24.      Second, as in *Cedillo* – a decision that *Pritchett* did not address – Congress intended in the Class Action Fairness Act to *expand* federal jurisdiction. Holding that the Act applies to actions filed in federal court, provided that the 30-day rule of § 1446(b) is satisfied, will effectuate Congress' intent to expand federal jurisdiction. In concluding that the Class Action Fairness Act did "not purport to abrogate [the] long-standing rule" that "statutes conferring jurisdiction on federal courts are to be strictly construed and all doubts must be resolved against federal jurisdiction" *(id.* at *4), the court in *Pritchett* acted directly contrary to Congress' stated intent to expand federal jurisdiction in order to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." P.L. 109-2, § 2(b)(2).[2]

---

[2] In the context of statutes increasing the requisite jurisdictional minimum, a few courts – contrary to the holdings in *Cedillo, Abernathy, Casteel, Lorraine Motors* and *Hunt* – held that "commenced" means "commenced in state court" and declined to apply the new jurisdictional provisions to cases removed to federal court after the statutes' respective effective dates. *Rhinehart v. Cincinnati, Inc.,* 716 F. Supp. 7 *(E.D.*

25.    Accordingly, for the reasons stated above, the provisions of the Class Action

Fairness Act – which permit removal of class actions where the putative class consists of

100 or more persons, the citizenship of any proposed class member is diverse from that of

any defendant, and the matter in controversy after aggregating the class members' claims

exceeds $5 million (exclusive of interest and costs) – applies to this action. As shown in

Points I.A - C, *supra,* those requirements are met.

## II.    PROCEDURAL REQUIREMENTS FOR REMOVAL

26.    On February 11, 2005, plaintiff filed his Complaint in the Superior Court of

Massachusetts, Middlesex County, and on February 23, 2005, plaintiff served a copy of the

Complaint on Pfizer. Because this Notice of Removal is being filed within 30 days of the

service of that Complaint, it is timely under 28 U.S.C. § 1446(b). Certified copies of all

process and pleadings of the state court action will be provided to this Court pursuant to

Rule 81.1 of the Local Rules of the United States District Court for the District of

Massachusetts.

27.    The United States District Court for the District of Massachusetts embraces

the county in which the state court action is now pending, and thus, this Court is a proper

venue for this action pursuant to 28 U.S.C. § 101.

28.    Pfizer is filing written notice of this removal with the Clerk of the State Court

in which the action is currently pending, pursuant to 28 U.S.C. § 1446(d). Copies of the

Notice of Filing Notice of Removal, together with this Notice of Removal, are being served

upon plaintiffs' counsel pursuant to 28 U.S.C. § 1446(d).

---

Mich. 1989); *Kieffer v. Travelers Fire Ins. Co.,* 167 F. Supp. 398 (D. Md. 1958); *Lomax v. Duchow,* 163 F. Supp. 873 (D. Neb. 1958). But for the reasons set forth in Paragraphs 10-21, *supra,* "commenced" means "commenced in federal court," which is consistent with the express legislative purpose of expanding federal jurisdiction over class actions.

WHEREFORE, Defendant Pfizer respectfully removes this action from the Superior Court of Massachusetts, Middlesex County, bearing Cause No. 2005-0122-D, to this Court, pursuant to 28 U.S.C. § 1441, *et seq.*

DATED this 25th day of March, 2005.

Respectfully submitted,

PFIZER, INC.
By its attorneys,

William M. Cowan, Esquire, BBO #566940
Dora Kripapuri, Esquire, BBO #654236
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000


OF COUNSEL:

Thomas Smart, Esquire
Richard DeSevo, Esquire
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022
(212) 836-8000

11

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Notice of Removal* was served

on this 25th day of March, 2005 via first class mail upon counsel of record:

David Pastor, Esquire
Douglas J. Hoffman, Esquire
Gilman and Pastor LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA  01906

Roy A. Katriel, Esquire
The Katriel Law Firm, P.C.
1101 30th Street, NW, Suite 500
Washington, D.C.  20007

Jacqueline Sailer, Esquire
Eric J. Belfi, Esquire
Murray, Frank & Sailer, LLP
275 Madison Avenue, Suite 801
New York, NY  10016

William M. Cowan

LIT 1512114v1

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.



SUPERIOR COURT
DEPARTMENT OF THE TRIAL COURT

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
COUNTY OF MIDDLESEX
FEB 11 2005
CLERK

05- 494

JERRY NATALE, on behalf of himself
and all others similarly situated,

                Plaintiff,

    v.

PFIZER INC.,

                Defendant.

