# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| JERRY NATALE, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| PFIZER INC., | ) ) |
| Defendant. | ) ) ) |

_____

Civil Action No.: 05-cv-10590-WGY

## MEMORANDUM  IN SUPPORT OF MOTION TO REMAND

### INTRODUCTION

Plaintiff Jerry Natale ("Plaintiff"), by and through his undersigned counsel of record, hereby submits this Memorandum in support of his Motion to Remand.  The Motion to Remand was necessitated by the improper removal of this action by Defendant Pfizer, Inc. ("Pfizer" or "Defendant").  In its Notice of Removal, Pfizer asserts only a single basis for federal jurisdiction, claiming that there is federal diversity jurisdiction over this action pursuant to the provisions of the Class Action Fairness Act, codified at 28 U.S.C. §§ 1332(d), 1453 (hereinafter referred to as "CAFA").   Defendant has not asserted any other basis for federal jurisdiction.

Because CAFA  is only applicable to actions commenced on or after February 18, 2005, the date of its enactment,[1] and because this action was commenced on February 14, 2005, the date it was first filed in Middlesex Superior Court, a court of proper jurisdiction, CAFA has no application

_____

[1]     *See* P.L. 109-2, Sec. 9.

here and cannot provide a basis for federal jurisdiction. Pfizer, however, contends that an action is "commenced" under CAFA when it is removed to federal court and that, therefore, its removal of this action after the effective date of the statute leads to federal jurisdiction under CAFA. In other words, there is federal jurisdiction under CAFA because Pfizer has removed the case asserting that there is federal jurisdiction under CAFA.

Not surprisingly, this untenable and circular logic advanced by Pfizer here has been rejected by every district court and court of appeal to consider it thus far, including three cases in which Pfizer was the removing defendant. *Pritchett v. Office Depot, Inc.*, __ F. Supp. 2d __, 2005 WL 563979 (D. Col. Mar. 9, 2005)[2], *affirmed*, __ F. 3d __, 2005 WL 827158 (10th Cir. April 11, 2005) [3] (" the term 'commenced' in Section 9 of [CAFA] refers to the date the action was first filed in a court of proper jurisdiction, and not the date that it was removed to federal court. Consequently, the Act does not apply to cases, such as this one, commenced prior to February 18, 2005);[4] *Hankins v. Pfizer, Inc.*, CV 05-1797 ABC (Rzx), at 3 (CD. Cal. March 25, 2005)[5] (" [r]emoving defendants cannot rely on diversity conferred by CAFA, which was not enacted at the time the state action was filed"); *Smith v. Pfizer*, *Inc.*, Case No. 05 cv-0112-MJR at 9 (S.D. Ill. March 24, 2005)[6] ("[t]his Court rejects Pfizer's argument that 'commenced' means the date the case reached federal court (*i.e.*, the date a case was removed) rather than the date the complaint was filed"); *Lott v. Pfizer, Inc.*,

---

[2]    Referred to herein as *Pritchett* DC.

[3]    Referred to herein as *Pritchett* App.

[4]    *Pritchett* DC, 2005 WL 563979 at *5 (footnote omitted).

[5]    Copy submitted herewith as Exhibit A.

[6]    Copy submitted herewith as Exhibit B.

Case No. 05-cv-0230-MJR at 4 (S.D. Ill. April 7, 2005)[7] (same). Each of these decisions addressed the **exact issue raised by Pfizer's Notice of Removal here**: what constitutes commencement of an action under CAFA. Although Pfizer cites cases in its Notice of Removal ("NOR") which address other jurisdictional provisions and amendments (NOR at ¶ 11), nowhere in the two memoranda already filed by Pfizer on removal[8] does it cite a single case that adopts its position on the commencement of an action under CAFA.

Under these circumstances, the Court should grant Plaintiff's Motion to Remand, and given the courts' absolute rejection of Pfizer's removal argument and Pfizer's three prior unsuccessful attempts to assert it in other district courts, this Court should also order the payment of costs and attorneys fees by Pfizer under 28 U.S.C. § 1447(c).

## FACTS AND CLAIMS ALLEGED IN THE COMPLAINT

On February 14, 2005, Plaintiff commenced this action by filing his Class Action Complaint (hereafter referred to as the "CAC") in Middlesex Superior Court. In the CAC, Plaintiff seeks certification of a statewide class consisting of all Massachusetts consumers who purchased Listerine® Antiseptic Mouthrinse ("Listerine") between February 11, 2002 and the present. (CAC ¶¶ 1,40). Plaintiff alleges that Pfizer's advertising campaign, which touted Listerine as a substitute for flossing -- "Listerine as effective as Floss-Clinical studies prove it" -- knowingly contained materially false and misleading misrepresentations, statements and omissions. Plaintiff seeks to recover damages for himself and members of the class under his claim of common law fraud.

---

[7]    Copy submitted herewith as Exhibit C.

[8]    Pfizer's NOR and Defendant Pfizer's Notice of Additional Authority Regarding Removal ("NOAA").

(CAC ¶¶ 48-51).

The Middlesex Superior Court has jurisdiction over Pfizer pursuant to M.G.L. C. 223A, § 3, because Pfizer transacts significant commerce within the Commonwealth of Massachusetts and Middlesex County through its promotion and sale of Listerine.  (CAC ¶ 5).  Venue is proper within Middlesex County because Plaintiff is a resident of Middlesex County, the acts complained of occurred within that county, purchase of Listerine by consumer class members occurred within that county, and injury occurred there.  *Id.*  Plaintiff further alleges that "neither the individual Plaintiff nor any individual member of the class has damages exceeding $75,000 each."  (CAC ¶ 6).[9]

On  March 25, 2005, Pfizer filed its NOR with the United States District Court, removing the civil action from Middlesex Superior Court.  Pfizer asserts that there is federal diversity jurisdiction over this putative class action[10] pursuant of the provisions of CAFA, codified at 28 U.S.C. §§ 1332(d), 1453.  (NOR ¶2).   Pfizer concedes that section 9 of CAFA provides that the "amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act [February 18, 2005]."  (NOR ¶ 10).   Pfizer contends that the term *"commenced"* in section 9 means the commencement of proceedings in federal court following a timely removal of the action from state court.  *Id*.  Pfizer therefore contends that CAFA applies to this action as it was "commenced" on March 25, 2005 (the date of removal), or after the effective date of CAFA.  *Id.*

---

[9]    Defendant does not contend that the $75,000 amount in controversy requirement applicable to this action in the absence of CAFA is satisfied, nor does Defendant contend in any way that there would be diversity jurisdiction over this case without the application of CAFA.

[10]    Although Pfizer correctly states in ¶ 1 of the NOR that Plaintiff seeks a "statewide" class action, at ¶ 2 of the NOR, Pfizer references a "nationwide" class action. Plaintiff is seeking a statewide class action on behalf of Massachusetts consumers.

The action should be remanded to Middlesex Superior Court because the term

*"commenced"* in Section 9 of the CAFA refers to the date the action was first filed in state court.

*Pritchett* DC at *5; *Pritchett* App. at *2, *5.

