# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JERRY NATALE, an individual, on behalf of himself and all others similarly situated,  )<br><br>Plaintiff,  )<br><br>v.  )<br><br>PFIZER INC.,<br>a Delaware Corporation,  )<br><br>Defendant.  ) | Civil Action No. 05-CV-10590-WGY |

## MEMORANDUM OF LAW OF DEFENDANT PFIZER INC.
## IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

William M. Cowan, Esq., BBO # 566940
Dora Kripapuri, Esq., BBO # 654236
MINTZ, LEVIN, COHN, FERRIS,
    GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000

Thomas A. Smart, Esq. (admitted pro hac vice)
Richard A. De Sevo, Esq. (admitted pro hac vice)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
(212) 836-8000

*Attorneys for Defendant Pfizer Inc.*

Dated: April 29, 2005

310776811.DOC

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................ 3

THIS COURT HAS JURISDICTION BECAUSE THIS ACTION WAS COMMENCED
IN THIS COURT AFTER THE EFFECTIVE DATE OF CAFA .................................. 3

    A.    The Case Law Interpreting Statutes Amending Jurisdictional Statutes
           Holds that the Term "Commenced" Means the Date an Action Is
           Removed to Federal Court .................................................................... 3

    B.    Applying CAFA to Cases Commenced in Federal Court After CAFA's
           Date of Enactment Is Consistent with CAFA's Purpose and Legislative
           History ................................................................................................. 8

    C.    The Decisions Plaintiff Relies on Interpreting CAFA Are Distinguishable
           and Incorrectly Decided ..................................................................... 11

    D.    Plaintiff's Request for an Award of Costs Is Meritless ........................ 14

CONCLUSION ....................................................................................................... 16

REQUEST FOR ORAL ARGUMENT ................................................................... 16

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*Abernathy v. Consolidated Cab Co.,*
    169 F. Supp. 831 (D. Kan. 1959).....................................................................3, 4, 5, 7

*Alexander v. A.P. Green Industrial,*
    44 F. Supp.2d 368 (D. Me. 1999) ...........................................................................14

*Casteel v. Great Southern Trucking Co.,*
    167 F. Supp. 435 (E.D. Tenn. 1958)..........................................................................3, 5, 7

*Cedillo v. Valcar Enterprises,*
    773 F. Supp. 932 (N.D. Tex. 1991) ......................................................................3, 4, 7, 12

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
    511 U.S. 164 (1994)..................................................................................................15

*Dickinson v. Zurko,*
    527 U.S. 150 (1997)..................................................................................................15

*Eldred v. Ashcroft,*
    537 U.S. 186 (2003)..................................................................................................11

*Engel v. Trustees of Berwick Academy,*
    807 F. Supp. 9 (D. Me. 1992) ...................................................................................3

*Gasper v. National Tea Co.,*
    1990 U.S. Dist. LEXIS 639 (E.D. La. Jan. 25, 1990)......................................................3, 5, 7

*Hankins v. Pfizer Inc.,*
    CV 05-1797 ABC (C. D. Cal. March 25, 2005) ...........................................................11, 13

*Hornbuckle v. State Farm Lloyds,*
    385 F.3d 538 (5th Cir. 2004) ....................................................................................14

*Hunt v. Transport Indem. Ins. Co.,*
    1990 U.S. Dist. LEXIS 16555 (D. Hawaii July 30, 1990) ......................................3, 5, 6, 7, 13

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,*
    523 U.S. 26 (1997)....................................................................................................15

*Lindsey v. Meisenheimer,*
    1997 U.S. Dist. LEXIS 17784, *3 (D. Kan. Sept. 24, 1997)...........................................2, 3, 6

*Lorillard v. Pons,*
    434 U.S. 575 (1978)....................................................................................................6

**Page(s)**

*Lorraine Motors, Inc. v. Aetna Casualty & Surety Co.,*
    166 F. Supp. 319 (E.D.N.Y. 1958) ............................................................3, 4, 5, 6, 7

*Lott v. Pfizer Inc.,*
    05-cv-0230-MJR (S.D. Ill. Apr. 7, 2005) ..................................................11, 13, 14

*Martin v. Franklin Capital Corp.,*
    No. 04-1140 (U.S.) .............................................................................................15