Civil Action No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

```
4515A000002/11/05CIVIL      240.00
4515A000002/11/05SUR CHARGE  15.00
4515A000002/11/05SECC        20.00
4515A000002/11/05SUMMONS      5.00
```

## **NATURE OF THE ACTION**

1.     Plaintiff Jerry Natale brings this action individually and on behalf of all similarly situated Massachusetts consumers of Listerine® Antiseptic Mouthrinse ("Listerine"). Defendant Pfizer sells over-the-counter products in the oral health care market. Pfizer sells Listerine® Antiseptic Mouthrinse ("Listerine"), an essential oil-containing antiseptic mouthwash.

2.     In June 2004, Pfizer launched an advertising campaign touting Listerine as a substitute for flossing, communicating that "Listerine's as effective as Floss - Clinical studies prove it," a message that is unsupported by Pfizer's clinical studies and which even Pfizer admits is false. The same false and misleading message was also, until recently, placed on the Listerine packaging, both as a stickered label and a "bottle hanger." Plaintiff seeks to recover damages for the harm that Pfizer has already inflicted on Plaintiff and the Class as a result of Pfizer's misrepresentations.

00004128.WPD ; 1

## PARTIES

3.     Plaintiff Jerry Natale is a resident of Massachusetts who purchased Listerine during the Class Period.  Plaintiff brings this action individually and on behalf of all other similarly situated Massachusetts consumers who purchased Listerine during the Class Period.

4.     Defendant Pfizer is a Delaware corporation with its principal place of business at 235 East 42nd Street, New York, New York 10017.  Pfizer manufactures consumer and pharmaceutical products.  Pfizer advertises, distributes and sells its products throughout the United States, including in Massachusetts.

## JURISDICTION AND VENUE

5.     This Court has personal jurisdiction over Defendant pursuant to M.G.L. c. 223A, § 3, because Defendant transacts significant commerce within this Commonwealth and Middlesex County through its promotion and sale of Listerine.  Venue is proper pursuant to M.G.L., c. 223, § 1, as Plaintiff resides in Middlesex County.  Further, venue is proper within this county because the acts complained of occurred within this county, purchase of Listerine by consumer class members occurred within this county, and therefore injury occurred within this county.

6.     Neither the individual Plaintiff nor any individual member of the class has damages exceeding $75,000 each.

## FACTUAL BACKGROUND

### The Importance of Flossing

7.     Dental plaque is a gel-like or mucoid mass consisting of bacteria and an organic matrix derived from saliva and extracellular bacterial products. Plaque adheres to the teeth and

00004128.WPD ; 1                     2

other surfaces in the mouth, including the shallow groove between the tooth and the gums and in

periodontal pockets. Plaque can cause tooth decay as well as gingivitis or periodontitis.

      8.      Characteristics of gingivitis can include, among other things, tissue swelling and

redness, a glossy surface to the gums, increased tissue temperature, and bleeding upon brushing.

Periodontitis is a severe gum disease characterized by inflammation of the gums, increased

probing depth, and destruction of the periodontal ligament which connects the teeth to the

adjacent bone.

      9.      Oral care is an important part of overall health care. Flossing, a mechanical

interdental cleaner, is critical to good oral health. The American Dental Association ("ADA")

recommends flossing at least once a day to maintain good oral hygiene. Among other things,

flossing is needed to remove plaque and food particles mechanically from between the teeth and

under the gum line. While rinsing may flush matter off of the tooth surface, rinsing cannot go

along the root's surface and scrape off debris or dislodge larger food particles as does floss. By

mechanically removing plaque and food particles, flossing prevents and controls, among other

things, gingivitis, tooth decay and periodontitis. It is undisputed, even by Pfizer, that maintaining

good oral health requires the use of floss or other mechanical interdental cleaners.

      10.      Defendant Pfizer markets over-the-counter antiseptic essential oil-containing

mouthrinses under the brand name Listerine. As opposed to a mechanical device like floss,

Listerine is a chemotherapeutic mouthwash used in oral hygiene. Although Listerine may have

certain adjunctive benefits when used in combination with regular flossing, Listerine has never

been proven to be, and is not, a substitute for flossing, as Pfizer itself has repeatedly

acknowledged.

00004128.WPD ; 1                    3

11.    Pfizer's Listerine advertising is based upon data from two studies, sponsored by Pfizer, purportedly designed to compare the efficacy of essential oil antiseptic mouthrinse versus dental floss in controlling plaque and mild to moderate interproximal (between the teeth) gingivitis. These six-month unsupervised studies followed subjects with mild to moderate gingivitis and purportedly found that rinsing twice daily as directed with an essential oil antiseptic mouthrinse was at least as effective as flossing daily, but solely in reducing interproximal gingivitis and plaque. Pfizer's clinical studies were limited and did not examine the mouthrinse's efficacy with respect to tooth decay, periodontitis, removal of food debris, severe gingivitis, or any oral conditions other than interproximal gingivitis and plaque.