### ARGUMENT

I.    **THE DISTRICT COURT LACKS SUBJECT MATTER JURISDICTION AND THIS CASE MUST BE REMANDED**

A civil action is removable only if the plaintiff could have originally brought the action in

federal court. *See* 28 U.S.C. § 1441(a).  "If at any time before final judgment it appears that the

district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

Generally, absent diversity jurisdiction, a case will not be removable if the complaint does not

affirmatively allege a federal claim. *Beneficial National Bank v. Anderson*, 123 S. Ct. 2058, 2062

(2003) ("*Beneficial*").  It is axiomatic that the removal statute is to be strictly construed and that any

doubts about the propriety of removal are to be resolved against the removal of an action. *See*, *e.g.,*

*Danca v. Private Health Care Systems, Inc.*, 185 F. 3d 1, 4 (1st Cir. 1999); *BIW Deceived v. Local*

*S6*, 132 F. 3d 824, 831 (1st Cir. 1997); *Alshrafi v. American Airlines, Inc.*, 321 F.Supp. 2d 150, 153

(D. Mass. 2004, Young, C.J.); *American Buildings Company v. Varicon, Inc.*, 616 F.Supp. 641, 643

(D. Mass. 1985, Young, J.).[11]  Furthermore, a party seeking to remove a case to federal court has the

burden of demonstrating the existence of federal jurisdiction. *BIW Deceived*, 132 F. 3d at 831;

*Alshrafi*, 321 F.Supp. 2d at 153; *Gattegno v. Sprint Corporation*, 297 F. Supp. 2d 372, 374 (D.

Mass. 2003).

Pfizer does not allege any federal subject matter jurisdiction; the sole basis for removal is

---

[11]    There is nothing in CAFA that can be read to abrogate this basic principle, nor has Pfizer cited any provision or language which has such an effect.

Pfizer's assertion that this court has "federal diversity jurisdiction" over this action under CAFA. (NOR ¶2). Pfizer concedes that CAFA only applies to "any civil action commenced on or after the date of enactment of this Act [February 18, 2005]" (NOR ¶ 10), and that its sole basis for federal diversity jurisdiction is dependent on its argument that the term *"commenced"* in Section 9 of CAFA refers to the date the action was *removed* to federal court rather than the date the action was *first filed* in Middlesex Superior Court. NOR ¶20. Pfizer's interpretation of the term "commenced" is not valid, and it has been rejected by each federal court to address the issue. Pfizer, therefore, fails to establish its burden of demonstrating the existence of federal diversity jurisdiction.

## II.     THERE IS NO DIVERSITY JURISDICTION.

CAFA was passed by Congress on February 18, 2005. P.L. 109-2. By its provisions, CAFA amended 28 U.S.C. § 1332 to establish subject-matter jurisdiction in federal court over class actions where (1) the putative class action consists of at least 100 proposed class members; (2) the citizenship of at least one proposed class member is different from that of the defendant, and (3) the matter in controversy, after aggregating the claims of the proposed class members, exceeds five million dollars, exclusive of interest and costs. P.L. 109-2, Section 4; 28 U.S.C. § 1332(d). Section 5 of CAFA allows for the removal of such applicable class actions to federal court. P.L. 109-2, Section 5; 28 U.S.C. § 1453. As noted above, CAFA was enacted on February 18, 2005. NOR, ¶ 10. By its specific terms, "[t]he amendments made by this Act shall apply to any civil action *commenced on or after* the date of enactment of this Act." P.L. 109-2, Section 9.

The sole basis for Pfizer's removal of this action from Midldlesex Superior Court to this Court was on the specific ground that CAFA conferred federal diversity jurisdiction. If CAFA does not apply to class actions that were filed in state court *prior* to February 18, 2005, then there is no

basis for federal jurisdiction.  Inasmuch as the only Courts to consider this issue to date have

determined that CAFA does not apply to actions  that were commenced in state court *prior* to

February 18, 2005, this Court should determine that CAFA is not applicable to this action and grant

Plaintiff's motion to remand.

In *Pritchett*, both the District Court and the Court of Appeals considered, among other

things: a) the narrow construction to be given to removal statutes;[12] b) the rational and logical

meaning of the word "commenced";[13] c) the legislative history of CAFA;[14] and d) prior precedent,

including certain of the cases cited by Pfizer in its NOR.[15]  After having reviewed and analyzed each

of the above elements, both Courts reached the following conclusion:

> Accordingly, this Court determines that the term "commenced" in
> Section 9 of the Act refers to the date the action was first filed in a
> court of proper jurisdiction, not the date that it was removed to federal
> court.  Consequently, the Act *does not apply* to cases, such as this
> one, commenced prior to February 18, 2005.

*Pritchett* DC at *5(emphasis added).  *See also Pritchett* App at *5 ("[b]ecause we conclude that

removal to federal court does not 'commence' an action for the purposes of the Class Action

Fairness Act of 2005, the district court's remand order is AFFIRMED."

In *Pritchett*, the Court of Appeals started with the "well-established" principle that "statutes

conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly

construed."  *Pritchett* App. at *3; *see also Pritchett* DC at *4 (noting that all doubts are to be

---

[12]     *Pritchett* DC at *4; *Pritchett* App. at *3.

[13]     *Pritchett* DC at *3; *Pritchett* App. at *2.

[14]     *Pritchett* DC at *3; *Pritchett* App. at *3.

[15]     *Pritchett* DC at *1-2; *Pritchett* App. at *3-4..

"resolved against federal jurisdiction"). The Court also considered the meaning of the term

"commenced,." concluding that "a cause of action is commenced when it is first brought in an

appropriate court, which here [and in this case] was when it was brought in state court." *Pritchett*

App. at *2. *Pritchett* DC at *3 (same). Significantly, the Court of Appeals in *Pritchett* reviewed

the legislative history of CAFA, finding its conclusion to be supported by the elimination from the

final bill of a provision that would have expressly made actions pending in state court as of the

effective date subject to the act and by the presence of statements by sponsoring legislators:

> When the Act was originally in the House, the removal provision applied both to cases "commenced" on or after the enactment date and to cases in which a class certification order is entered on or after the enactment date. *See* H.R. 516, 109th Cong. § 7 (2005). In contrast, neither the Senate version of the bill nor the final statute passed by both houses of Congress provided for removal of actions certified on or after the enactment date. *See* S. 5, 109th Cong. § 9 (2005); § 9, 119 Stat. at 14. The Senate version and the final statute provided only for application of the Class Action Fairness Act to civil actions "commenced" on or after the date of the Act. S. 5; § 9, 110 Stat. at 14. It is thus clear that Congress initially started out with broader language that could have included a number of then-pending lawsuits in state courts. By excising the House provision, Congress signaled an intent to narrow the removal provisions of the Act to exclude currently pending suits. Further, we note that the Congressional Record contains two statements from sponsoring legislators indicating that the bill was not designed to apply to currently pending lawsuits. *See* 151 Cong. Rec. S1080 (daily ed. Feb. 8, 2005) (statement of Sen. Dodd) ("A case filed before the date of enactment will be unaffected by any provision of this legislation."); 151 Cong. Rec. H753 (daily ed. Feb. 17, 2005) (statement of Rep. Goodlatte) ("the legislation . . . would have absolutely no effect on the 75 class actions already filed against Merck in the wake of the Vioxx withdrawal.")