*NLRB v. Fruit & Vegetable Packers & Warehousemen,*
    377 U.S. 58 (1964)..............................................................................................11

*Pritchett v. Office Depot, Inc.,*
    2005 WL 827158 (10th Cir. Apr. 11, 2005) ......................................11, 12, 13, 14

*Roxbury Condominium Associate, Inc. v. Subick,*
    316 F.3d 224 (3d Cir. 2003) ..............................................................................14

*Smith v. Pfizer Inc.,*
    05-cv-0112-MJR (S.D. Ill. March 24, 2005) ...........................................11, 13, 14

*Virgin Islands Housing Authority v. Coastal General Construction Services Corp.,*
    27 F.3d 911 (3d Cir. 1994) ................................................................................14

*Weinberger v. Rossi,*
    456 U.S. 25 (1982)..............................................................................................11

*Zuber v. Allen,*
    396 U.S. 168 (1969)............................................................................................11

**Statutes**

28 U.S.C. § 1332...............................................................................................1, 6

28 U.S.C. § 1367...............................................................................................4, 7

28 U.S.C. § 1446......................................................................................1, 11, 12

P.L. 85-554, § 3......................................................................................................4

P.L. 99-336, § 3(b), 100 Stat. 633.........................................................................5

P.L. 101-650, title III, § 310(c).............................................................................4

Class Action Fairness Act, P.L. 109-2, 119 Stat. 4.........................................*passim*

**Legislative Materials**

**Page(s)**

H.R. Rep. 108-144 ................................................................................................................9, 10

S. Rep. 108-123................................................................................................................9, 10, 13

Defendant Pfizer Inc. ("Pfizer") submits this memorandum of law in opposition to plaintiff's motion to remand.

## PRELIMINARY STATEMENT

This action seeks certification of a class consisting of all "Massachusetts consumers who purchased Listerine during the Class Period. (February 11, 2002 through the present)." (Complaint ¶ 40). Plaintiff asserts a single claim for relief – for common law fraud. In particular, plaintiff alleges that Pfizer's advertising was false and misleading in claiming that Listerine was "as effective as floss against plaque and gingivitis between the teeth" – a claim that was approved by the American Dental Association. (*Id*. ¶¶ 15-16). On behalf of himself and the proposed class members, plaintiff seeks, *inter alia*: (1) "damages, including the amounts that [class members] paid to purchase Listerine during the Class Period"; (2) "attorneys' fees and costs of suit"; and (3) "[s]uch other relief as this Court deems just and appropriate." (*Id*. ¶ 51; Ad Damnum Clause).

Plaintiff filed this action in Middlesex County Superior Court on February 11, 2005, and served the summons and complaint on Pfizer on February 23, 2005. Pfizer removed the action to this Court on March 25, 2005, thus satisfying the requirement of 28 U.S.C. § 1446(b) that the Notice of Removal be filed within 30 days of the service of the complaint.[1] Pfizer removed the action on the ground that there is diversity jurisdiction over this putative class action pursuant to the provisions of the Class Action Fairness Act of 2005, P.L. 109-2, 119 Stat. 4 ("CAFA"or the "Act"), codified at 28 U.S.C. §§ 1332(d), 1453, because: (1) the putative class action consists of

---

[1]     On the same day, Pfizer also removed to this Court a related case, entitled *Kwaak v. Pfizer Inc.*, Civil Action No. 05-CV-10591-NMG, which makes allegations similar to those asserted in this action. On April 12, 2005, Pfizer filed a motion to reassign *Kwaak*, which is pending before Judge Gorton, to this Court.

at least 100 proposed class members; (2) the citizenship of at least one proposed class member is different from that of Pfizer, the only defendant; and (3) the matter in controversy, after aggregating the claims of the proposed class members, exceeds $5 million, exclusive of interest and costs.

Plaintiff does not dispute that each of these requirements is satisfied. Rather, plaintiff asserts the case should be remanded because, he claims, CAFA only applies to actions that were filed in state court on or after February 18, 2005, the "date of enactment" of CAFA. CAFA § 9. Section 9 of CAFA provides that "[t]he amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act [February 18, 2005]." CAFA § 9. Plaintiff asserts that an action is "commenced" under CAFA when it is filed in state court. However, in interpreting similar provisions in jurisdictional statutes in which Congress either narrowed or expanded federal jurisdiction, "a clear majority of courts [have] held that a court must look to the date of removal, not the date that the plaintiff filed his original petition." *Lindsey v. Meisenheimer*, 1997 U.S. Dist. LEXIS 17784, *3 (D. Kan. Sept. 24, 1997).