12.    Recognizing the studies' limitations and the undisputed fact that rinsing could not replace flossing, Pfizer's clinical studies concluded only that rinsing was an effective "adjunct" to a brushing and flossing regimen. In reports of the studies, Pfizer appropriately recognized that "[p]rofessional recommendations to floss daily should continue to be reinforced[]" and that Pfizer does "not wish to suggest that the mouthrinse should be used instead of dental floss or any other interproximal cleaning device."

13.    Indeed, in a report to dental professionals announcing that Pfizer was commencing a consumer advertising campaign based upon these studies, Pfizer acknowledged that the studies "were not designed to suggest that Listerine is a replacement for floss." Pfizer further promised dental professionals, "[r]est assured, as with the professional campaign, we will promote responsibly and emphasize to patients that rinsing with Listerine cannot take the place of flossing."

14.    Pfizer's assurances have proven hollow. Despite the universal recognition that

flossing is necessary for good oral health care, Pfizer began disseminating and continues to run Listerine advertising that effectively communicates that Listerine is a complete replacement for and provides all the benefits of flossing.

**Pfizer's False and Misleading Advertising in June 2004**

15.    In June 2004 Pfizer launched an advertising campaign in the United States effectively telling consumers that Listerine can be used as a replacement for flossing - a claim that Pfizer itself has acknowledged is not true. The centerpiece of that campaign was a splashy comparative television commercial referred to as the "Big Bang" spot containing false and misleading claims about the efficacy of Listerine as compared to dental floss.

16.    The Big Bang commercial began with a screen filled with a swirl of Listerine, designed presumably to look like a string of floss, and a full-screen declaration, along with a voiceover, stating that "Listerine's as effective as floss." The only qualifier to this statement was a tiny disclaimer on the bottom reading, "Against plaque and gingivitis between teeth." The voiceover then stated, "Clinical studies prove it" while the screen showed both floss and a stream of Listerine.

17.    The commercial then cut to a person using the Listerine mouthwash with a voiceover stating "So even if you don't floss like you should, now you can get its healthy benefits from simply rinsing." The commercial did not qualify in any way this broad and misleading statement that simply rinsing with Listerine can give you all of the healthy benefits of flossing. Showing Listerine weaving in between teeth like a piece of floss, the commercial continued by again stating that Listerine is as effective as floss, while in tiny print at the bottom of the screen appeared the contradictory statement, "Floss daily." The commercial then closed with an appeal

to consumers to rinse rather than floss because of rinsing's ease and efficacy.

**Pfizer's False and Misleading Advertising in August 2004**

18.    On August 13, 2004, Pfizer aired a revised Big Bang spot comparing Listerine to flossing. This commercial communicated the same false and misleading messages that were conveyed in Pfizer's earlier commercial.

19.    Again, the commercial began with a swirl of Listerine and the full-screen declaration that "Listerine's as effective as floss" with the same tiny print disclaimer at the bottom of the screen stating, "Against plaque and gingivitis between teeth." This was followed by a voiceover to the same effect, also stating that "Clinical studies prove it."

20.    While showing a container of dental floss and then a swirl of Listerine designed to look like a string of floss, the voiceover continued on to say, "Of course, you should floss but if you don't floss like you should, you can get flosses' {sic] plaque-fighting benefits by rinsing." The commercial then showed Listerine weaving in between teeth like a piece of floss accompanied by a voiceover, "Listerine kills the germs that cause plaque, even between teeth." In tiny print at the bottom of the screen, Pfizer added the contradictory small-print super, "Not a replacement for floss. Ask your dentist."

21.    Finally, the commercial concluded, like its predecessor, with an appeal to consumers to rinse rather than floss because of rinsing's ease and supposed efficacy. Emblazoned across the screen yet again was the phrase "Listerine's as effective as floss" with the qualifier in tiny print at the bottom of the screen, "Against plaque and gingivitis between teeth." Finally, in large print, the screen read:  "As easy as rinsing. As effective as flossing," accompanied by a voiceover with the same words.

## Pfizer's Subsequent False and Misleading Advertising

22.     On or about September 15, 2004, Pfizer began airing its second revised Big Bang television commercial. This commercial continued to communicate a message to consumers that Listerine is a substitute for floss in all respects.

23.     The new commercial opened the same way as the prior ones, with a swirl of Listerine and the full-screen declaration that "Listerine's as effective as floss." Again, Pfizer attached a tiny print disclaimer at the bottom of the screen stating, "Against plaque and gingivitis between teeth" followed by a voiceover to the same effect and the statement that "Clinical studies prove it."