*Pritchett* App. at *3 (footnotes omitted).

Finally, *Pritchett* addressed some prior cases dealing with other jurisdictional provisions,

including certain cases cited by Pfizer, *Lorraine Motors, Inc. v. Aetna Cas. & Surety Co.*, 166 F.

Supp. 319 (E.D.N.Y. 1958) and *Hunt v. Transport Indem. Ins. Co.*, 1990 WL 192483 (D. Haw. July

30, 1990). The Court of Appeals noted that *Lorraine Motors* and *Hunt* are "relevant only by

analogy," as they dealt with a completely different statutory provision, *Pritchett* App. at *3, and that

"their persuasive value is diluted . . . by the presence of contemporaneous contrary authority from

other federal district courts."[16]  *Pritchett* App. at *4.  The Court of Appeals  then noted that the

reasoning in *Lorraine Motors* and *Hunt* "actually support[ed] [its] interpretation of the term

'commenced'" and that both cases "rely heavily upon the principle that removal statutes are to be

strictly construed, with all doubts resolved against removal."  *Id.*

The District Court in *Pritchett* also recognized the faulty reasoning advanced by the

removing defendant in that case (and by Pfizer here): "it offends reason to permit the removal of a

case where the current requirements of diversity jurisdiction were not present at the time the case

was first filed in state court."  *Pritchett* DC at *4 (internal quotation marks omitted).

Realizing that *Pritchett* provides a sound basis for remanding this case to state court, Pfizer

tries vainly to distinguish or discredit *Pritchett*.  Pfizer notes that *Pritchett*, being from the 10th

Circuit, is not controlling in this Court.  NOR ¶ 22.  This is, of course, true, but *Pritchett* certainly

constitutes persuasive authority, particularly given that it is the first circuit court of appeal to opine

on this issue, that CAFA is barely two months old and that there is no authority from this District or

from within the First Circuit on this issue.  Moreover, all of the cases cited by Pfizer in support of

removal are from other federal circuits.  *See* NOR ¶ 11; NOAA at 2, n.1, 3.  Pfizer also points out

that in *Pritchett*, the removal took place more than 30 days after service and after a class had been

certified.  However, the Court in *Pritchett* explicitly holds that CAFA does not apply to *any* case

---

[16]    *Citing Keiffer v. Travelers Fire Ins. Co.*, 167 F. Supp. 398, 402 (D. Md. 1958) (holding that action is "commenced" on initial filing date in state court and declining to impose higher amount-in-controversy requirement imposed prior to removal) and *Rhinehart v. Cincinnati, Inc.*, 716 F. Supp. 7,8 (E.D. Mich. 1989) (same).  *See also Lomax v. Duchow*, 163 F. Supp. 873, 874 (D. Neb. 1958) (same)

filed in state court prior to February 18, 2005. *Pritchett* App. at *5; *Pritchett* DC at *5. Further, this distinction is undermined by the decisions in *Hankins*, *Smith* and *Lott*, in which the state court actions were removed within the 30-day period and in which no classes were certified.

Pfizer also tries to discredit *Pritchett* by contending that its holding is contrary to the intent of Congress, in enacting CAFA, to expand federal jurisdiction. NOR ¶ 24. However, despite Pfizer's protestations to the contrary, the District Court in *Pritchett* is correct when it states: "[a]lthough the Act is unusual in that it seeks to broaden federal jurisdiction in certain specified circumstances, it does not purport to abrogate [the principle that removal statutes are to be strictly construed and doubts are to be resolved against federal jurisdiction]." *Pritchett* DC at *4. The Court of Appeals also addressed this point, as follows: "[w]e are mindful of the fact that Congress' goal in passing this legislation was to increase access to federal courts, and we also recognize that the Senate report instructs us to construe the bill's terms broadly. But these general sentiments do not provide *carte blanche* for federal jurisdiction over a state class action any time the statute is ambiguous. While it is clear the Congress wished to expand federal jurisdiction, **when** that expansion is made effective is what is at issue in this case, and that is an issue we approach cautiously." (citations omitted) (emphasis added).[17] *See also Pritchett* DC at *3 ("the general statement of purpose [of broadening access to the federal courts] in Section 2 of the Act does not address the more specific question of Congress' intent with regard to the effect of the act on existing cases. The legislative history provides some evidence of a Congressional intent not to affect existing cases."

_____

[17]     Pfizer attempts to discredit *Hankins* on the same basis, NOAA at 2, but Pfizer is wrong for the reasons stated above with respect to *Pritchett*.

Pfizer also attempts to discredit *Hankins*, *Smith* and *Lott* on the basis that those courts confused retroactivity with CAFA's provision that the Act applies to actions commenced on or after its enactment date.  NOAA at 3.  This criticism is misplaced, since these courts clearly "reject[] Pfizer's argument that 'commenced' means the date the case reached federal court (*i.e.*, the date a case was removed) rather than the date the complaint was filed."  *Smith* at 9.  *See also Lott* at 4; *Hankins* at 3.  Further, notwithstanding any references to retroactivity, what these courts make clear is that is that the legislative intent for CAFA is that it "would not affect pending cases."  *Smith* at 10, *quoting* 151 Cong. Rec. H471 (Feb. 17, 2005)(remarks of Rep. Udall).

The cases cited by Pfizer in its NOR[18] do not support its contention here that CAFA applies to cases filed in state court before CAFA's effective date but removed subsequent to that date.  First, none of these decisions, from other circuits, are controlling here.  While, as Pfizer has pointed out, the same is true of *Pritchett*, there is a fundamental difference between *Pritchett* and these other cases.  *Pritchett* represents the first (and to date the only) circuit-level decision to address the exact issue raised by Pfizer's removal, whereas the cases cited by Pfizer address completely different jurisdictional provisions and are relevant, if at all, only by analogy.  Second, as noted above,  the cases cited by Pfizer, to the extent that they stand for the proposition that an action is commenced (for the purpose of certain federal jurisdictional provisions) when it is removed to federal court, their value is undercut by the presence of contemporaneous contrary authority.  *See*, *e.g.*, *Rhinehart*, *supra*; *Kieffer*, *supra*; *Lomax*, *supra*.  Pfizer barely bothered to address these cases, dismissing them in a footnote, with little or no discussion.  *See* NOR ¶ 24, n. 2.  Finally, the majority of the

---

[18]     *Cedillo v. Valcar Enterprises*, 773 F. Supp. 932 (N.D. Tex. 1991); *Hunt*, *supra*; *Abernathy v. Consol. Cab. Co.*, 169 F. Supp. 831 (D. Kan. 1959); *Casteel v. Great Southern Trucking Co.*, 167 F. Supp. 435 (E.D. Tenn. 1958); *Lorraine Motors*, *supra*.  *See* NOR Par. 11.

aforementioned cases cited by Pfizer (*Lorraine Motors*, *Hunt* and *Abernathy*) rely on the principle that removal statutes are to be strictly construed.  They are, therefore, consistent with *Pritchett* and support the construction of CAFA that would result in a remand of this case.  *See Lorraine Motors*, 166 F. Supp. at 322 ("[i]t has been held uniformly that the removal statutes are to be strictly construed and that removal should not be granted if there is doubt as to the right of removal in the first instance") (citations omitted); *Hunt*, 1990 WL 192483 at *2; *Abernathy*, 169 F. Supp. at 834 ("[t]he policy of the statute (conferring diversity jurisdiction upon the district courts) calls for its strict construction").