As demonstrated below, interpreting "commenced" in CAFA to refer to the date on which the action was commenced by removal to federal court is not only supported by the case law, but would best effectuate the express "purpose" of CAFA – to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." CAFA § 2(b)(2). Far from being "untenable and circular,"[2] construing "commenced" in jurisdictional statutes to refer to the date of removal, regardless of whether the jurisdictional statutes expand or limit federal jurisdiction, is consistent with Congressional intent to expand or limit federal jurisdiction as the case

---

[2]    Plaintiff's Memorandum in Support of Motion to Remand ("Pl. Mem."), p. 2.

may be. What is untenable and illogical is plaintiff's position – that the word "commenced"

should be interpreted one way when Congress restricts federal jurisdiction and in directly the

opposite way when Congress expands jurisdiction.

### ARGUMENT

### THIS COURT HAS JURISDICTION BECAUSE THIS ACTION WAS COMMENCED IN THIS COURT AFTER THE EFFECTIVE DATE OF CAFA

**A.     The Case Law Interpreting Statutes Amending Jurisdictional Statutes Holds that the Term "Commenced" Means the Date an Action Is Removed to Federal Court**

"[A] clear majority of courts [have] held that a court must look to the date of removal, not

the date that the plaintiff filed his original petition, to determine the requisite jurisdictional

amount." *Lindsey v. Meisenheimer*, 1997 U.S. Dist. LEXIS 17784, *3 (D. Kan. Sept. 24, 1997).

In particular, the courts have held that a jurisdictional statute, applicable only to actions "com-

menced on or after" the effective date, applies to actions removed to federal court after the effec-

tive date, even though the action was filed in state court before the effective date. *See, e.g.,*

*Cedillo v. Valcar Enters.*, 773 F. Supp. 932 (N.D. Tex. 1991); *Lorraine Motors, Inc. v. Aetna*

*Cas. & Sur. Co.*, 166 F. Supp. 319 (E.D.N.Y. 1958); *Abernathy v. Consol. Cab Co.*, 169 F. Supp.

831 (D. Kan. 1959); *Casteel v. Great S. Trucking Co.*, 167 F. Supp. 435 (E.D. Tenn. 1958); *Hunt*

*v. Transp. Indem. Ins. Co.*, 1990 U.S. Dist. LEXIS 16555 (D. Hawaii July 30, 1990); *Gasper v.*

*Nat'l Tea Co.*, 1990 U.S. Dist. LEXIS 639, *2-3 (E.D. La. Jan. 25, 1990); *cf. Engel v. Trustees of*

*Berwick Acad.*, 807 F. Supp. 9, 10 n.2 (D. Me. 1992).

In *Cedillo*, the court held that the term "commenced" should be read as commenced in

federal court – rather than state court – "because the pertinent time for determining federal juris-

diction is the date on which such jurisdiction is invoked." *Cedillo*, 773 F. Supp. at 939. The

court there expressly addressed an issue virtually identical to the one presented by this removal;

namely, whether a statute expanding federal jurisdiction – the Supplemental Jurisdiction statute (28 U.S.C. § 1367) – applies to an action filed in state court before the statute's effective date, but removed after the effective date. As here, Section 1367 provided that it applied only to "actions *commenced* on or after" the effective date. P.L. 101-650, title III, § 310(c) (emphasis added). In denying remand, the court in *Cedillo* held that the new statute was "fully applicable" to the removed action because the date on which federal jurisdiction was first "invoked" was after the effective date of the statute, and, thus, the action was "commenced" after the effective date. 773 F. Supp. at 939.

Similarly, in *Lorraine Motors*, the court expressly considered whether an amendment to the federal jurisdiction statute (increasing the minimum jurisdictional amount from $3,000 to $10,000) – which, as here, applied only to "actions *commenced* on or after the date of the enactment" (P.L. 85-554, § 9; emphasis added) – applied to an action filed in state court before the effective date and removed to federal court after the effective date. The court held that the term "commenced" means "actions commenced in the [federal] District Court whether by original jurisdiction or by removal" on or after the effective date, and thus the new jurisdictional provision applied to the action. 166 F. Supp. at 323.