24.     The commercial then shows a container of dental floss and a swirl of Listerine designed to look like a string of floss, accompanied by the revised voiceover, "There's no replacement for flossing but if you don't floss like you should, you can get its plaque-fighting benefits by rinsing." The commercial next shows Listerine weaving in between teeth like a piece of floss with a voiceover stating, "Listerine kills the germs that cause plaque, even between teeth, so it's as effective as floss against plaque and gingivitis" and a small-print super, "Ask your dental professional."

25.     Finally, the commercial concludes, like its predecessors, by encouraging consumers to rinse rather than floss because of rinsing's ease and supposed efficacy. Again, the phrase "Listerine's as effective as floss" is prominently displayed in the screen with a small-print disclaimer at the bottom of the screen, "Against plaque and gingivitis between teeth." Finally, in large print the screen reads "As easy as rinsing. As effective as flossing, against plaque and gingivitis," accompanied by a voiceover with the same words.

26.    Like the prior incarnations of the Big Bang spot, Pfizer's revised commercial communicated that consumers do not need to floss to obtain flossing's benefits because Listerine is just as effective as floss. This message of overall efficacy is patently false.

27.    As set forth above, flossing is necessary to remove mechanically plaque and food particles from between the teeth and under the gum line. A rinse such as Listerine cannot - and certainly has not been "clinically proven" - to remove food particles in the teeth (especially if the teeth are close together) or to remove plaque under the gum line. Moreover, as noted above, rinses are not as effective as floss with respect to tooth decay and periodontitis. Nor does the Listerine advertising distinguish between mild, moderate and severe gingivitis, even though its clinical study participants were limited to those with mild and moderate gingivitis.

28.    Pfizer's substitution of the written super "Not a replacement for floss" with a voiceover stating "There's no replacement for flossing," is ineffective to change the commercial's false and misleading message. This phrase is directly belied by the remainder of the voiceover sentence which reassures consumers that if they do not floss, they can get the plaque-fighting benefits of floss from Listerine. Moreover, this brief statement is ineffective against the contradictory and repeated message contained in the commercial that Listerine is as effective as flossing.

29.    Pfizer's attempts to limit the commercial to plaque and interproximal gingivitis are also futile. At the outset, most of the disclaimers are in small print and inconspicuously located at the bottom of the screen. Even the addition of the full screen statement at the end of the commercial that Listerine is "As effective as flossing, against plaque and gingivitis," does not correct the false and misleading impression conveyed by the commercial in its entirety. Only if a

consumer knows that flossing is necessary to address oral health concerns other than plaque and interproximal gingivitis would such a limitation be meaningful. But many consumers do not know that there are specific conditions other than interproximal gingivitis and plaque for which floss is needed, as opposed to being aware that flossing is generally beneficial to oral health. As to those consumers, the disclaimers do not provide any differentiation between flossing and rinsing.

30.    The Listerine advertising is also literally false because, even as limited to effectiveness in treating plaque and interproximal gingivitis, they are not proven by Pfizer's clinical studies, which were improperly designed, are statistically flawed, and do not support its Claims. For example, the mechanical process of flossing is more technique-sensitive than rinsing. Given that the studies were unsupervised, it is impossible to determine whether the flossing group failed to properly perform the treatments required, biasing the testing results in favor of Listerine. Indeed, Pfizer admits in its study reports that its finding concerning the efficacy of flossing may have been skewed because "flossing effectiveness decreases considerably in the absence of frequent reinforcement and instruction, and that the motivation to floss decreases as the time since the last dental visit increases." Pfizer admits that the subjects in its studies may not have properly flossed and that "as time went by, the subjects failed to consistently wrap the floss around the line angles of the teeth." The studies therefore do not support the claim that Listerine is imparting to consumers, that is, that Listerine is as effective as proper flossing.

31.    Pfizer's testing also does not support its advertising claims because the participants' use of Listerine in the study did not replicate Listerine's use in the real world. The

study required participants to rinse twice a day for thirty seconds, a procedure that is extremely difficult to tolerate given the alcohol content and strength of Listerine. Even Pfizer has recognized that consumers have great difficulty using Listerine as directed, as shown by another of their television commercials depicting a man trying, with great effort, to keep the product in his mouth for thirty seconds.

32.     Finally, the studies do not appear to have controlled for the use of oral hygiene procedures outside the assigned treatment. In fact, the study report states that subjects were instructed to "use their assigned regimen in addition to their usual oral hygiene procedures for six months." Accordingly, it is possible that some participants in the Listerine arm of the study used other oral hygiene procedures such as flossing, water picks, or other mechanical cleaners that have already been proven to remove plaque.