    *Cedillo*, for additional reasons, does not support Pfizer's position here. The *Cedillo* Court found, with very little discussion, that the Judicial Improvements Act of 1990, codified as 28 U.S.C. § 1367, applied to a case that was filed in state court prior to the effective date of the statute but removed after the effective date.  *Id.*, 773 F. Supp. at 939.  The Court does this without **any** discussion, much less any analysis, of the legislative history or purpose of § 1367.  In addition, the Court makes the following statement, its only discussion on the issue, without any citation to supporting authority: "[t]he statute applies to the present case because the pertinent time for determining federal jurisdiction is the date on which such jurisdiction is invoked." *Id.*[19]  There is also another significant difference between *Cedillo* and the other cases cited by the parties addressing the applicability of federal jurisdictional statutes.  In most or all of the other cases, the result was directly dependent on whether or not a specific jurisdictional provision applied to that case.  In *Cedillo*, by contrast, the result may very well not have been affected by the Court's

---

    [19]    This stands in sharp contrast to the reasoned and thoughtful discussion of the legislative history and purpose of CAFA by both the District Court and the Court of Appeals in *Pritchett*.  *See Pritchett* DC at *3; *Pritchett* App. at *3.

application of § 1367, and it is entirely possible that the Court may have found federal jurisdiction over the plaintiff's state law claim under the prior governing principles of pendent jurisdiction. Indeed, the *Cedillo* Court expressly noted that § 1367 "ratifies and incorporates the constitutional analysis [with regard to pendent jurisdiction] the Supreme Court made in the *Gibbs* case." *Id.*, 773 F. Supp. at 939 (citation omitted).  And when the Court analyzed whether or not supplemental jurisdiction under § 1367 was present, it performed the analysis with reference to the standard enunciated in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).  *See, e.g.*, *id.* at 940, 942.

Because this court did not have original jurisdiction over this case at the time it was filed in Middlesex Superior Court, it must be remanded to State Court.

## III.    PFIZER SHOULD BE ORDERED TO PAY PLAINTIFFS' COSTS AND ATTORNEYS' FEES UNDER 28 U.S.C. § 1447(c)

When a case is remanded to state court, 28 U.S.C. § 1447(c) allows a court to order the payment of "just costs and any actual expenses, including attorney fees incurred as a result of the removal."  Whether to award fees on a remand is a "matter for the exercise of the sound discretion of the court." *Gray v. New York Life Ins. Co.*, 906 F. Supp. 628, 631 (N.D. Ala. 1995).  *See also Kanter v. Warner-Lambert Co.*, 52 F. Supp. 2d 1126, 1132 (N.D. Cal. 1999) ("[t]he Court may, in its discretion, issue such an order under 28 U.S.C. § 1447(c)").  "A significant number of district courts have since 1988 routinely awarded attorneys' fees under § 1447(c)." *Gray*, 906 F. Supp. at 631-632 (listing eight cases).  "The purpose of such an award is not to punish defendants, but rather to reimburse plaintiffs for unnecessary litigation costs." *Kanter*, 52 F. Supp. 2d at 1132, *citing Moore v. Permanente Medical Group, Inc.*, 981 F. 2d 443, 447 (9th Cir. 1992).  The cost provision "is not a sanctions rule; it is a fee shifting statute, entitling the district court to make whole the

victorious party . . . and plaintiffs as prevailing parties are presumptively entitled to recovery of attorneys' fees incurred in defending their award." *Garbie v. Daimler Chrysler Corp.*, 211 F.3d 407, 409-411 (7th Cir. 2000). Just costs may be awarded even absent a showing of bad faith on the part of the removing party. *Fardella v. Downey Savings & Loan Assn.*, 2001 WL 492442, at *4 (N.D. Cal. 2001), *citing Moore*, 981 F. 2d at 446-447.

Indeed, in exercising the court's discretion to award fees under § 1447(c), "the presumption is in favor of awarding attorneys fees in the event the removal is found to have been improvident and/or the fatal defect in the removal is not of the waivable variety." *Gray*, 906 F. Supp. at 632-633. That is certainly the case here, since Pfizer's removal of this case was wholly without merit, contrary to clear authority and contrary to the letter and spirit of CAFA. Moreover, Pfizer has itself tried this same removal argument in three separate cases and had it rejected each time. Therefore, Plaintiff should not be forced to foot the bill for Pfizer's irresponsible removal of this case. The Court should exercise its discretion here and require Pfizer to pay Plaintiff's costs and attorney fees incurred as a result of this improper removal. Such a result would be consistent with the compensatory, though not punitive, cost provision in the statute.

## CONCLUSION

For all of the reasons set forth herein, Plaintiffs' Motion to Remand should be granted, and this action should be remanded to the Middlesex Superior Court. The Court should also exercise its

discretion under § 1447(c) to require Pfizer to pay Plaintiff's "just costs and any actual expenses,

including attorney fees incurred as a result of the removal."

Dated: April 15, 2005                                    Respectfully submitted,


                                                         /s/David Pastor
                                                         David Pastor (BBO# 391000)
                                                         GILMAN AND PASTOR, LLP
                                                         Stonehill Corporate Center
                                                         999 Broadway, Suite 500
                                                         Saugus, MA 01906
                                                         Telephone: (781) 231-7850

Of Counsel

Jacqueline Sailer
Gregory Linkh
MURRAY, FRANK & SAILER, LLP
275 Madison Avenue  Suite 801
New York, NY 10016-1101
Telephone:  (212) 682-1818

Roy A. Katriel
THE KATRIEL LAW FIRM, P.C.
1101 30th Street, NW   Suite 500
Washington, DC 20007
Telephone:  (202) 625-4342

# EXHIBIT A



Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

ENTERED
CLERK. U.S. DISTRICT COURT

MAR 29 2005

CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

MONICA HANKINS,

                    Plaintiff

          v.

PFIZER, INC., et al.,

                    Defendants.

CV 05-1797 ABC (RZx)

ORDER REMANDING CASE TO STATE
COURT

BC327641

   On January 24, 2005, Plaintiff filed a complaint in Los Angeles
County Superior Court against Pfizer, Inc., Pharmacia & Upjohn, Inc.
(a/k/a Pharamacia & Upjohn Co.), and McKesson Corp.  Plaintiff's
complaint alleges a single cause of action, namely, state law unfair
competition.  On March 11, 2005, Pfizer, Inc., Pharmacia & Upjohn,
Inc. (a/k/a Pharamacia & Upjohn Co.) (together, "Removing Defendants")
removed the action to this Court on the basis of diversity
jurisdiction.[1]

_____

   [1] Removing Defendants do not assert that the Court has federal
question jurisdiction, as Plaintiff's complaint involves a single
state law claim.