In *Abernathy*, the court considered the identical question presented by *Lorraine Motors*. Citing *Lorraine Motors* with approval, the court held that it "must rule" that an action removed to federal court after the date of enactment of an amendment to the federal jurisdictional statute was "'commenced' after the date of the enactment" and the new jurisdictional provisions therefore applied to the removed action. 169 F. Supp. at 834.

The court in *Casteel* also considered the same question. Holding that the term "commenced" "means 'commenced in the federal court,'" the court stated, relying on the principle set

forth in a leading treatise, that "the law in effect at the time of the application to remove controls." 167 F. Supp. at 436 (citing 76 C.J.S. Removal of Causes § 2). *Accord*, *Hunt*, 1990 U.S. Dist. LEXIS 16555, at *14 (action "commenced" when removed to federal court and new minimum amount in controversy requirement applied to action); *Gasper*, 1990 U.S. Dist. LEXIS 639, at *2-3 (same).

As in *Cedillo*, *Lorraine Motors*, *Abernathy*, *Casteel*, *Hunt* and *Gasper*, in determining when this removed action was "commenced" for purposes of the applicability of CAFA (expanding the scope of federal jurisdiction), the relevant date is the first time federal "jurisdiction is invoked." *Cedillo*, 773 F. Supp. at 939. CAFA is "fully applicable," *id.*, to this removed action because federal jurisdiction was first invoked on March 25, 2005, and thus the action was "commenced" in federal court after the effective date of the Act, February 18, 2005.

Confirming that "commenced" means the date on which an action is removed to federal court is that when Congress has intended that a removal statute apply only to cases "commenced" in state court after the statute's effective date, it has explicitly said so. Thus, in 1986, when Congress amended the removal statute to permit removal of an entire action that contains state law claims and a separate and independent federal law claim, Congress provided that the amendment would "apply with respect to claims in civil actions commenced *in State courts* on or after the date of the enactment." P.L. 99-336, § 3(b), 100 Stat. 633 (June 19, 1986) (emphasis added). Because Congress did not expressly include the limiting language "in State courts" in CAFA, CAFA applies to actions filed in state court prior to the effective date, but removed to (and thus "commenced" in) federal court on or after the effective date.

That Congress intended "commenced" to mean the date of removal is further confirmed by the Commentary in the United States Code Annotated to the 1988 amendment to 28 U.S.C.

§ 1332, which raised the jurisdictional minimum to $50,000. The Commentary explicitly states – citing *Lorraine Motors* – that the "sounder" view is that "the moment that counts in removal situations is the moment of removal to federal court, not commencement in state court." It is a black letter rule of statutory construction that "Congress is presumed to be aware of . . . judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978). By a parity of reasoning, it must be presumed that Congress was aware that a clear majority of courts had interpreted "commenced" with respect to several amendments of jurisdictional statutes to mean the date the action was commenced in federal court upon the filing of the notice of removal when Congress used virtually identical language in CAFA. Surely, if Congress had meant for "commenced" to mean something different in CAFA, it would have said so.

Unable to distinguish this overwhelming body of case law and commentary, plaintiff for the most part ignores it or presents distinctions without any legal or logical significance. Thus, plaintiff asserts that *Lorraine Motors* and *Hunt* are distinguishable because "they dealt with a completely different statutory provision." (Pl. Mem. 8-9). But both CAFA and the statutes at issue in *Lorraine Motors* and *Hunt* contained the identical key operative language – "commenced on or after the date of enactment." Plaintiff also argues, citing two cases, that the "persuasive value" of *Lorraine Motors* and *Hunt* is "diluted" because there was "contemporaneous contrary authority." The fact remains, however, that *Lorraine Motors* and *Hunt* are consistent with the "clear majority" of courts that have addressed the issue and, according to the Commentary in U.S.C.A., are the "sounder" view. *Lindsey*, 1997 U.S. Dist. LEXIS 17784, at *3; Commentary in U.S.C.A. to 1988 amendment to 28 U.S.C. § 1332.