**Print and Internet Advertising**

33.     In addition to the Big Bang television commercial, Pfizer is running print advertisements touting the same false and misleading message - namely, that Listerine is a complete replacement for flossing. For example, it has run a full page coupon insert that shows a scale - equally balanced - with floss on one side and Listerine on the other. Printed above the scale is the statement, "Only Listerine Antiseptic is clinically proven to be As Effective as Floss" with the remainder of the sentence - "at Reducing Plaque and Gingivitis between the Teeth" -- in smaller print. Similarly, Pfizer has attached bottle hangers with this advertisement on Listerine bottles. Pfizer has also placed prominent red stickers on the Listerine bottles that say "Now Clinically Proven, As Effective As Floss" with a small print disclaimer "Against Plaque and Gingivitis Between the Teeth."

34.    During the Class Period, Pfizer also advertised in a CVS drug store circular with a picture of Listerine bottles and the unqualified and prominent statement "As Good As Flossing." Finally, Pfizer's Listerine website made the same claims regarding Listerine's efficacy as compared to floss that are made in the Big Bang television commercial and even contained the commercial itself in case consumers "haven't seen it on the air."

**The Harm to Plaintiff and the Class**

35.    The representations made by Defendant in its sale and marketing of Listerine were materially false and misleading.  Plaintiff and class members purchased a product that was not as represented and, accordingly, had an actual value of the time of purchase less than the value paid for the product.  It is undeniable that many consumers purchased Listerine based on the mistaken belief that it is a suitable replacement for dental floss.  Pfizer's false and misleading Listerine advertising also poses a public health risk.  For decades, dental professionals and the ADA have stressed to consumers that flossing is necessary to maintain good oral health. Even Pfizer admits that consumers should continue to floss and that it would be irresponsible to undermine professional recommendations that flossing is necessary.  However, its Listerine advertising does just that, undoing years of effort by the dental community to educate consumers about the benefits of flossing.  Class members have taken away the false message that Listerine is a total replacement for flossing, causing great harm to their oral health.  Pfizer's false and misleading claims have confused consumers, and have resulted in benefits to Pfizer at the consumers' expense.

## PREVIOUS LITIGATION AGAINST PFIZER FOR ITS
## MISLEADING MARKETING OF LISTERINE

36.    Plaintiffs do not bring this action on a clean slate. Rather, Pfizer has already

been subject to complaints and a preliminary injunction concerning its false and misleading

marketing of Listerine.

37.    In September 2004, McNeil-PPC, Inc. ("PPC"), a subsidiary of Johnson &

Johnson and the leading seller of dental floss and other mechanical interdental cleaning products,

filed suit in the U.S. District Court for the Southern District of New York against Pfizer under

the Lanham Act based on Pfizer's false advertising regarding the supposed benefits of Listerine

as compared to dental floss. By that action, PPC sought to (i) enjoin Pfizer from continuing to

air false and misleading comparative advertisements concerning Listerine and floss, (ii) require

Pfizer to disseminate corrective advertising, (iii) recover damages for the harm that Pfizer had

already inflicted on PPC, and (iv) halt the public health hazard created by Pfizer's false

advertising.

38.    On January 6, 2004, the Court granted a granted the preliminary injunction,

ordering Pfizer to cease advertisements that claim the mouthwash is as effective as floss in

reducing interproximal plaque and gingivitis. That Court concluded that the Listerine claims

represent "false and misleading advertising" and pose a public health risk, as they "present a

danger of undermining the efforts of dental professionals — and the ADA — to convince

consumers to floss on a daily basis."

39.    While PPC's complaint sought redress for the harm occasioned to PPC as a

competitor of Pfizer, Plaintiffs here seek redress for the harm and injury borne by Massachusetts

consumers as a result of Pfizer's false and deceptive practices concerning the marketing of Listerine.

## CLASS ACTION ALLEGATIONS

40.     Pursuant to Mass. R. Civ. P. 23, Plaintiffs bring this action as a class action on behalf of themselves and all other similarly situated Massachusetts consumers who purchased Listerine during the Class Period. (February 11, 2002 through the present).

41.     Although the number of putative class member plaintiffs is not known to Plaintiffs with precision, based on the annual sales of Listerine and the prevalence of Listerine within this Commonwealth, it is apparent that the number of consumers of Listerine would be at least in the tens of thousands, thereby making joinder impracticable

42.     Plaintiff's claims are typical of the claims of the putative class members. Specifically, Plaintiff claims that Defendant's false and misleading representations about Listerine injured Plaintiff and consumers alike by conveying false and/or misleading information about the product that Plaintiff and the putative class members purchased.