(7)

1     Federal courts have jurisdiction under 28 U.S.C. § 1332(a) where

2 an action is between citizens of different states and the amount in

3 controversy exceeds $75,000. The removal statutes are to be strictly

4 construed; there is an inherent "'strong presumption' against

5 removaljurisdiction." <u>Gaus v. Miles</u>, 980 F.2d 564, 566 (9th Cir.

6 1992)(quoting <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S.

7 283, 288-89 (1938)). On February 18, 2005, the Class Action Fairness

8 Act ("CAFA") was passed creating federal diversity jurisdiction where

9 "the matter in controversy exceeds the sum or value of $5,000,000,

10 exclusive of interests and costs, and is a class action in which . .

11 .(A) any member of a class of plaintiffs is a citizen of a State

12 different from any defendant . . . ." 28 U.S.C. § 1332(d)(2).

13     Although Plaintiff initiated this action on January 24, 2005,

14 well <u>before</u> the enactment of CAFA on February 18, 2005, Removing

15 Defendants assert that CAFA governs. In support of this argument,

16 Removing Defendants cite <u>Hunt v. Transport Indemnity Ins., Co.</u>, 1990

17 U.S. Dist. LEXIS 16555 (D. Haw. July 30, 1990) as authority that the

18 date of commencement of an action is determined by the date an action

  is removed to federal court. <u>See</u> Notice of Removal ¶ 2.

19     <u>Hunt</u> involved the 1988 amendment to 28 U.S.C. § 1332, which

20 raised the jurisdictional amount in controversy required for diversity

21 from $10,000 to $50,000. The <u>Hunt</u> court remanded a state action

22 seeking an amount in controversy more than $10,000, but less than

23 $50,000. The state action was commenced before, but removed after,

24 the effective date of the jurisdictional increase. In remanding, the

25 <u>Hunt</u> court construed the date of removal as controlling because of the

26 Ninth Circuit's clear preference for construction of removal statutes

27 against removal.

28

2

1    <u>Hunt</u> is not controlling authority.  In any event, if this Court

2    were to adopt similar reasoning, this Court would construe CAFA

3    against removal such that the date of filing in state court controls,

4    given the strong presumption against removal.  <u>See</u> <u>Gaus</u>, 980 F.2d at

5    566 (quoting <u>St. Paul Mercury Indem. Co.</u>, 303 U.S. at 288-89).[2]

6         Because the Removing Defendants cannot rely on diversity

7    conferred by CAFA, which was not enacted at the time the state action

8    was filed, Removing Defendants must demonstrate diversity jurisdiction

9    according to 28 U.S.C. § 1332(a).  However, Removing Defendants cannot

10   show that the amount in controversy exceeds $75,000, as Plaintiff

11   specifically alleges that the amount in controversy is less than

12   $75,000.  <u>See</u> Complaint at 12-13.

13        Therefore, on the Court's own motion, on the basis of the lack of

14   either federal question or diversity jurisdiction, the case is

15   REMANDED to state court.[3]

16

17        **SO ORDERED.**

18   **DATED:**    _March 25, 2005_

19

20                                      **AUDREY B. COLLINS**

21                                   **UNITED STATES DISTRICT JUDGE**

22   _____

23        [2]  The Court notes that CAFA specifically provides that the
     citizenship of class members shall be determined as of the date of

24   filing of the complaint.  <u>See</u> 28 U.S.C. 1332(d)(7).

25        [3]  The Notice of Removal contained several procedural defects,
     including the failure of all defendants to join in the removal and

26   Removing Defendants' failure to establish that the case was removed
     thirty (30) days from when the <u>first</u> defendant was served.  However,

27   given that the Court bases its remand on the lack of jurisdiction,
     these procedural defects are moot.

28

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **MARY SMITH, individually and** | ) | |
| **on behalf of similarly situated individuals,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 05-cv-0112-MJR** |
| | ) | |
| **PFIZER, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM and ORDER

**REAGAN, District Judge**:

In the Circuit Court of Madison County, Illinois, Mary Smith filed a putative class action against Pfizer, Inc., manufacturer of a prescription pain relief medication "Bextra." Pfizer timely removed the case on February 18, 2005, invoking this Court's subject matter jurisdiction under the federal diversity statute, **28 U.S.C. § 1332**. Ten days later, Judge Herndon recused, and the case randomly was reassigned to the undersigned District Judge.

Before the Court is Plaintiff Smith's fully-briefed remand motion. For the reasons described below, the Court finds that it lacks subject matter jurisdiction and grants the motion.

Smith's state court complaint, based on an Illinois consumer fraud statute, alleges that Pfizer negligently marketed Bextra, despite the fact Pfizer knew of dangerous side effects and symptoms of the drug.

Of significance is what Smith's complaint does *not* seek. She does not sue for any personal injury she or others may have sustained as a result of ingesting Bextra. Nor does she pray for injunctive relief. Rather, she seeks compensatory damages to cover the costs of medical monitoring and testing which would facilitate early detection of any injuries.

Specifically, the complaint asks for damages "sufficient to cover the costs of periodic medical examinations which are reasonably necessary to detect and enable early treatment of injuries and/or diseases caused by Bextra" (Doc. 2, p. 6). As explained further below, this aspect of the complaint plays a key role in determining the amount in controversy.

28 U.S.C. § 1332 confers original jurisdiction over suits between citizens of different states if (a) complete diversity exists between the parties, and (b) the amount in controversy exceeds $75,000, excluding interest and costs. The party invoking federal jurisdiction bears the burden of demonstrating that all jurisdictional requirements have been satisfied. *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997).

Here, complete diversity exists between the parties. The question is whether Pfizer has shown that the amount in controversy exceeds $75,000, excluding interest and costs.

For a defendant to successfully remove a class action based on diversity, at least one of the named plaintiffs must have a claim that surpasses the $75,000 jurisdictional bar. *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 607 (7th Cir. 1997), *cert. denied*, 522 U.S. 1153 (1998); *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 409 (7th Cir. 2000). If one named plaintiff meets the jurisdictional minimum, the other named plaintiffs and class members can "piggyback" on that plaintiff's claim, via supplemental jurisdiction under 28 U.S.C. § 1367. *Brand Name*, 123 F.3d at 607.

Pfizer's removal notice alleges: "it is Pfizer's good faith belief" that the amount in controversy exceeds $75,000 (Doc. 1, p. 2). Plainly, that allegation does not meet Pfizer's burden of proof as to the amount in controversy. *See, e.g., Chase*, 110 F.3d at 427 (**removing defendant must support allegations of diversity jurisdiction with "competent proof"**); *America's Best*

-2-

*Inns, Inc. v. Best Inns of Abilene, L.P.*, 980 F.2d 1072, 1074 (7th Cir. 1992)(allegations based upon information and belief are insufficient to support diversity jurisdiction).

Pfizer does offer proof to support its contention that the amount in controversy exceeds $75,000. With the removal notice, Pfizer submitted the declaration of Dennis R. Connolly, who has experience in tort-related medical monitoring programs. Connolly suggests that the medical monitoring requested by Smith in this case actually will be much more extensive than Smith anticipates and, despite the fact the class is defined to include only consumers who purchased Bextra in Illinois, the consumers to be tested – and the doctors doing the testing – would be located "throughout the country" (Doc. 1, Exh. C, p. 2).