Turning to *Cedillo*, plaintiff asserts that the decision is somehow faulty because it states without citation that "[t]he statute applies to the present case because the pertinent time for determining federal jurisdiction is the date on which such jurisdiction is invoked." (Pl. Mem. 12). It is, however, hardly a ground for criticism that a court makes a statement of law that is consistent with the "clear majority" of courts that have addressed the issue and that the U.S.C.A. Commentary states is the "sounder" view. Plaintiff also speculates that it is "possible" that the Court in *Cedillo* "may have found federal jurisdiction . . . under the prior governing principles of pendent jurisdiction" and that the Court analyzed the jurisdictional issue under these principles and not under § 1367. (Pl. Mem. 13). However, the *Cedillo* court expressly stated that it was "[a]nalyzing the removal question in terms of § 1367," so that plaintiff's speculation is simply wrong. 773 F. Supp. at 939.

That the term "commenced" means the date on which the action is commenced in federal court rather than in state court is confirmed by the fact that this interpretation effectuates Congress' intent – whether that intent is to narrow or expand jurisdiction – a point that Pfizer made previously and that plaintiff pointedly ignores. (*See* Notice of Removal ¶¶ 18-20, 24, Notice of Additional Authority Regarding Removal, p. 4). Thus, when – as in *Lorraine Motors*, *Abernathy*, *Casteel*, *Hunt* and *Gasper* – Congress enacts a statute *narrowing* federal jurisdiction, determining the right to remove as of the time the action is commenced in federal court through removal would result in *fewer* cases being eligible for removal to federal court, just as Congress intended. Similarly, when – as in *Cedillo* (interpreting "commencement" as applied to the expansion of jurisdiction under 28 U.S.C. § 1367) and CAFA – Congress enacts a statute *expanding* federal jurisdiction, determining the right to remove as of the time the action is commenced in federal court through removal would result in *more* cases being eligible for removal to

federal court, just as Congress intended.  By contrast, construing the term "commenced" for removed cases to refer to the date of filing in state court would result in *more* cases being eligible for removal when Congress *limits* federal jurisdiction, and *fewer* cases being eligible for removal when Congress *expands* federal jurisdiction.  Congress could not have intended such a paradoxical result.

For example, if Congress narrows federal jurisdiction by increasing the amount in controversy and the term "commenced" were interpreted to mean the date of filing in state court, then a case that was filed in state court before enactment of the statute could be removed even though on the date of removal the action did not satisfy the newly increased amount in controversy.  This would be directly contrary to Congress' intent to narrow federal jurisdiction.  By the same token, if Congress expands federal jurisdiction by lowering jurisdictional requirements and the term "commenced" were interpreted to mean the date of filing in state court, then the action could not be removed then even though at the time of removal the case satisfied the newly enacted jurisdictional requirements.  Interpreting "commenced" in this manner would be contrary to Congress' intent to expand federal jurisdiction.

**B.    Applying CAFA to Cases Commenced in Federal Court After CAFA's Date of Enactment Is Consistent with CAFA's Purpose and Legislative History**

Applying CAFA to cases in which federal jurisdiction is invoked on or after the Act's date of enactment is consistent with the Act's express "purpose":  to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction."  CAFA § 2(b)(2).  Numerous provisions in CAFA indicate an intent by Congress to expand federal jurisdiction and to encourage removal.  Thus, for example, (i) removal is permitted even though there is only minimal diversity, whereas before complete diversity was required (CAFA § 4(a)); (ii) removal is

permitted even though only one defendant removes, whereas before all defendants had to consent to removal (CAFA § 5(a)); (iii) the requisite amount in controversy can be satisfied by aggregating the claims of plaintiffs and putative class members, even though before aggregation was not permitted; (CAFA § 4(a)); and (iv) an order remanding an action for lack of jurisdiction may be appealed, whereas before it could not (CAFA § 5(a)).