43.     Plaintiff is an adequate representative to represent the interests of the absent class members. Like all the putative class members, Plaintiff is a Massachusetts consumer of Listerine who purchased Listerine during the Class Period. Like all the putative class members, Plaintiff claims that Defendant's representations about Listerine were false and misleading, and that therefore, Defendant is liable under applicable Massachusetts law. Plaintiff has retained qualified counsel, experienced in class action and consumer litigation, to vigorously prosecute this action on behalf of the putative class members.

44.     There are common questions of fact and law making this action particularly

00004128.WPD ; 1                                  13

appropriate for classwide treatment. These common questions include:

    a.    Whether Defendant's representations about Listerine were false and/or misleading;

    b.    Whether Defendant, in making the misrepresentations and omissions about Listerine, knew that its statements were false and misleading or acted in reckless disregard thereof;

    c.    Whether Defendant, in making the misrepresentations and omissions about Listerine, intended that reasonable consumers would rely upon and act on the basis of those misrepresentations and omissions in deciding to purchase Listerine;

    d.    Whether Plaintiff and class members purchased Listerine in reasonable and justifiable reliance on the truth of Defendant's representations and/or on the absence of the Defendant's material omissions; and

    e.    Whether Defendant's conduct injured consumers and, if so, the extent of the injury.

    45.    These common questions, and other common questions of fact and law present in this action easily predominate over any individual issues (although there are unlikely to be any such individual issues).

    46.    This action is also best managed as a class action. Given the relatively low price of the product at issue here, absent a class action, it would not be feasible for any individual consumer to assert a claim against Defendant. Further, given the large number of consumers of Listerine, allowing individual actions to proceed in lieu of a class action would run the risk of

yielding inconsistent and conflicting adjudications.

## COUNT I
## (COMMON LAW FRAUD)

47.    Plaintiff hereby incorporates by reference each and every allegation of this

complaint as if fully restated herein.

48.    In its advertising, packaging and marketing of Listerine, Defendant made the

material misrepresentations, statements and omissions set forth above with knowledge of their

false and misleading nature and/or in reckless disregard thereof.

49.    At the time Defendant made the materially false and misleading representations,

statements and omissions, it intended that consumers, including Plaintiff and other class

members, would rely upon and act on the basis of those misrepresentations and omissions in

deciding to purchase Listerine.

50.    Plaintiff and members of the class, without knowledge of the falsity of the

Defendant's material misrepresentations and omissions, and believing them to be true, and in

reasonable and justifiable reliance on the truth and completeness thereof, made purchases of

Listerine during the Class Period.

51.    As a proximate result of the Defendant's fraudulent conduct, as alleged herein,

Plaintiff and class members suffered damages, including the amounts that they paid to purchase

Listerine during the Class Period.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for an Order from this Court as follows:

1.    Certifying this action as a class action on behalf of all Massachusetts consumers

of Listerine during the Class Period;

2.    Designating Plaintiffs and Plaintiff's counsel as class representative and class

counsel, respectively;

3.    Entering Judgment against Defendant and in favor of Plaintiff and the Class on

all claims;

4.    Requiring Defendant to Pay Plaintiff's Actual Damages;

5.    Requiring Defendant to pay Plaintiff's reasonable attorneys' fees and costs of

suit; and

6.    Such other relief as this Court deems just and appropriate.

Plaintiff demands a jury trial on all counts so triable.

Dated: February 11, 2005                 Respectfully submitted,


                                         _David Pastor_

                                         David Pastor (BBO#391000)
                                         Douglas J. Hoffman (BBO#640472)
                                         GILMAN AND PASTOR, LLP
                                         Stonehill Corporate Center
                                         999 Broadway, Suite 500
                                         Saugus, MA 01906
                                         Telephone: (781) 231-7850
                                         Facsimile: (781) 231-7840

                                         Attorneys for Plaintiffs

Of Counsel

Roy A. Katriel
THE KATRIEL LAW FIRM, P.C.
1101 30th Street, NW   Suite 500
Washington, DC 20007
Telephone: (202) 625-4342
Facsimile: (202) 625-6774

00004128.WPD ; 1                              16

Jacqueline Sailer
Eric J. Belfi
MURRAY, FRANK & SAILER, LLP
275 Madison Avenue  Suite 801
New York, NY 10016-1101
Telephone:  (212) 682-1818
Facsimile:  (212) 682-1892

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) 05- 491D | Trial Court of Massachusetts Superior Court Department County: Middlesex |
|---|---|---|

| PLAINTIFF(S) Jerry Natale, on behalf of himself and all others similarly situated | DEFENDANT(S) Pfizer, Inc. |
|---|---|

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE David Pastor, Gilman and Pastor, LLP 999 Broadway, Suite 500, Saugus, MA (781) 231-7850 Board of Bar Overseers number: 391000 | ATTORNEY (if known) |
|---|---|

## Origin code and track designation

Place an x in one box only:

[X] 1. F01 Original Complaint
[ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
[ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

[ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
[ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
[ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

CODE NO.      TYPE OF ACTION (specify)      TRACK      IS THIS A JURY CASE?