Furthermore, Connolly predicts that the monitoring will require the establishment of a claims-handling facility. According to Connolly, the cost of "siting" that facility will include expenditures to rent space, store records, manage operations, install hardware and communication lines, purchase furnishings, staff the operations center, train the staffers, and compile and analyze the results of all medical monitoring (*Id.*, p. 3). Relying on the Connolly declaration, Pfizer maintains that the cost to set up this facility and provide medical monitoring for "hundreds of thousands" of class members easily exceeds $75,000, justifying the exercise of jurisdiction in this case.

The Court disagrees. This Circuit does recognize that, in determining the amount in controversy, the Court may consider the cost to defendant of enforcing the requested relief, as well as the value to plaintiff of obtaining that relief. *McCarty v. Amoco Pipeline Co.*, 595 F.2d 389, 395 (7th Cir. 1989)(adopting "either viewpoint" rule under which the Court may consider the "pecuniary result to either party which the judgment would directly produce").

-3-

But it is far from clear that the either viewpoint rule applies in a case, such as this, in which the plaintiff requests no injunctive relief and instead seeks only compensatory damages. For instance, in *Uhl v. Thoroughbred Technology and Telecommunications, Inc.*, 309 F.3d 978, 983-84 (7th Cir. 2002), the United States Court of Appeals for the Seventh Circuit sharply distinguished cases in which only money damages were sought (such as Smith's case against Pfizer) from cases in which injunctive relief was sought.

The Court emphasized:

> In a case that seeks only money damages, the amount the defendant will lose is more or less the same. But in a case like this one, for injunctive relief, there may be an asymmetry. The question has thus arisen whether it is proper in determining amount in controversy to look in the alternative to the cost the defendant will incur in complying with the injunction the plaintiff seeks. In this circuit, the answer to the latter question has been yes: it is established that the jurisdictional amount should be assessed looking at either the benefit to the plaintiff or the cost to the defendant of the requested relief – the so-called "either viewpoint" rule. *See, e.g., In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 609 (7th Cir.1997); *McCarty v. Amoco Pipeline Co.*, 595 F.2d 389, 391- 95 (7th Cir.1979). Those cases specifically establish that the cost to a defendant of complying with an injunction sought by the plaintiff may properly be considered in determining the amount in controversy

*Uhl* indicates that the either viewpoint assessment should be used only in cases in which the complaint includes a request for injunctive relief. *See also Gould v. Artisoft, Inc.*, 1 F.3d 544, 548 n.4 (7th Cir. 1993)(applying either viewpoint rule to case in which the pecuniary harm to the defendant from the injunctive relief requested by the plaintiff exceeded the amount in controversy). The instant case contains no such request.[1]

---

[1]    *See also* this Court's 10-20-2003 Order in *Flynn, et al. v. General Motors Corp., et al.*, Case No. 03-cv-0486-MJR, Doc. 34, p. 4 ("Defendants cite no cases extending the 'either viewpoint' rule to complaints seeking only monetary relief.").

-4-

Additionally, even if the either viewpoint rule *does* apply (if the Court accepts Pfizer's argument that Smith's prayer for compensatory damages is really a request for injunctive relief in disguise), the Court is not persuaded that the entire cost envisioned by Pfizer is chargeable to the single named plaintiff (Smith) from whose standpoint the Court evaluates the amount in controversy. As the Seventh Circuit explained in *Brand Name*, **123 F.3d at 609-10**:

> Whatever the form of relief sought, each plaintiff's claim must be held separate from each other plaintiff's claim from both the plaintiff's and the defendant's standpoint. The defendant in such a case is deemed to face multiple claims for injunctive relief, each of which must be separately evaluated.[2]

*Accord Del Vecchio v. Conseco, Inc.*, **230 F.3d 974, 977 -78 (7th Cir. 2000)(Even under the either viewpoint rule, each plaintiff's claim for relief must be separately evaluated. "That means, for Del Vecchio, that the amount in controversy from the defendants' point of view is the amount they risk paying him, not the amount they might have to pay the entire class.").**

The Court *does* find appeal in Pfizer's argument as to the effect of Smith's purported disclaimer of damages, but that does not support this Court's exercise of diversity jurisdiction.

Plaintiffs' counsel mistakenly believes that remand is warranted based solely on the allegations of the complaint and an accompanying affidavit of counsel. The complaint states:

> Plaintiff stipulates that she will not seek and will neither demand nor accept on behalf of any Class Member any recovery in excess of $75,000 exclusive of interest and costs.

Doc. 2, p. 2.

---

[2]    Nor does this case fit into the narrow exceptions to the anti-aggregation rule recognized in *Snyder v. Harris*, **394 U.S. 332 (1969)** and its progeny – the "common fund exception" which covers situations in which there is a single *res* at issue (like an estate), and the recovery is a "unitary whole." *See Del Vecchio*, **230 F.3d at 977-78.**

Simultaneously filed in state court with the complaint is an affidavit of Plaintiffs' counsel that "the total damages sought by the Plaintiff in this cause of action exceeds Fifty Thousand Dollars ($50,000), but is less than Seventy-Five Thousand Dollars ($75,000) per Plaintiff or class member [sic]."

This "stipulation" in Smith's complaint does not prevent removal. Allegations that a plaintiff seeks no more than $75,000 or will not accept damages over $75,000 do not, standing alone, preclude removal. Such allegations properly are *considered* by the Court (and have been considered by this Court in prior cases) but are not determinative of the amount in controversy.

In *American Bankers Life Assur. Co. of Florida v. Evans*, 319 F.3d 907, 908 (7th Cir. 2000), the Seventh Circuit (a) affirmed the determination by Judge William D. Stiehl of this Court that subject matter jurisdiction did not lie and (b) found insufficient an allegation which stated that the damages were "in no event to exceed $75,000."

> The district court properly ignored this detail – **it was neither a limit on recovery,** *see* 735 ILCS 5/2-604; *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 552 (7th Cir.2002) ... **nor a demand for $75,000,** *see De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir.1995)--and looked instead to the claim's actual value, *see In re Brand Name Prescription Drugs Antitrust Litigation*, 248 F.3d 668, 671 (7th Cir.2001),

*American Bankers*, 319 F.3d at 908 (emphasis added).

So, the language of the complaint, by itself, does not defeat removal here. Next, the Court examines to the affidavit filed with Plaintiffs' state court complaint in compliance with ILLINOIS SUPREME COURT RULE 222 ("**Any civil action seeking money damages shall have attached to the initial pleading the party's affidavit that the total of money damages sought does or does not exceed $50,000.**").

-6-

The law of this Circuit clearly holds: "Litigants who want to prevent removal must file a binding stipulation or affidavit with their complaints." *Chase*, 110 F.3d at 430, *citing In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992). *See also* CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE, Jurisdiction 3d § 3725 at 87 (a plaintiff's waiver of over $75,000 "must be truly binding on the plaintiff in state court before it will prevent removal"). The question is whether attorney Armstrong's Rule 222 affidavit (filed with Smith's state court complaint) is *binding* as to Smith's damages.