The Act's legislative history also reflects that the purpose of the Act was to "*encourage the exercise of federal jurisdiction over class actions.*" S. Rep. 108-123 at 45 (emphasis added). Thus, for example, both the House and Senate Judiciary Committees stated that it was their "intention with regard to each . . . exception[]" in CAFA "that the party opposing federal jurisdiction shall have the burden of demonstrating the applicability of an exemption." (*Id*. at 45; H.R. Rep. 108-144 at 38). Similarly, the Committees stated that the requirement of an *aggregate* amount in controversy of $5 million was "intended to expand substantially federal court jurisdiction over class actions," that this "provision[] should be read broadly, with a strong preference that interstate class action be heard in a federal court," and that "the definition of 'class action' is to be interpreted liberally." (S. Rep. 108-123 at 44, 48; H.R. Rep. 108-144 at 37). In addition, the Committees stated that "any factual assessments underlying the district court's jurisdictional determination" should be reviewed "de novo" on any appeal. (S. Rep. 108-123 at 50; H.R. Rep. 108-144 at 43). The Senate Report also rejected the notion that there should be "a presumption that a plaintiff chooses his or her own court." (S. Rep. 108-123 at 57). Rather, "the whole purpose of diversity jurisdiction is to preclude any such presumption by allowing state-law based claims to be removed from local courts to federal courts, so as to ensure that all parties can litigate on a level playing field and thereby protect interstate commerce interests." *Id*. In short, as

both Committees explained, "the real harm to federalism is the status quo – leaving the bulk of class action cases in state court." (S. Rep. 108-123 at 59; H.R. Rep. 108-144 at 26).

Given this overwhelming legislative history, plaintiff's reliance on cases stating that removal statutes should "be strictly construed and that any doubts about the propriety of removal are to be resolved against the removal of an action" (Pl. Mem. 5) is totally misplaced and directly contrary to the "primary purpose of the bill – to allow the removal of more interstate class actions to federal courts, where they are more appropriately heard." (S. Rep. 108-123 at 64; *see* H.R. Rep. 108-144 at 47). The assertions by the Committees' dissenters that CAFA "represent a radical revision of . . . diversity jurisdiction requirements" and a "dramatic intrusion into state court prerogatives" (S. Rep. 108-123 at 73, 75; H.R. Rep. 108-144 at 78) are, although somewhat hyperbolic, a persuasive acknowledgment that Congress meant CAFA to be a distinct break with the past – not, as plaintiff would have it, an affirmation of the anti-removal and anti-diversity jurisdiction views espoused in prior case law.

Ignoring all of this legislative history and the express purpose of CAFA to expand diversity jurisdiction, plaintiff points to the fact that Congress eliminated a provision in earlier versions of CAFA that would have permitted the application of CAFA to *all* state court actions in which a class certification order had been entered on or after the date of the statute's enactment. (Pl. Mem. 8). But all that means is that Congress did not want CAFA to apply to actions that had been pending in state court for months – or years. It says nothing about what the term "commenced" means with respect to the effective date of the Act. As for the scattered comments during floor debates to which plaintiff refers, not only do the comments not address the meaning

of "commenced," but the law is clear that such statements – particularly those of Congressmen opposed to the legislation – are entitled to little, if any, weight.[3]

In short, to construe the term "commenced" as anything other than "commenced in federal court" so as to preclude federal jurisdiction over this action would be contrary to Congress' intent to expand the number of cases (and, in particular, class actions) subject to federal jurisdiction.

## C.    The Decisions Plaintiff Relies on Interpreting CAFA Are Distinguishable and Incorrectly Decided

The decisions on which plaintiff relies are distinguishable or, as we explained in Pfizer's Notice of Removal (¶¶ 22-24) and Notice of Additional Authority Regarding Removal ("NAA"), incorrectly decided. *See Pritchett v. Office Depot, Inc.*, 2005 WL 827158 (10th Cir. Apr. 11, 2005) (NAA Ex. D); *Hankins v. Pfizer Inc.*, CV 05-1797 ABC (C. D. Cal. March 25, 2005) (NAA Ex. B); *Smith v. Pfizer Inc.*, 05-cv-0112-MJR (S.D. Ill. March 24, 2005) (NAA Ex. C), *Lott v. Pfizer Inc.*, 05-cv-0230-MJR (S.D. Ill. Apr. 7, 2005) (NAA Ex. D). (*Smith* and *Lott* were decided by the same judge).