B99           Fraud                        ( F )      ( X ) Yes      ( ) No

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

## TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
   1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
   2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
   3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
   4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
   5. Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
                                                              Subtotal $. . . . . . . . . . . .
B. Documented lost wages and compensation to date . . . . . . . . . $. . . . . . . . . . . .
C. Documented property damages to date . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
D. Reasonably anticipated future medical and hospital expenses . . $. . . . . . . . . . . .
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . $. . . . . . . . . . . .
F. Other documented items of damages (describe)
                                                              $. . . . . . . . . . . .
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                                              $. . . . . . . . . . . .
                                                        TOTAL $. . . . . . . . . . . .

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX
FEB 11 2005
Edward J Sullivan
CLERK

## CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

                                                        TOTAL $. . . . . . . . . . . .

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _David Past_      DATE: 2/11/05

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

MAS-20041213
gilmanr

03/28/2005
10:38 AM

**Commonwealth of Massachusetts**
**MIDDLESEX SUPERIOR COURT**
**Case Summary**
**Civil Docket**

# MICV2005-00494
## Natale, On Behalf Of Himself And All Others Similarly Situated v Pfizer, Inc

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 02/11/2005 | **Status** | Disposed: transfered to other court (dtrans) | | |
| **Status Date** | 03/28/2005 | **Session** | D - Cv D (7A Cambridge) | | |
| **Origin** | 1 | **Case Type** | B99 - Misc tort | | |
| **Lead Case** | | **Track** | F | | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 05/12/2005 | **Answer** | 07/11/2005 | **Rule12/19/20** | 07/11/2005 |
| **Rule 15** | 07/11/2005 | **Discovery** | 12/08/2005 | **Rule 56** | 01/07/2006 |
| **Final PTC** | 02/06/2006 | **Disposition** | 04/07/2006 | **Jury Trial** | Yes |

### PARTIES

**Plaintiff**
Jerry Natale, On Behalf Of Himself And All Others
Similarly Situated
Active 02/11/2005

**Private Counsel 391000**
David Pastor
Gilman & Pastor
999 Broadway
Stone Hill Corp Ctr Suite 500
Saugus, MA 01906
Phone: 781-231-7850
Fax: 781-231-7840
Active 02/11/2005 Notify

**Defendant**
Pfizer, Inc
235 East 42nd Street
New York, NY 10017
Served: 02/23/2005
Served (answr pending) 03/03/2005

**Private Counsel 566940**
William M Cowan
Mintz Levin Cohn Ferris Glovsky & Popeo
PC
1 Financial Center
Boston, MA 02111
Phone: 617-348-3003
Fax: 617-542-2241
Active 03/16/2005 Notify

**Private Counsel 654236**
Dora Kripapuri
Mintz Levin Cohn Ferris Glovsky & Popeo
PC
1 Financial Center
Boston, MA 02111
Phone: 617-348-1763
Fax: 617-542-2241
Active 03/28/2005 Notify

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 02/11/2005 | 1.0 | Complaint & civil action cover sheet filed |
| 02/11/2005 | | Origin 1, Type B99, Track F. |
| 03/03/2005 | 2.0 | SERVICE RETURNED: Pfizer, Inc.(Defendant)  2/23/05  in hd   101 Federal St. Boston, Ma. |
| 03/16/2005 | | Pleading, Assented-to MOTION to Extend Time to Move, Answer or Otherwise Respond to Complaint, returned to William M. Cowan, Esq.: Signatures Required by all Parties Involved in Assented-to Motion. |
| 03/22/2005 | 3.0 | Assented-to MOTION to Extend Time to Move, Answer or Otherwise Respond to Complaint to be extended to and include April 29, 2005. |

case01 201660 y y y y n n

MAS-20041213
gilmanr

**Commonwealth of Massachusetts**
**MIDDLESEX SUPERIOR COURT**
**Case Summary**
**Civil Docket**

## MICV2005-00494
## Natale, On Behalf Of Himself And All Others Similarly Situated v Pfizer, Inc

| Date | Paper | Text |
|------|-------|------|
| 03/24/2005 | | MOTION (P#3) After review, Motion ALLOWED up until 4/29/05. Dated 3/23/05. (Kenneth J. Fishman, Justice) Notices mailed March 24, 2005 |
| 03/28/2005 | 4.0 | Case REMOVED this date to US District Court of Massachusetts by deft Pfizer, Inc |
| 03/28/2005 | | ABOVE ACTION THIS DAY REMOVED TO US DISTRICT COURT |

case01 201660 y y y y n n

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                         SUPERIOR COURT
                                                      CIVIL ACTION NO. 05-494