No Seventh Circuit case located by the undersigned Judge or cited by counsel squarely delineates what constitutes a legally binding stipulation/affidavit under *Shell Oil*. A number of federal district courts have held that, to prevent removal, a pre-removal affidavit or stipulation must be signed by the plaintiff, not just plaintiff's counsel. *See, e.g., Asbury-Castro v. GlaxoSmithKline, Inc.*, 352 F. Supp. 2d 729, 733 (N.D. W.Va. 2005)("to be operative, a disclaimer must be 'a formal, truly binding, pre-removal stipulation signed by counsel and his client explicitly limiting recovery'"); *Virden v. Altria Group, Inc.*, 304 F. Supp. 2d 832, 847 (N.D. W.Va. 2004) ("Therefore, absent a binding stipulation signed by Virden that he will neither seek nor accept damages in excess of $75,000, the Court must independently assess whether the defendants have proven by a preponderance of the evidence that Virden's complaint seeks damages in excess of $75,000."); *McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 485-86 (S.D. W.Va. 2001)("The better rule requires a formal, truly binding, pre-removal stipulation signed by counsel and his client explicitly limiting recovery.").

Other courts have interpreted an attorney's stipulation as binding on the plaintiff (even when not signed by the plaintiff), *if* the plaintiff confirmed in writing the attorney's authority

to bind the plaintiff. *See Dozier v. Kentucky Finance Co., Inc.,* 319 F. Supp. 2d 716, 719 (S.D. Miss. 2003)(complaint demand for less than $75,000 "coupled with the stipulation of plaintiff's counsel," whose authority to stipulate on behalf of plaintiff has been confirmed by plaintiff himself, established that amount in controversy did not exceed $75,000). *See also Dora v. Citifinancial, Inc.,* 2003 WL 22243996, *4 (N.D. Miss. 2003)(removal thwarted where plaintiffs affirmed that they were legally bound by stipulation which stated "Neither the individual Plaintiffs nor their lawyers will accept an amount that exceeds the federal jurisdictional minimum ...; Neither the individual Plaintiffs nor their lawyers will amend the complaint after one year to plead an amount in controversy in excess of the $74,900, per Plaintiff, nor will they authorize anyone on their behalf or their future heirs and assigns, to make such an amendment").

In the case at bar, the Court already has found the "stipulation" in the complaint that Plaintiff Smith will not seek or accept over $75,000 insufficient to block removal. (For one thing, Plaintiff could amend her complaint at any time and delete that language.) The separate affidavit tendered by lawyer Armstrong was not signed by Smith. Nor did Smith, in any pre-removal document, affirm that stipulation as binding her. The Court is not convinced that the affidavit is "binding" under *Shell Oil,* so as to effectively block removal. Thus, the undersigned Judge must look "instead to the claim's actual value." *American Bankers,* 319 F.3d at 908.

Smith seeks compensatory damages to cover the cost of periodic doctor visits – and presumably tests – to detect any injury or disease caused by ingesting Bextra (Doc. 2, p. 6). She seeks no injunctive relief or punitive damages. She does not ask for a comprehensive system of court-supervised medical monitoring.

-8-

Although the estimate of the amount in controversy contained in the complaint is not *dispositive* of the amount in controversy, the Court may consider it. Indeed, accepted wisdom provides " when deciding whether a claim meets the minimum amount in controversy, the plaintiff's evaluation of the stakes must be respected." *Barbers*, 132 F.3d at 1205. The Court cannot conceive how (and Pfizer has not demonstrated that) Smith's claim surpasses the $75,000 jurisdictional bar.

Nor does the Court find persuasive Pfizer's argument that subject matter jurisdiction lies here under the recently-enacted amendments to the federal jurisdictional statutes known as the "Class Action Fairness Act of 2005." **Pub. L. 109-2, Feb. 18, 2005, 119 Stat. 14.**

**28 U.S.C. § 1332(d)(2)(A)** now confers original subject matter jurisdiction on federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and is a class action in which any member of a class of plaintiffs is a citizen of a state different from any defendant. The statute explicitly permits aggregation of claims in class actions to reach the $5,000,000 hurdle. *See* **28 U.S.C. § 1332(d)(6)("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.").** Pfizer argues that the aggregated claims in the instant case easily exceed $5,000,000 (Doc. 11, p. 9).

The Court, however, concludes that the amendments in question do not apply, because this case was not "commenced on or after the date of enactment" (February 18, 2005). Plaintiff commenced this case by filing her complaint in Illinois state court on December 28, 2004.

The Court rejects Pfizer's argument that "commenced" means the date the case reached federal court (*i.e.*, the date a case was removed) rather than the date the complaint was filed.

-9-

Both a plain reading of the statute and the legislative history of the bill indicate that the jurisdictional amendments were never intended to apply retroactively. *See* **P.L. 102-9 ("The amendments made by this Act ... shall apply to any civil action commenced on or after the date of enactment of this Act."); 151 Cong. Rec. H741 (Feb. 17, 2005(remarks of Rep. Udall)("Unlike earlier versions, S. 5 would not have a retroactive effect, so it would not affect pending cases."). *See also* 151 Cong. Rec. H753 (Feb. 17, 2005)(remarks of Rep. Goodlatte); 151 Cong. Rec. S1080 (Feb. 8, 2005)(remarks of Sen. Dodd); 151 Cong. Rec. S1087 (Feb. 8, 2005)(remarks of Sen. Kennedy).**

Pfizer has not met its burden of establishing that the amount in controversy exceeds $75,000, exclusive of interest and costs. Jurisdiction does not lie under the federal diversity statute. Because this Court lacks subject matter jurisdiction, it **GRANTS** Smith's February 24, 2005 motion (Doc. 4) and **REMANDS** this case to the Circuit Court of Madison County, Illinois.

Smith did not request an award of costs and expenses of removal in her remand motion or supporting brief, and the Court **DECLINES** to award such costs under **28 U.S.C. § 1447(c).**

IT IS SO ORDERED.

DATED this __24th__ day of March, 2005.

s/Michael J. Reagan
MICHAEL J. REAGAN
United States District Judge

-10-

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| RICKY LOTT, GERALD SUMNER,<br>SANDY BECKER & MIKE BALDWIN,<br>individually and on behalf of all other<br>similarly situated individuals, | )<br>)<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| vs. | )<br>) | Case No. 05-cv-0230-MJR |
| PFIZER, INC., | )<br>)<br>) | |
| Defendant. | ) | |

**MEMORANDUM and ORDER**

**REAGAN, District Judge:**

On February 17, 2005, four Illinois citizens who live in the St. Clair/Madison County area (Ricky Lott, Gerald Sumner, Sandy Becker, and Mike Baldwin) filed a putative class action suit against Pfizer, Inc., in the Circuit Court of Madison County, Illinois.

Plaintiffs allege that Pfizer, a Delaware corporation with its principal place of business in New York, actively concealed information regarding the risks and dangerous side effects of two medications – Celebrex and Bextra. Celebrex and Bextra are the brand names of two non-steroidal anti-inflammatory drugs manufactured by Pfizer and used to treat musculoskeletal problems.