The Court's decision in *Pritchett* is not controlling and is easily distinguishable on its facts. To begin with, in contravention of the requirement in 28 U.S.C. § 1446(b) that an action be removed within 30 days of service of the complaint, the defendant removed the action almost

---

[3]    *See, e.g., Garcia v. United States*, 469 U.S. 70, 76 (1984) ("'In surveying legislative history, we have repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill,'" and have "eschewed reliance on the passing comments of one Member, and casual statements from the floor debates") (quoting *Zuber v. Allen*, 396 U.S. 168, 186 (1969); citing *Weinberger v. Rossi*, 456 U.S. 25, 35 (1982)). *Accord, Eldred v. Ashcroft*, 537 U.S. 186, 210 n.16 (2003). *See also, e.g., NLRB v. Fruit & Vegetable Packers & Warehousemen*, 377 U.S. 58, 66 (1964) ("we have often cautioned against the danger, when interpreting a statute, of reliance upon the views of its legislative opponents").

*two years* after service, and, indeed, after the June 2004 certification of a class in the state court and just one month before trial. 2005 WL 827158, at *1. That is, the defendant attempted to apply CAFA retroactively to revive a right to remove that had expired years earlier. By contrast, here, the Act is only being applied prospectively to an action commenced in federal court after the effective date *and* which Pfizer *timely* removed within 30 days of service of the complaint, as required by 28 U.S.C. § 1446(b). Accordingly, there is no risk of the Act disrupting cases where a class has already been certified or is about to go to trial. For example, here, there has been no activity other than plaintiff's filing of the complaint and Pfizer's removal of this action to federal court.

In short, the *Pritchett* court's concern that "[d]efendant's argument, if accepted, could have serious consequences for both the federal judiciary and our colleagues on the state bench" is inapplicable. 2005 WL 827158, *4. Unlike the defendant in *Pritchett*, Pfizer is arguing – consistent with § 1446(b) and the majority of courts that have addressed the issue in connection with similar statutory amendments – that CAFA permits the removal of *only* those actions that are removed to (and hence commenced in) federal court (i) after the effective date of CAFA *and* (ii) within thirty days of service of the complaint. This is a very narrow group of cases whose removal will not have the dire consequences that the *Pritchett* court predicted if all pending actions, regardless of when the complaint was served, were permitted to be removed under CAFA.

The court in *Pritchett* also was mistaken in ignoring the significance of Congress' intent in CAFA, as was the case in *Cedillo*, to *expand* federal jurisdiction. Holding that CAFA applies to actions filed in federal court *provided* that the 30-day rule of § 1446(b) is satisfied, will effectuate Congress' intent to expand federal jurisdiction. In relying on the presumption that "statutes

conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed" (*id*. at \*3), the court in *Pritchett* acted directly contrary to Congress' stated intent to *expand* federal jurisdiction in order to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." CAFA § 2(b)(2). (*See* pp. 8-10, *supra*).

Turning to *Hankins*, in remanding the case the court opined that CAFA applied only to actions that were commenced in state court before the date of CAFA's enactment. Without addressing any of the other cases Pfizer cited in its notice of removal, the court distinguished *Hunt* "because of the Ninth Circuit's clear preference for construction of removal statutes against removal." (NAA Ex. B p. 2). The court went on to say that it "would construe CAFA against removal such that the date of filing in state court controls, given the strong presumption against removal." *Id*. at 3. This was clear error because, as noted above, Congress' intent in enacting CAFA was "to *encourage* the exercise of federal jurisdiction over class actions." S. Rep. 108-123 at 45 (emphasis added). Thus, Congress' intent here is directly contrary to its intent in enacting the statute at issue in *Hunt*, which *restricted* federal jurisdiction by *increasing* the minimum amount in controversy necessary for federal jurisdiction.

The decision in *Smith* (and *Lott* and *Pritchett*) suffers from similar defects. As in *Hankins*, the court concluded – correctly – that CAFA was "never intended to apply retroactively." (NAA Ex. C p. 10). However, the court then reasoned that this necessarily meant that CAFA's provision that the Act applies to actions "commenced on or after the date of enactment of this Act" (CAFA § 9) means that CAFA does not apply to actions removed to federal court after the Act's enactment even though they were removed within thirty days of service of the complaint. That is, the court treated the issue as an all or nothing proposition – either all cases filed in state

court prior to CAFA's enactment could be removed or none of them could be removed. But, as noted earlier, CAFA has two separate requirements for timely removal: (1) that the action was filed in federal court – *i.e.*, "commenced" – "on or after the date of enactment" of CAFA and (2) that the action was removed within thirty days of service of the complaint, as required by 28 U.S.C. § 1446(b). In conflating the meaning of "commenced" with the thirty day requirement of § 1446(b), the court in *Smith* (and *Lott* and *Pritchett*) committed clear legal error. Removal of actions after enactment of CAFA, but within thirty days of service of the complaint, is a prospective application of CAFA to that narrow category of actions whose time for removal had not yet expired as of the effective date of CAFA.