JERRY NATALE, on behalf of himself and     )
all others similarly situated,             )
                                           )
                Plaintiffs,                )
                                           )
v.                                         )
                                           )
PFIZER, INC.                               )
                                           )
                Defendant.                 )
                                           )

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
OF THE COUNTY
2005

## ASSENTED-TO MOTION TO EXTEND TIME
## TO MOVE, ANSWER OR OTHERWISE RESPOND TO COMPLAINT

Defendant Pfizer, Inc. hereby moves that the time in which it may move, answer or

otherwise respond to the Complaint filed herein be extended to and include Friday, April 29,

2005. This agreed upon response date occurs well before the response date established by the

Tracking Order in this matter. Plaintiff, by the signature of his counsel, assents to this motion.

2005, March 23
After review, motion allowed
up until 4-29-05.
Attest Leona M. Kusma
Assistant Clerk
(Fishman, J.)

PFIZER, INC.

By its attorneys,

William M. Cowan, Esquire
BBO #566940
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000

OF COUNSEL:

Thomas Smart, Esquire
Richard DeSevo, Esquire
Kaye Scholer LLP
425 Park Avenue
New York, NY  10022
(212) 836-8000


Assented to:
JERRY NATALE
by his counsel

David Pastor, Esquire
Gilman and Pastor LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA  01906
(781) 231-7850

2

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Assented-To Motion to Extend*

*Time to Move, Answer or Otherwise Respond to Complaint* was served on this 18th day of

March, 2005 via first class mail upon counsel of record:

David Pastor, Esquire
Douglas J. Hoffman, Esquire
Gilman and Pastor LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA  01906

Roy A. Katriel, Esquire
The Katriel Law Firm, P.C.
1101 30th Street, NW, Suite 500
Washington, D.C.  20007

Jacqueline Sailer, Esquire
Eric J. Belfi, Esquire
Murray, Frank & Sailer, LLP
275 Madison Avenue, Suite 801
New York, NY  10016

William M. Cowan

LIT 1510273v1

**TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —**
**TORT — MOTOR VEHICLE TORT — CONTRACT —**
**EQUITABLE RELIEF — OTHER**

## COMMONWEALTH OF MASSACHUSETTS

................... MIDDLESEX ............... , ss
[seal]

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No.

JERRY NATALE, on behalf
of himself and all others
similarly situated........ , Plaintiff(s)

05— 494

v.

PFIZER, INC.
..................................... , Defendant(s)

MAR 3  2005

## SUMMONS

To the above-named Defendant:  Pfizer, Inc., c/o CT Corporation System
101 Federal Street, Boston, MA 02110, as Registered Agent

You are hereby summoned and required to serve upon ...................................................

David Pastor
.................................. plaintiff's attorney, whose address is ... Gilman and Pastor, LLP
999 Broadway, S. 500, Saugus, MA 01906

............................................................................, an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at ...... Cambridge ...........

.......................................................... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.
Barbara J. Rouse
Witness, ~~Suzanne V. DelVecchio~~ Esquire, at .... Cambridge ...................................

the ................ 11th ....................... day of .... February ...........................................

...................., in the year of our Lord .. 2005 .............................. .

Edward J Sullivan

**Clerk**

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used
   for each defendant, each should be addressed to the particular defendant.

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on .......... FEBRUARY 23, .................. (12:15 P.M.) ................

20..05..., I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)): TOGETHER WITH A COPY OF THE TRACKING ORDER BY DELIVERING SAID COPIES TO C.T. CORPORATION SYSTEMS, IT'S RESIDENT AGENT FOR SERVICE OF PROCESS AND GIVING SAID COPIES IN HAND TO ALISON LIBERTO, IT'S AGENT AND PERSON IN CHARGE OF THE BUSINESS. SAID SERVICE WAS MADE AT 101 FEDERAL STREET, BOSTON, MASSACHUSETTS. SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY.

DAVID G. BEDUGNIS, SR., CONSTABLE/DISINTERESTED PERSON

Dated: ... FEBRUARY 23, 2005 ................ ROSCOE, BEDUGNIS & ASSOCIATES
          at 12:15 P.M.                    15 COURT SQUARE, SUITE 450
                                           BOSTON, MASSACHUSETTS  02108

## N.B. TO PROCESS SERVER:
**PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

(  _____  )
(  ........ FEBRUARY 23 ........ 2005 ..  )
(       at 12:15 P.M.

COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 05-494

MIDDLESEX ...... ss.

JERRY NATALE, individually and
on behalf of himself and all
others similarly situated ....... Plff.

v.

PFIZER, INC. ............ Deft.

SUMMONS
(Mass. R. Civ. P. 4)