More specifically, Plaintiffs allege that Pfizer (via misrepresentations and concealment) was able to charge a higher price for Celebrex and Bextra than the drugs' true fair market value, had the health hazards been known by the purchasers. *See* Complaint, Doc. 2, p. 8. Plaintiffs allege that Pfizer thereby violated the Illinois Consumer Fraud and Deceptive Business Practices Act, **815 ILCS § 505/2**, and similar consumer protection statutes in other states.

Served on March 4, 2005, Pfizer removed the action to this Court on April 1, 2005, invoking subject matter jurisdiction under **28 U.S.C. § 1332.** Pfizer maintains that diversity jurisdiction lies both under § 1332 *and* under recently-enacted amendments to § 1332, resulting from passage of the Class Action Fairness Act of 2005, **Pub. L. 109-2, Feb. 18, 2005, 119 Stat. 14.**

**28 U.S.C. § 1332** confers subject matter jurisdiction over suits between citizens of different states if (a) complete diversity exists between the parties, and (b) the amount in controversy exceeds $75,000, excluding interest and costs. The party invoking federal jurisdiction – here, Pfizer – bears the burden of demonstrating that all jurisdictional requirements have been satisfied. *Chase v. Shop 'N Save Warehouse Foods, Inc.*, **110 F.3d 424, 427 (7th Cir. 1997).**

In this case, complete diversity exists, because "the citizenship requirement for purposes of diversity jurisdiction in a class action hinges entirely on the citizenship of the named plaintiffs," each of whom (as an Illinois citizen) is diverse from Pfizer (a citizen of Delaware and New York). *See Tropp v. Western-Southern Life Ins. Co.*, **381 F.3d 591, 595 (7th Cir. 2004),** *citing Payton v. County of Kane*, **308 F.3d 673, 681 (7th Cir. 2002).** The question is whether Pfizer has shown that the amount in controversy exceeds $75,000, excluding interest and costs.

For a defendant to successfully remove a class action based on diversity, one of the named plaintiffs must have a claim that surpasses the $75,000 jurisdictional bar. *In re Brand Name Prescription Drugs Antitrust Litigation*, **123 F.3d 599, 607 (7th Cir. 1997),** *cert. denied*, **522 U.S. 1153 (1998);** *Garbie v. DaimlerChrysler Corp.*, **211 F.3d 407, 409 (7th Cir. 2000).** If one named plaintiff meets the jurisdictional minimum, the other named plaintiffs and class members can "piggyback" on that plaintiff's claim, via supplemental jurisdiction under **28 U.S.C. § 1367.** *Brand Name*, **123 F.3d at 607.**

-2-

Here, Plaintiffs seek to recover damages "in an amount equal to the difference between the price charged for the drugs and the fair market value which the drugs would have had" but for Pfizer's misrepresentations and omissions. Doc. 2, p. 10. In their prayer for relief contained in the state court complaint, Plaintiffs request (*Id.*, p. 11):

> that this action be certified as a class action, that the acts and practices of the Defendant be adjudged in violation of the New Jersey Consumer Fraud Act, and that the Court award them compensatory damages, treble damages, attorneys' fees, their costs of suit, and pre- and post-judgment interest.

Pfizer contends that the amount in controversy suffices, because "Plaintiffs are seeking a 'common fund' on behalf of all class members that exceeds $75,000, exclusive of interest and costs." Removal Notice, Doc. 1, p. 2. The Court, below, solicits briefs on this issue.

Alternatively, Pfizer relies on recent legislation, the Class Action Fairness Act (or "Act"), which amended the federal diversity statute. **28 U.S.C. § 1332(d)(2)(A)** now confers original subject matter jurisdiction on federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and is a class action in which any member of a class of plaintiffs is a citizen of a state different from any defendant. Moreover, the statute explicitly permits aggregation in class actions to reach the $5,000,000 hurdle. *See* **28 U.S.C. § 1332(d)(6)("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.").**

Pfizer argues that the requisite minimal diversity exists, and "the amount in controversy, after aggregating the claims of the proposed class members, exceeds $5 million, exclusive of interest and costs." Doc. 2, p. 2.

The Court rejects Pfizer's argument based on the provisions of the Class Action Fairness Act. Those provisions apply only to civil actions commenced on or after the date the Act was enacted. Plaintiffs commenced this civil action by filing their complaint in Madison County Circuit Court on February 17, 2005. The Class Action Fairness Act was not "enacted" until the following day – February 18, 2005.

As it did in another case recently removed by Pfizer, this Court rejects Pfizer's argument that "commenced" means the date the case reached federal court (*i.e.*, the date a case was removed) rather than the date the complaint was filed. *See* 3/24/05 Order (Doc. 12) in *Smith, et al. v. Pfizer*, Case No. 05-cv-0112-MJR.

Both a plain reading of the statute and the legislative history of the bill indicate that the jurisdictional amendments were never intended to apply retroactively. *See* **P.L. 102-9 ("The amendments made by this Act ... shall apply to any civil action commenced on or after the date of enactment of this Act."); 151 Cong. Rec. H741 (Feb. 17, 2005(remarks of Rep. Udall)("Unlike earlier versions, S. 5 would not have a retroactive effect, so it would not affect pending cases.").** *See also* **151 Cong. Rec. H753 (Feb. 17, 2005)(remarks of Rep. Goodlatte); 151 Cong. Rec. S1080 (Feb. 8, 2005)(remarks of Sen. Dodd); 151 Cong. Rec. S1087 (Feb. 8, 2005)(remarks of Sen. Kennedy).**

Having determined that jurisdiction does <u>not</u> lie under the Class Action Fairness Act, the Court returns to whether jurisdiction lies under the original (pre-Class Action Fairness Act) provisions of § 1332. The Court has found the parties diverse. The potential obstacle is the amount in controversy. After permitting counsel to brief whether one of the named plaintiffs has a claim that surpasses the $75,000 jurisdictional bar, the Court will assess the propriety of Pfizer's removal.

The Court instructs counsel to carefully review the undersigned Judge's 3/24/05 Order in *Smith v. Pfizer*, Case No. 05-cv-0112-MJR, with particular attention to the discussion of damage disclaimers and binding stipulations, before drafting their briefs regarding the amount in controversy herein.

The Court **DIRECTS** Plaintiffs' counsel to file a brief, no longer than 10 pages, addressing whether the amount in controversy suffices under **28 U.S.C. § 1332** (ignoring the recent amendments which this Court has declared inapplicable here).  Plaintiffs' brief – captioned "Jurisdictional Memorandum" – must be filed on or before April 28, 2005.[1]

The Court **DIRECTS** Pfizer's counsel to file a brief in the nature of a reply (Pfizer already has presented its jurisdictional arguments in the removal notice) no longer than 5 pages. Pfizer's brief – also captioned "Jurisdictional Memorandum" – must be filed by May 5, 2005.

**IT IS SO ORDERED.**

**DATED this 7th day of April, 2005.**

s/ Michael J. Reagan
**MICHAEL J. REAGAN**
**United States District Judge**

---

[1]     This due-date does not toll or modify any otherwise applicable deadline for remand motions under **28 U.S.C. § 1447(c)**.