Here, Pfizer timely removed this action from state court within 30 days of service of the complaint, as required by 28 U.S.C. § 1446(b), and it did so after enactment of CAFA, as required by Section 9 of the Act. Accordingly, this Court has subject matter jurisdiction over this action under CAFA.

**D.    Plaintiff's Request for an Award of Costs Is Meritless**

Plaintiff asserts that it should be awarded fees and costs because Pfizer's removal was "wholly without merit, contrary to clear authority and contrary to the letter and spirit of CAFA." (Pl. Mem. 14). As a threshold matter, as explained above, Pfizer's position is correct and this Court does, in fact, have jurisdiction under CAFA.

But even if the Court were to conclude otherwise, costs and fees are not properly awarded under § 1447(c) where the law providing the basis for removal "has been less than clear." *Alexander v. A.P. Green Indus.*, 44 F. Supp.2d 368, 374 (D. Me. 1999).[4] Here, as noted above,

---

[4]    Plaintiff ignores *Alexander* and relies on decisions from other circuits. *Compare Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 546 (5th Cir. 2004) (district court abused its discretion in awarding costs where defendants had "objectively reasonable grounds" for

(continued...)

Pfizer's position is consistent with the "clear majority" of courts that have addressed the issue; is, according to the U.S.C.A. Commentary, the "sounder" view; is consistent with Congress' intent as expressed in both CAFA itself and the Act's legislative history; and, unlike plaintiff's view, would provide a consistent interpretation to identical statutory language regardless of whether Congress intends to expand or contract jurisdiction.  Plainly, Pfizer's position is more than "fairly supportable."  As for *Pritchett* and the other cases that in the past month have interpreted CAFA, the case books are filled with decisions in which the early trend of the cases is contrary to the law as finally settled by the Supreme Court or other appellate court.[5]  If plaintiff's view were accepted, the winning party in these cases would have been sanctioned for questioning the prevailing view even though its contrary view was, in fact, ultimately adopted.

---

removing); *Roxbury Condom. Ass'n, Inc. v. Subick*, 316 F.3d 224, 228 (3d Cir. 2003) (district court abused its discretion in awarding costs where defendant had a "colorable removal claim in an area of unsettled law") *Virgin Islands Housing Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 917 (3d Cir. 1994) (denying costs where defendant had "a colorable claim of jurisdiction").  On April 25, 2005, the Supreme Court granted certiorari to determine the "legal standard [that] governs [a] court's decision to award or deny attorneys' fees and expenses under 28 U.S.C. 1447(c)." *Martin v. Franklin Capital Corp.*, No. 04-1140 (U.S.).

[5]  *See, e.g., Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) (Rule of Judicial Panel of Multidistrict Litigation and uniform view of Courts of Appeal unanimously rejected); *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994) and *id.* at 192 (Stevens, J., dissenting) (overturning rule of law that SEC and "all eleven Courts of Appeals to have considered the question" had adopted). *See also Dickinson v. Zurko*, 527 U.S. 150, 155 (1999) (Federal Circuit's and patent bar's interpretation of 89 prior decisions as to proper standard or review rejected).

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand should be denied in its entirety.

## REQUEST FOR ORAL ARGUMENT

Pfizer respectfully requests oral argument.

Dated:  April 29, 2005

Respectfully submitted,

PFIZER INC.
By its attorneys,

/s/ William M. Cowan
William M. Cowan, Esq., BBO # 566940
Dora Kripapuri, Esq., BBO # 654236
MINTZ, LEVIN, COHN, FERRIS,
   GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA  02111
(617) 542-6000

Thomas A. Smart, Esq. (admitted pro hac vice)
Richard A. De Sevo, Esq. (admitted pro hac vice)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10022
(212) 836-8000