UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
─────────────────────────────────  )
                                   )
JERRY NATALE,                      )
     On Behalf of Himself and      )
     All Others Similarly          )
     Situated,                     )
          Plaintiff,               )
                                   )
          v.                       )
                                   )
PFIZER INC.                        )  CIVIL ACTION
     Defendant,                    )  NO. 05-10590-WGY
                                   )
                                   )
                                   )
SHERRY KWAAK,                      )
     On Behalf of Herself and      )
     All Others Similarly          )
     Situated,                     )
          Plaintiff,               )
                                   )
          v.                       )
                                   )
PFIZER INC.                        )  CIVIL ACTION
     Defendant,                    )  NO. 05-10591-WGY
                                   )
─────────────────────────────────  )
```

MEMORANDUM AND CERTIFICATION

YOUNG, C.J.                                      July 28, 2005

     Jerry Natale, on behalf of himself and all others similarly
situated ("Natale"), and Sherry Kwaak, on behalf of herself and
all others similarly situated ("Kwaak"), challenge the removal of
this case from state court and whether this Court, pursuant to
the Class Action Fairness Act of 2005, Pub. L. No. 109-2 (2005)
(the "Act") (amending 28 U.S.C. §§ 1332, 1453), properly has

1

jurisdiction over these matters.  The motions to remand of Natale, Civ. Action No. 05-10590, and Kwaak, Civil Action No. 05-10591, will be treated identically here for discussion purposes.[1]

Section 9 of the Act provides that the Act applies to any case "commenced on or after [February 18, 2005,] the date of enactment," of the new federal class action law.  Pub. L. No. 109-2 (emphasis added).  The controlling issue to be decided by this Court is: under section 9 of the Class Action Fairness Act of 2005, is a civil action "commenced" on the date a class action complaint is filed by a plaintiff in the state court or on the date a case is removed by a defendant to the federal court?  This Court answers this question as did the United States Courts of Appeals for the Seventh and Tenth Circuits and holds that an action is commenced as of the date of filing in the state court.

I.  **Relevant Facts and Procedural History**

A.  **Natale v. Pfizer**

On February 14, 2005, Natale commenced this action by filing his state court class action complaint in the Massachusetts Superior Court sitting in and for the County of Middlesex ("Middlesex Superior Court").  Mem. in Supp. of Mot. to Remand [Civ. A. No. 05-10590 Doc. No. 10] at 3 ("Natale Mem.").  Natale sought "certification of a statewide class consisting of all

---

[1]Kwaak challenges Pfizer's alternate ground for removal in that case; this alternative argument will be discussed separately at the end of this memorandum.

2

Massachusetts consumers who purchased Listerine® Antiseptic Mouthrinse [] between February 11, 2002 and the present." <u>Id.</u> The advertising statement that was the subject of the class action suit was: "Listerine as effective as Floss--Clinical studies prove it." <u>Id.</u> Natale argues that this statement "knowingly contained materially false and misleading misrepresentations, statements and omissions" and seeks to receive damages under a theory of common law fraud. <u>Id.</u>

On March 25, 2005, Pfizer filed, pursuant to the Act, a notice of removal with the United States District Court removing the civil action from the Middlesex Superior Court. <u>Id.</u> at 4. Pfizer asserts that federal diversity jurisdiction exists under the new Act and argues that, under section 9 of the Act, a case is commenced in federal court upon a timely removal to federal court rather than on the date of filing with the state court.

**B.    Kwaak v. Pfizer**

Kwaak filed her state class action complaint against Pfizer in the Middlesex Superior Court on January 13, 2005, and a first amended complaint on March 2, 2005. Mem. of Law in Supp. of Pl.'s Mot. to Remand [Civ. A. No. 05-10591 Doc. No. 11] at 3 ("Kwaak Mem."). Like Natale, Kwaak seeks "certification of a statewide class consisting of all Massachusetts consumers who purchased Listerine® Antiseptic Mouthrinse [] from June 1, 2004 through the present." <u>Id.</u> The Kwaak case focuses on the same allegedly misleading misrepresentation -- "Listerine® as

3

effective as Floss--Clinical studies prove it" -- as does
Natale's claim.  Id.  Kwaak seeks damages for herself and the
class under the theory of unjust enrichment and under the
Massachusetts consumer protection act.  Id.; Mass. Gen. Laws ch.
93A, § 2.

On March 25, 2005, Pfizer filed a notice of removal with the
district court again arguing that federal diversity jurisdiction
exists pursuant to the removal provisions of the Act because
"commence" means removal to the federal court.  Kwaak Mem. at 4.
In Kwaak's matter, Pfizer argues in the alternative that federal
diversity jurisdiction exists because Kwaak's "request for relief
in the form of disgorgement among all class members is a 'common
and undivided interest' in excess of $75,000, exclusive of
interest and costs."  Id.

The parties presented oral argument on June 13, 2005 as to
whether this Court has jurisdiction over this matter pursuant to
the Class Action Fairness Act of 2005.  This Court took the
matter under advisement properly to consider and interpret the
Act as applied to these matters.  Tr. of Mot. Hr'g of June 13,
2005 at 13.

II.  **Class Action Fairness Act of 2005**

A.  **General Overview of the Act**

The Class Action Fairness Act of 2005 was passed by Congress
and signed into law by President George W. Bush on February 18,

4

2005.[2]  Pub. L. 109-2 (2005).  Its enactment was heralded as a

product of bipartisan efforts.[3]  Yet, the Act was the subject of

_____

[2]The Act passed in the Senate on February 10, 2005 by a vote
of 72-26, and passed in the House on February 17, 2005 by a vote
of 279-149.  William Branigin, Congress Changes Class Action
Rules, Wash. Post, Feb. 17, 2005, available at
http://www.washingtonpost.com/wp-dyn/articles/A32674-
2005Feb17.html; Senate Roll Call Votes 109th Cong., 1st Sess.,
Vote Summary On the Passage of the Bill S.5 (Feb. 10, 2005),
available at
http://www.senate.gov/legislative/LIS/roll_call_lists/roll_call_v
ote_cfm.cfm?congress=109&session=1&vote=00009.

     The state of litigation in this country is said by some to
have called for reform for years as it has "seemingly run amok."
Thomas F. Burke, Lawyers, Lawsuits, and Legal Rights, at 2 (Univ.
of Cal. Press 2002) (writing that while some of the proliferating
class action lawsuits in this country might read as "amusing
vignettes," "a serious theme underlies these stories [as t]hey
are] parables about a fundamental breakdown in American
society").  See also 151 Cong. Rec. H643-01, H648 (daily ed. Feb.
16, 2005) (statement of Rep. Gingrey) (noting that legislation
similar to the Act, namely the Class Action Jurisdiction Act of
1998, the Interstate Class Action Jurisdiction Act of 1999, and
the Class Action Fairness Acts of 2001 and 2003, were the subject
of hearings, markups, debates, and successful votes in the 105th-
108th Congresses); 151 Cong. Rec. H723-01, H726 (daily ed. Feb.
17, 2005) (statement of Rep. Sensenbrenner) ("Today marks the
culmination of nearly a decade of legislative efforts to end
systematic abuse of our Nation's class action system.  We stand
on the cusp of sending landmark legislation on civil-justice
reform to the President that has been approved by increasing
majorities each time it has been considered by the House in each
of the last three Congresses . . . ."); id. (noting that the
Act's "core provisions are similar to those passed . . . in the
last three Congresses"); The Class Action Fairness Act of 2005,
Dates of Consideration and Passage, S. Rep. 109-14, 2005
U.S.C.C.A.N. 3, 3-4 (reviewing the history of attempted tort
reform legislation between 1999 and 2005).

     [3]This sentiment was echoed by President Bush when signing
the bill into law. See President Signs Class-Action Fairness Act
of 2005, Remarks of President George W. Bush (Feb. 18, 2005),
available at http://www.whitehouse.gov/news/releases/2005/02/
print/20050218-11.html ("Remarks of President Bush") ("The bill
I'm about to sign is a model of effective, bipartisan
legislation.  By working together over several years, we have

much controversy and debate.[4]  <u>See</u> 151 Cong. Rec. H643-01, H643

---

agreed on a practical way to begin restoring common sense and
balance to America's legal system. . . . Congress showed what is
possible when we set aside partisan differences and focus on . .
. [doing] what's right for . . . the country."); 151 Cong. Rec.
H643-01 (daily ed. Feb. 16, 2005) (statement of Rep. Gingrey)
("As demonstrated by the [Senate], there is bipartisan support
for the measure. . . . In fact, the [Senate] passed this measure
. . . with strong bipartisan support.").

[4]The Act has been described in a positive light as
"President Bush's first major legislative victory [of his second
presidential] term."  Terry Carter, <u>Class Action Climax -
Legislation Will Create Problems, Opportunities for Plaintiffs
Bar</u>, 4 No.7 A.B.A. J. E-Rep. 1 (Feb. 18, 2005); Remarks of
President Bush ("The Class-Action Fairness Act of 2005 marks a
critical step toward ending the lawsuit culture in our country.
The bill will ease the needless burden of litigation on every
American worker, business, and family.").  <u>But see</u> <u>Class Action
Fairness Act of 2005</u>, <u>available at</u>
www.dkosopedia.com/index.php/Class_Action_Fairness_Act_of_2005(CA
FA) (opining that the "primarily Republican-sponsored bill" runs
counter to what 'conservatives' usually claim they seek - it
increases the size and control of the federal government at the
expense of state's rights.").
During congressional debates, the Act symbolized a battle
between the common man and corporate behemoths.  <u>See</u> 151 Cong.
Rec. H723-01, H726 (daily ed. Feb. 17, 2001) (statement of Rep.
Conyers) (noting that <u>vis a vis</u> the Act, the Republican "majority
begins their assault on our Nation's civil justice system . . . .
[and] attempt[s] to preempt State class actions."); 151 Cong.
Rec. H643-01, H644 (daily ed. Feb. 16, 2005) (statement of Rep.
McGovern) ("[I]t looks as though the Republican leadership has
finally gamed the system to the point where it appears that they
will succeed in severely limiting the rights of many of the most
vulnerable citizens in this country."); <u>id.</u> ("[T]his bill . . .
will limit fairness, it will limit justice, and it will
ultimately hurt everyday Americans . . . . It closes the
courthouse door in the face of people who need and deserve
help."); <u>id.</u> (quoting a letter from fourteen state attorneys
general of the opinion that the Act "unduly limits the right of
individuals to seek redress for corporate wrongdoing in their
state courts" and "strongly recommend[ing] that th[e] legislation
not be enacted in its present form."); <u>id.</u> at H645 (emphasizing
that the "AARP, AFL-CIO, Consumer Federation of America,
Consumers Union, Leadership Conference on Civil Rights, NAACP and
Public Citizen all oppose" the Act as passed); <u>id.</u> (statement of

6

(daily ed. Feb. 16, 2005) (statement of Rep. Gingrey) (noting

that "[e]ven with such bipartisan support . . . there are

differences of opinion on how to reform our class action

system."); Rick Knight, The Class Action Fairness Act of 2005: A

Perspective, 52 Fed. Law. 46 (June 2005) ("[D]espite the roiling

public brouhaha surrounding this and other -- so-called national

litigation -- reform, the jury is likely to be out on [the Act] .

---

Rep. Markey) (arguing the Act is "all about . . . . protecting
the country club members from the responsibility for the harm
which they potentially inflict from their corporate perspectives
on ordinary citizens within our society."); Mike France, How to
Fix the Tort System, Bus. Week Online (Mar. 14, 2005), available
at
http://www.businessweek.com/magazine/content/05_11/b3924601.htm.
(quoting Frederick M. Baron, the former President of the
Association of Trial Lawyers of America ("ATLA") who asserts that
"[c]orporate America wants immunity from misdeeds through tort
reform").

But see id. (stating that the "[p]roblem is, much of the
discussion has been distorted by hyperbole from both sides"); 151
Cong. Rec. H723-01, H727 (daily ed. Feb. 17, 2001) (statement of
Rep. Boucher) (emphasizing that the Act's changes are procedural
in nature and that the legislation makes no changes to the
substantive recovery rights of American citizens); Remarks of
President Bush (stating, while referring to the coupon settlement
and plain explanation provisions of the Act, that "the bill
provides new safeguards to ensure that plaintiffs and class-
action lawsuits are treated fairly"); The Class Action Fairness
Act of 2005, Mondaq Bus. Briefing (May 4, 2005), available at
2005 WLNR 6993121 (highlighting the "consumer class action bill
of rights designed to eliminate certain of the more flagrant
perceived abuses of the class action device by the plaintiffs'
bar" (internal quotations omitted)).

Representatives focused a portion of the debates on the
failure to comport with normal procedures. See, e.g., 151 Cong.
Rec. H723-01, H736 (daily ed. Feb. 17, 2005) (statement of Rep.
Watt) (asserting that this session of the Congress has seemed to
"dispense with regular order, deny committee consideration, and
to leave Members with 1 to 2 minutes to hurriedly voice [their]
concerns" with respect to the Act).

. . for years to come.").

The Act is expected by some to be "problematic."  Georgene M. Vairo, Class Action Fairness, Nat'l L.J., June 27, 2005 at 12. It was enacted to "address some of the most egregious problems in class action practice."  The Class Action Fairness Act of 2005, Dates of Consideration and Passage, S. Rep. 109-14, 2005 U.S.C.C.A.N. 3, 6 (describing the legislation as a "modest, balanced step" and not a "panacea" in reform).  Among other things, the Act amends 28 U.S.C. § 1332, in pertinent part, to establish original subject matter jurisdiction in federal courts[5]

---

[5]In opposition to the Act, some have touted the scarcity of federal court resources.  See Lorraine Woellert, Commentary: A Phony Cure - Shifting Class Actions to Federal Courts is No Reform, Bus. Week Online (Feb. 7, 2005), available at http://www.businessweek.com/magazine/content/05_06/b3919054_mz011.htm (writing that, "[a]t a time when federal courts are already overburdened, [the Act] will make case backlogs even longer" and referring to the existing caution within the federal judiciary and the U.S. Judicial Conference); id. (noting that the Chief Justice of the United States William H. Rehnquist has himself warned of the existing budget constraints in a January 1, 2005 annual report); Letter from Leonidas Ralph Mecham, Secretary, Judicial Conference of the United States to the Hon. Orrin G. Hatch, Chair, Senate Committee on the Judiciary (Mar. 26, 2004), available at http://www.atla.org/homepage/fjc.pdf (ATLA website) (stating ATLA's position that "[i]f Congress determines that certain class actions should be brought within the original and removal jurisdiction of the federal courts on the basis of minimal diversity of citizenship and an aggregation of claims, Congress should be encouraged to include sufficient limitations and threshold requirements so that federal courts are not unduly burdened and states' jurisdiction over in-state class actions is left undisturbed"); id. (explaining that the judicial conference maintained with respect to this Act the same concerns as it had with the earlier, 1999 class action litigation reform, specifically that "the provisions would add substantially to the workload of the federal courts and are inconsistent with principles of federalism."); Congressional Budget Office Cost

over class actions, and amends 28 U.S.C. § 1453, to allow removal

jurisdiction from state courts[6] in those cases in which (1) the

Estimate - Class Action Fairness Act of 2005 (Feb. 7, 2005) (as
reported by the Senate Committee on the Judiciary on February 3,
2005) (estimating the costs of implementing the Act, which would
include hearing "a few hundred additional cases . . . each year,"
"would cost the federal district courts about $7 million a year,
subject to appropriation of the necessary funds" and "could also
increase the need for additional district judges.").

But see S. Rep. 109-14, 2005 U.S.C.C.A.N. at 13 (noting that
the influx of class action lawsuits filed in state courts are
"stretching the resources of the state court systems"); id. at 15
(highlighting the limited resources of the state courts); id. at
48 (noting that state courts are "more burdened" than the federal
courts and "have comparatively crushing caseloads"); id. at 55
(noting a state court judge is likely to have triple the number
of cases of a federal judge at a given time).

[6]See Woellert (reporting the view of corporate attorneys
that state courts, particularly those in rural areas, are
"judicial hellholes" and are "hostile jurisdictions [that] have
stung" many American companies; see also S. Rep. 109-14, 2005
U.S.C.C.A.N. at 14-15 (stating that part of the reason for the
increase of state court filed class action lawsuits is that
certain magnet jurisdictions, such as Illinois' Madison, Cook,
and St. Clair counties, are outcome-predictable and plaintiff-
friendly, and further asserting that certain state court judges
"are lax about following the strict requirements of Rule 23" and
"lack the necessary resources to supervise proposed class
settlement properly," and that this influx of class actions has
"overwhelmed their dockets.")
    The Act was described during debates as a remedy for
overzealous plaintiffs' attorneys and an "attempt to put an end
to the type of gaming engaged in by plaintiffs' lawyers to keep
cases in State court."  151 Cong. Rec. H723-01, H726, H729 (daily
ed.  Feb. 17, 2005) (statement of Rep. Sensenbrenner) ("Class
actions were originally created to efficiently address a large
number of similar claims by people suffering small harms.  Today
they are too often used to efficiently transfer the large fees to
a small number of trial lawyers, with little benefit to the
plaintiffs."); Thomas A. Dickerson and Kenneth A. Manning,
Summary of Article 9 Class Actions in 2004, N.Y.L.J., Apr. 24,
2005 (describing the enactment of the legislation "as a federal
response to abuses, real and perceived, in the prosecution of
class actions, primarily in certain 'pro-plaintiff' state
courts").  See generally Class Action Fairness Act - A Panel of
Experts Discusses Whether the New Law Governing Class Actions is

class consists of at least 100 proposed members; (2) the matter
in controversy is greater than $5,000,000 after aggregating the
claims of the proposed class members, exclusive of interest and
costs, Pub. L. 109-2, § 4, and (3) in pertinent part,[7] "any
member of a class of plaintiffs is a citizen of a different state
from any defendant."  S. Rep. 109-14, 2005 U.S.C.C.A.N. at 28, 34
(emphasis added); see also Andrée Sophia Blumstein, A New Road to
Resolution - The Class Action Fairness Act of 2005, 41 Tenn. Bar
J. 16 (Apr. 2005) (noting that, after the passage of the Act,
"bare-bones minimal diversity" is sufficient for purposes of
federal diversity jurisdiction (internal quotation marks
omitted)).

   As described by Senator Arlen Specter on behalf of the
Senate Judiciary Committee:

---

a Needed Fix or a Bad Idea, Nat'l L.J., May 16, 2005, at 18
(describing the various reasons for the passage of the Act, with
some panelists ardent in support of the Act with another prepared
to have "a full-blown tantrum" in staunch opposition to the Act
due, in part, to federalism concerns).
   The passage of the Act marked a defeat for ATLA, with its
substantial lobbying budget and a particularly marked interest in
preventing tinkering with class action procedures.  Burke at 46-
47 (noting that ATLA has "one of the wealthiest political action
committees in the nation" and that, given its low membership and
"poor public image," it "chose an insider approach to influencing
Congress.").  Burke describes plaintiffs attorneys' self-image as
"'equalizers' who roam through American society looking for
injustice, taking the side of victimized individuals against
large, uncaring institutions."  Id. at 48.

   [7]Additional provisions are included in the Act to provide
for diversity in matters involving parties that are foreign
states or citizens.

One of the primary historical reasons for diversity
jurisdiction "is the <u>reassurance of fairness and competence</u>
that a federal court can supply to an out-of-state defendant
facing suit in state court." Because interstate class
actions typically involve more people, more money, and more
interstate commerce ramifications than any other type of
lawsuit, the Committee firmly believes that such cases
properly belong in federal court. To that end, this bill
(a) <u>amends section 1332</u> to allow federal courts to hear more
interstate class actions <u>on a diversity jurisdiction basis</u>,
and (b) <u>modifies the federal removal statutes</u> to ensure that
qualifying interstate class actions initially brought in
state courts may be heard by federal courts if any of the
defendants so desire.

S. Rep. 109-14, 2005 U.S.C.C.A.N. at 6, 7 (stating the judiciary

committee's view that the diversity and removal statutes as they

currently apply to class action lawsuits "have facilitated a

parade of abuses, and are thwarting the underlying purpose of the

constitutional requirement of diversity jurisdiction") (internal

footnotes omitted, emphasis added).

The primary mechanisms for expanding jurisdiction both (1)

replaces the strict complete diversity requirement with a lenient

rule now granting jurisdiction if <u>any</u> diversity exists between

plaintiffs and defendants and (2) allows for the claims to be

aggregated when calculating and satisfying the $75,000 amount in

controversy required. Still, not all class actions may be heard

in federal court subsequent to the Act. Some class actions may

yet be heard in state court – those class actions in which all

parties reside in the same state, those with fewer than 100

plaintiffs or with less than $5 million at issue, those where a

state government is the main defendant, those against a company

in its home state if two-thirds or more of the plaintiffs are residents of such state, and those involving local matters.  Pub. L. 109-2, § 4 (amending section 28 U.S.C.A. § 1332); S. Rep. 109-14, 2005 U.S.C.C.A.N. at 27, 29, 48 (describing the Act as "narrowly tailored" to "leave[] most legitimately local disputes in state court, while ensuring that large, interstate class actions like those typically brought in [state] magnet courts can be heard in federal court").[8]

The dispute here arises out of the section 9 language that "amendments made by this Act shall apply to any civil action commenced on or after the date of enactment."  Pub. L. 109-2, § 9 (emphasis added).  So the question arises: do federal courts have jurisdiction over cases commenced in state court prior to the passage of the Act but removed subsequent to its enactment?[9]

B.   **Removal Provisions of the Act**

The Act modifies the standard rules for removal under the

_____

[8]While these suits against Pfizer tend to have exactly the "national" flavor considered a purpose of federalizing certain class actions under the Act, S. Rep. 109-14, 2005 U.S.C.C.A.N. at 27, the obstacle to its application here – and an exceptionally decisive obstacle at that – is the effective date of the statute.

[9]To be certain, this is not the only question that will arise as a result of the passage of the Act.  "A similarly intriguing question is how to deal with an action filed before February 18, 2005, but dismissed without prejudice, so that a wholly new, amended complaint is filed after February 18, 2005? As they say, stay tuned to see how courts will handle these transitional questions."  Robert E. Bartkus, Back to the Future? Federal Class Action Reforms Leave Many Questions Unanswered, 180 N.J.L.J. 284, Apr. 25, 2005.

12

Federal Rules of Civil Procedure.  Pub. L. 109-2, § 4 (amending 28 U.S.C. § 1453, the removal statute pertaining to class action lawsuits); S. Rep. 109-14, 2005 U.S.C.C.A.N. at 10 (explaining that both removal jurisdiction and diversity jurisdiction seek to guarantee out-of-state defendants a neutral federal arena in which to be heard).

Under the Act, the burden of removal is on the party opposing removal to prove that remand is appropriate.  Berry v. American Express Publ'g Corp., et al., SA CV 05-302 AHS at 6-7 (S.D. Cal. 2005) (unpublished opinion), available at http://www.cacd.uscourts.gov/cacd/recentpubop.nsf/0/7855b691877dc bc388257022004e7c0f/$FILE/SACV05-302AHS.pdf (hereinafter "Berry") (explaining that, with respect to the Act, "the Committee Report expresses a clear intention to place the burden of removal on the party opposing removal to demonstrate that an interstate class action should be remanded to state court." (emphasis added));[10] id. at 8 (citing S. Rep. 109-14, 2005 U.S.C.C.A.N. at 41 ("It is the Committee's intention with regard to each of these exceptions that the party opposing federal jurisdiction shall have the burden of demonstrating the applicability of an exemption."); id. ("[T]he named plaintiff(s) should bear the burden of demonstrating that a case should be remanded to state court.")).

The amendments and expansion of federal diversity

---

[10]This opinion is not signed or dated by the court.

13

jurisdiction, including the expansion of removal of state actions, are "[t]he most publicized changes associated with the . . . Act."  Joseph M. Callow Jr., <u>The Class Action Fairness Act of 2005: Overview and Analysis</u>, 52 Fed. Law. 26 (May 2005). Pursuant to the Act, any individual defendant may, without the approval of the other defendants, remove a class action more than one year after the filing of the case in state court, including a defendant who is a citizen of the state in which such action was filed.  28 U.S.C. §§ 1441(b), 1446(b), 1453(b)**;** <u>see</u> Guy V. Amoresano and Michael R. McDonald, <u>Class Litigants Face Tougher Forum - Will Closer Scrutiny By Federal Judges Curb Costs?</u> 180 N.J.L.J. 282, Apr. 25, 2005 (noting that the Act removes these "impediment[s]" to federal jurisdiction).  Furthermore, parties are now granted an appeal of a decision on a motion to remand a case removed to federal court; the decision to allow such appeal is left to the discretion of the courts of appeals. <u>Compare</u> 28 U.S.C. § 1453(c) (allowing a discretionary appeal to the court of appeals of a district court decision to remand a matter to state court and requiring that a court of appeals exercising such discretion and hearing such appeal must, generally, render an opinion in sixty days or less), <u>with</u> 28 U.S.C. § 1447(d) (establishing that, with the exception of civil rights cases under 28 U.S.C. § 1443, "[a]n order remanding a case to the State court from which it was removed is not reviewable upon appeal or otherwise.").

**C.    Discussion**

**1.    Precedent from the Seventh and Tenth Circuits and District Courts Interpreting the "Commence" Language of Section 9 of the Act**

**a.    Tenth Circuit**

This Court is persuaded by the Tenth Circuit's reasoned and concise analysis in <u>Pritchett</u> v. <u>Office Depot, Inc.</u>, 404 F.3d. 1232 (10th Cir. 2005), one of the first courts generally to consider this issue and the first circuit court to rule on this specific point.    In <u>Pritchett</u>, the Tenth Circuit rejected an argument identical to the one Pfizer now makes, and held that timely removal to federal court does <u>not</u> constitute commencement for purposes of section 9 of the Act.    <u>Id.</u> at 1235, 1238. Affirming the decision[11] of Judge Marcia S. Krieger of the United States District Court for the District of Colorado, 360 F. Supp.

---

[11]Three days after the Tenth Circuit affirmed the decision, Office Depot settled the matter for $3,300,000 dollars.    <u>See</u> Employment Practices Solutions News Briefs: Office Depot Loses CAFA Claim, Settles Class Action for $3.3 Million, <u>available at</u> http://www.epexperts.com/modules.php?op=modload&name=News&file=article&sid=1772 (last visited July 26, 2005).    This perhaps lends a measure of credibility to the argument that corporations are more likely to settle class action suits heard in the state courts.    <u>See</u>  S. Rep. 109-14, 2005 U.S.C.C.A.N. at 21 (describing the "judicial blackmail" function of state-filed class action suits in pressuring defendants to settle claims, however unfounded or lacking in merit); Remarks of President Bush (extolling the virtues of the Act prior to signing it into law and noting in particular that prior to the promulgation of the Act, "trial lawyers were able to drag defendants from all over the country into sympathetic local courts, even if those businesses ha[d] done nothing wrong.  [As such, m]any businesses decided it was cheaper to settle the lawsuits, rather than risk a massive jury award.").

15

2d 1176 (D. Colo. 2005), the Tenth Circuit considered, among other things, the traditional trend of narrowly construing removal statutes and general tenets of statutory construction, as well as the meaning of the word "commenced," the Act's legislative history, and legal precedent.  <u>Pritchett</u>, 404 F.3d. at 1235-1238.

The Tenth Circuit stated initially that its statutory analysis began with the plain language of the statute and was then "governed by traditional rules of statutory construction and rules pertaining to federal jurisdiction."  <u>Id.</u> at 1235 (looking, initially, at the plain language of the statute).  The court highlighted the "general federal rule that a lawsuit is commenced at a discrete moment in time: the <u>filing</u> of the <u>original</u> complaint <u>in a court of competent jurisdiction</u>."  <u>Id.</u> (citing Fed. R. Civ. P. 3) (emphasis added).  Despite the Congressional intent to expand federal jurisdiction to encompass class action suits, the Tenth Circuit explained that the statute should not be expanded beyond Congressional intent and, to that end, it "is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of [the federal courts'] constitutional role as limited tribunals."  <u>Id.</u>  (citing <u>Shamrock Oil & Gas Corp.</u> v. <u>Sheets</u>, 313 U.S. 100, 108-109 (1941)).  It therefore stated that, "if there is ambiguity as to whether the instant statute confers federal jurisdiction over [a] case, [the

16

court] is compelled to adopt a <u>reasonable, narrow construction</u>."
<u>Pritchett</u>, 404 F.3d. at 1235 (deciding that the plaintiff's
construction was the reasonable one) (emphasis added).

In considering the Act's legislative history, the Tenth
Circuit described such history as a helpful "interpretative"
tool. <u>Id.</u> The original language of the statute, as introduced
in the House, provided both for removal of cases "'commenced' on
or after the enactment date <u>and</u> . . . cases in which a class
certification order is entered on or after the enactment date."
<u>Id.</u> at 1235-36 (citing H.R. 516, 109th Cong. § 7 (2005))
(emphasis added). The latter portion was later dropped from the
Act, thus including only those cases <u>commenced after</u> enactment.
<u>Id.</u> at 1236 ("The Senate version and the final statute provided
only for application of the Class Action Fairness Act to civil
actions 'commenced' on or after the date of the Act.") (citation
omitted)). As the Tenth Circuit specified,

> It is thus clear that Congress initially started out
> with <u>broader language that could have included a number
> of then-pending lawsuits in state courts</u>. By excising
> the House provision, <u>Congress signaled an intent</u> to
> <u>narrow the removal provisions</u> of the Act to <u>exclude
> currently pending suits</u>.

<u>Id.</u> (emphasis added); <u>see id.</u> (citing 151 Cong. Rec. S1080 (daily
ed. Feb. 8, 2005) (statement of Sen. Dodd) ("[The Act] <u>does not
apply retroactively</u>, despite those who wanted it to. A case
<u>filed before the date of enactment</u> will be <u>unaffected</u> <u>by any
provision of this legislation</u>.") and 151 Cong. Rec. H753 (daily

ed. Feb. 17, 2005) (statement of Rep. Goodlatte) ("Since the
legislation is <u>not retroactive</u>, it would have absolutely no
effect on the 75 actions <u>already filed</u> against Merck in the wake
of the Vioxx withdrawal." (emphasis added)); <u>accord</u> <u>id.</u> (noting
that while "[o]rdinarily, individual floor statements are
entitled to little weight, . . . here, where they are <u>consistent</u>
<u>with</u> and <u>cast light upon the meaning</u> of a specific change in the
language between an earlier version of the bill and the final
Act, the <u>statements confirm our construction of the Act</u>."
(emphasis added)).

Finally, the Tenth Circuit fittingly observed that public
policy required an interpretation of "commenced" to mean the
filing in state court rather than the timely removal to federal
court.  It stated:

> Where the language of a statute is arguably ambiguous,
> courts also look to public policy considerations to
> cast further elucidation on Congress' likely intent.
> Here, <u>we are mindful of the fact that Defendant's</u>
> <u>argument</u>, if accepted, <u>could have serious consequences</u>
> <u>for both the federal judiciary and our colleagues on</u>
> <u>the state bench</u>.  Permitting the Act to apply to
> currently pending state suits would, in the words of
> the chairman of the Senate Judiciary Committee, "be
> <u>extraordinarily disruptive</u> of many State court
> proceedings."

<u>Id.</u> at 1237 (internal citations omitted, emphasis added).

Pfizer attempts to discredit <u>Pritchett</u> by suggesting that a
Tenth Circuit case is not binding on this Court and, further,
that the defendants in <u>Pritchett</u> had sought removal in an

18

untimely manner, namely after the "30 days after service of complaint" window had passed.  This Court, however, receives the Pritchett opinion as significant persuasive authority and, as discussed infra, does not believe that the timeliness of the removal from state court or the proximity in time to the enactment date are germane to this Court's interpretation of the statutory language.  Further, in reading Pritchett, one discerns that the Tenth Circuit articulated in no uncertain manner its general interpretation of the "commence" language as to any and all proceedings filed with the State Court prior to the effective date of the Act.

> We are mindful of the fact that Congress' goal in passing this legislation was to increase access to federal courts, and we also recognize that the Senate report instructs us to construe the bill's terms broadly.  But these general statements do not provide carte blanche for federal jurisdiction over a state class action any time the statute is ambiguous.  While it is clear the Congress wished to expand federal jurisdiction, when that expansion is made effective is what is at issue in this case, and that is an issue we approach cautiously.

Id. at 1237 n.6 (internal citations omitted, emphasis added).

### b.   Seventh Circuit

Recently, in Knudsen v. Liberty Mut. Ins. Co.,, Judge Frank H. Easterbrook, writing for the court, declared the Seventh Circuit's agreement with the Tenth Circuit's holding Pritchett. 411 F.3d. 805, 806 (7th Cir. 2005) ("[W]e agree with Pritchett v. Office Depot, Inc. that [section] 9 of the new Act must be taken seriously." (internal citation omitted)).  Judge Easterbrook

continued:[12]

> <u>Deconstructionist tactics do not permit [section 9's]</u>
> <u>evasion</u>.  The defendant in <u>Pritchett</u> contended that the
> notice of removal itself commenced a new case (the one in
> federal court).  <u>Rebuffing that effort to sidestep the</u>
> <u>legislative decision</u>, <u>Pritchett</u> concluded that a civil
> action is "commenced" for purposes of [section] 9 when it is
> <u>filed</u> in state court and <u>not</u> when some later step occurs in
> its prosecution.[13]

---

[12]Judge Easterbrook observed that a determination of whether
the Act applied was proper as "a federal court always has
jurisdiction to determine its own jurisdiction." <u>Knudsen</u>, 411
F.3d. at 808 (quoting <u>United States</u> v. <u>Ruiz</u>, 536 U.S. 622, 628
(2002)).

[13]Judge Easterbrook did go a step further in the decision,
indicating a slight broadening of the Seventh Circuit's
appearingly narrow interpretation of this language.  He wrote for
the court:
> [A] new claim for relief (a new "cause of action" in state
> practice), the addition of a new defendant, or any other
> step sufficiently distinct that courts would treat it as
> <u>independent for limitations purposes</u>, could well commence a
> new piece of litigation for federal purposes even if it
> bears an old docket number for state purposes.  Removal
> practice recognizes this point: an amendment to the
> pleadings that adds a claim under federal law (where only
> state claims had been framed before), or adds a new
> defendant, opens a new window of removal.  We imagine,
> though we need not hold, that a similar approach will apply
> under the . . . Act, perhaps modeled on Fed. R. Civ. P.
> 15(c), which specifies when a claim relates back to the
> original complaint (and hence is treated as part of the
> original suit) and when it is <u>sufficiently independent</u> of
> the original contentions that it must be treated as fresh
> litigation.
<u>Knudsen</u>, 411 F.3d. at 807 (internal citations omitted, emphasis
added). This language in <u>Knudsen</u> is being interpreted by
attorneys as "strongly suggest[ing] that there is a category of
cases which, although filed in state court before February 18,
2005, may nonetheless become removable under [the Act] based on
post-February 18th pleading amendments that add new defendants or
new causes of action." <u>See, e.g.</u>, O'Melveny & Myers LLP,
Electronic Class Action Alert, Seventh Circuit Suggests that
Amended Complaints May Trigger Removal Under Class Action
Fairness Act (June 9, 2005), <u>available at</u>

Id. (internal citations omitted, footnote and emphasis added).

The Seventh Circuit noted that "[e]quating filing with

commencement is the norm in civil practice" and "[a]lthough there

are a few exceptions . . . none applies here."  Id. (making clear

its view on removal as commencement, by stating that "a new

development in a pending suit no more commences a new suit than

does its removal") (emphasis added).[14]

### c. Pfizer Line of District Court Cases[15]

A number of judges have already rejected Pfizer's previous

attempts to urge the application of the Act to class actions in a

procedural posture identical to the matter here.  In Hankins v.

_____

http://www.omm.com/webdata/content/publications/client_alert_clas
s_action_2005_06_09.htm.  That issue is different from, and
beyond the scope of, the matter here.

[14]The Seventh Circuit stated that the case against Liberty
Mutual Life Insurance "has been ongoing" and ruled that "Liberty
Mutual Insurance Company cannot remove five years after this suit
was commenced just because a nonparty corporate sibling has been
mentioned in plaintiffs' latest papers.").  Id. at 806, 807-08
(explaining the distinguishable outcome should Liberty Mutual
Fire Insurance Company have been newly-added as Liberty Mutual
Fire Insurance Company "could enjoy a right to remove under the
2005 Act, for suit against it would have been commenced after
February 18, 2005." (second emphasis added)).

[15]Other district courts have addressed the Act generally, but
not specifically the "commence" language or the removal
provisions.  See Fears v. Wilhelmina Model Agency, Inc., No. 02-
Civ. 4911 (HB), 2005 WL 1041134, slip op. at *4 (S.D.N.Y. May 5,
2005) (unpublished opinion) (noting that, in the context of
attorneys fees, the Act "evidenced congressional desire to reform
the tort system and limit exorbitant attorneys' fees" and that
Congress "unequivocal[ly] . . . expanded federal diversity
jurisdiction."); Berry at 3-4 (discussing the burdens of proof as
to jurisdictional questions and removal pre- and post-Act).

<u>Pfizer, Inc.</u>, CV 05-1797 ABC (C.D. Cal. Mar. 25, 2005)
(unpublished opinion) (hereinafter "<u>Hankins</u>"), Judge Audrey
Collins of the United States District Court of the Central
District of California rejected Pfizer's attempt to remove the
case to federal court under the new Act.  Judge Collins first
cited the "strong presumption" against removal jurisdiction
generally.  <u>Id.</u> at 3 (citing <u>St. Paul Mercury Indem. Co.</u> v. <u>Red
Cab Co.</u>, 303 U.S. 283, 288-89 (1938)).  She then continued to
distinguish, <u>Hunt</u> v. <u>Transport Indem. Ins. Co.</u>, No. 90-00041 ACK,
1990 WL 192483 (D. Haw. Jul. 30, 1990) (unpublished opinion), a
case cited by Pfizer.  <u>Hankins</u> at 3 ("<u>Hunt</u> is not controlling
authority.  In any event, if this Court were to adopt similar
reasoning, this Court would construe [the Act] against removal
<u>such that the date of filing in state court controls</u>, given the
strong presumption against removal." (emphasis added)).  This is
persuasive; had Congress wished to have broadened the reach of
the removal provisions, it could have done so explicitly.[16]

    In <u>Smith</u> v. <u>Pfizer, Inc.</u>, 05-cv-0112-MJR (S.D. Ill. Mar. 24,
2005) (unpublished opinion) (hereinafter "<u>Smith</u>"), Judge Michael
Reagan, in the first of his two decisions on this issue,
indicated that Pfizer's claim in the alterative -- that the

---

[16]As noted <u>supra</u>, Congress actually <u>narrowed</u> the scope of the
Act by specifically removing from the scope of the Act's removal
jurisdiction provisions certain cases covered in the original
House version -- cases in which class certification was ordered
on or after the enactment date.

federal court had subject matter jurisdiction in light of the recent enactment of the Act -- lacked merit. <u>Smith</u> at 9-10 ("The Court <u>rejects</u> Pfizer's argument that 'commenced' means the date the case reached federal court (i.e. the date a case was removed) rather than the date the complaint was filed. Both a <u>plain reading</u> of the statute and the <u>legislative history</u> of the bill <u>indicate</u> that the jurisdictional amendments were <u>never intended to apply retroactively</u>." (emphasis added)). In <u>Lott</u> v. <u>Pfizer, Inc.</u>, 05-cv-0230-MJR (S.D. Ill. Apr. 7, 2005) (unpublished opinion) (hereinafter "<u>Lott</u>"), Judge Reagan once again rejected Pfizer's attempt to argue removal was proper under the new class action act. Judge Reagan's strict interpretation of the Act is evident:[17]

> The Court rejects Pfizer's argument based on the provisions of the Class Action Fairness Act. Those provisions apply <u>only to civil actions commenced on or after the date the Act was enacted</u>. Plaintiffs commenced this civil action by filing their complaint in [state court] on February 17, 2005. The Class Action Fairness Act was not "enacted" <u>until the following day – February 18, 2005.</u>

---

[17]This also lends support to the little weight this Court gives to Pfizer's argument that its timely removal of the case within "30 days of service" of the complaint should play a role in this Court's statutory interpretation. Considering the language of the Act together with the legislative history, this Court agrees with the district and circuit decisions in <u>Pritchett</u>, and the circuit decision in <u>Knudsen</u>, and believes there does not exist any indication for an exception for cases here, namely those filed with the state court prior to the enactment date but removed by a defendant within thirty days after such filing, as urged by Pfizer at oral argument. Tr. at 6-7.

<u>Id.</u> at 4 (ruling that a difference of as little as <u>one day</u> between the date of filing of a complaint and the Act's enactment date was insufficient to confer jurisdiction on federal courts) (emphasis added).

### d.  Other District Court Cases

In <u>Bush</u> v. <u>Cheaptickets, Inc.</u>, CV05-2285 PA at 3 (C.D. Cal. May 9, 2005) (unpublished opinion) (hereinafter "<u>Cheaptickets</u>"), Judge Peggy Anderson held that "commence" in every sense of the word means at the time a case "begins," namely, with the filing in state court.  As Judge Anderson explained, **"**[a] lawsuit does not 'begin' on the date it is removed to federal court; <u>it is already pending by that time</u>."  <u>Id.</u> at 3 (noting that Congress specifically narrowed the scope of the Act to eliminate federal jurisdiction over those cases in which classes were certified after the date of enactment) (emphasis added).  In light of the legislative history and the language of the Act, Judge Anderson expressly agreed with the Tenth Circuit in <u>Pritchett</u> and held that federal subject matter jurisdiction was lacking.

In <u>Sneddon</u> v. <u>Hotwire Inc.</u>, No. C05-0951-53-SI, 2005 WL 1593593, slip op. at *3 (N.D. Cal. June 29, 2005), decided a few weeks ago, Judge Susan Illston likewise held that "commencement" means the date of filing a case in state court.  <u>Id.</u> at *2 (noting that "all courts which have addressed this issue under [the Act] have [so] held").  Judge Illston expounded that "[s]tatutory definitions of 'commencement' support this view."

Id. (noting that this comports with the meaning of the word in
the Federal Rules of Civil Procedure as well as legislative
history).  "Serendipitously," noted Judge Illston, "logic also
supports this view: since an action can only be commenced once,
it cannot commence at the time of removal . . . ." Id. (citing
Cheaptickets at 3) which noted that a case "is already pending"
at the time of removal) (emphasis added).

In In re Expedia Hotel Taxes and Fees Litig., C05-0365C
(W.D. Wash. Apr. 15, 2005) (involving the consolidation of
cases), Judge John C. Coughenour likewise ruled that one ought
defer to state law to define the word "commence," noting that
this was consistent with Ninth Circuit precedent.  Id. at 3
(acknowledging that Washington state law defines "commencement"
as the time of filing).

### 2.  Case Law Interpreting Congressional Use of the Word "Commence" in Other Jurisdictional Statutes

All of the cases that have considered the question before
this Court have determined that a class action is commenced as of
the date of filing with the state court.  Pfizer urges this Court
to consider courts' antecedent interpretations of the word
"commence" in other jurisdictional statutes.

Pfizer argues that a "wealth of authority holds that a
jurisdictional statute, applicable only to actions 'commenced on
or after' the effective date, applies to actions removed to
federal court after the effective date, even though the action

25

was filed in state court before the effective date."  Pfizer

Notice of Removal [Civ. A. No. 05-10590 Doc. No. 1] at 5 (citing,

among other cases, Cedillo v. Valcar Enters., 773 F. Supp. 932

(N.D. Tex. 1991), Hunt, and Lorraine Motors, Inc. v. Aetna Cas. &

Sur. Co., 166 F. Supp. 319 (E.D.N.Y. 1958)); Pfizer Notice of

Additional Supreme Court Authority [Civ. A. No. 05-10590 Doc. No.

17; Civ. A. No. 05-10591 Doc. No. 15] (emphasizing the June 23,

2005, Supreme Court decision in Exxon Mobil Corp. v. Allapattah

Servs., Inc., 125 S. Ct. 2611 (2005) (holding that 28 U.S.C. §

1367, the statute governing supplemental jurisdiction, broadened

the jurisdiction of the federal courts)).

Pfizer urges that the historical precedent establishes

"clearly" that "commenced" means removal to federal court.  Tr.

at 2, 4 (urging repeatedly that "the majority of Courts" have

interpreted "commence" to mean removal to federal court).  Judge

Krieger, in her proemial, pacesetting decision, cogently

addressed this "historical interpretation of the word commence in

jurisdictional statutes" -- the argument now urged by Pfizer.[18]

Pritchett, 360 F. Supp. 2d at 1177-1179 (reviewing the

conflicting decisions in Abernathy v. Consolidated Cab Co., 169

F. Supp. 831 (D. Kan. 1959), Kieffer v. Travelers Fire Ins. Co.,

167 F. Supp. 398 (D. Md. 1958), and Lorraine Motors, 166 F.

Supp. 319, in connection with the 1958 amount in controversy

_____

[18]Pfizer placed great emphasis on this reasoning during oral
argument before this Court. Tr. at 1-4, 13-14.

amendments, and the conflicting decisions in <u>Hunt</u>, <u>Sayers</u> v. <u>Sears, Roebuck and Co.</u>, 732 F. Supp. 654 (W.D. Va. 1990), <u>Rhinehart</u> v. <u>Cincinnati Inc.</u>, 716 F. Supp. 7, 8 (E.D. Mich. 1989), and <u>Nolan</u> v. <u>Boeing Co.</u>, 715 F. Supp. 152 (E.D. La. 1989), in connection with the 1988 amount in controversy amendments).

Judge Krieger observed that the case law interpreting the word "commenced" was "ambiguous" at best. <u>Pritchett</u>, 360 F. Supp. 2d at 1179. She followed the cardinal maxim of statutory interpretation that a court is to refer to the legislative intent should any ambiguity exist. <u>Id.</u> (citing <u>U.S.</u> v. <u>McNab</u>, 331 F. 3d 1228, 1238 (11th Cir. 2003) for the salient convention that a court, interpreting an unclear statute, may refer to statutory purpose, committee discussions and reports, accepted and attempted amendments, and statements during debates).

This Court also finds extremely persuasive the fact that the Tenth Circuit in <u>Pritchett</u>[19] explicitly distinguished <u>Hunt</u> and

---

[19]While, as Pfizer's counsel ably argued, <u>Pritchett</u> may be factually distinguishable from this case, Tr. at 6-7, this Court must interpret the law impartially and objectively. The facts of individual cases do not affect the manner or outcome of its statutory interpretation.

Lorraine Motors and rejected any analogy[20] between that line of cases and the matter before this Court:

> Defendant argues that there are several district court opinions that adopt its broader view of commencement. Neither of these cases deal directly with the statute in question, which was passed only several weeks ago. Thus, the cases are relevant only by analogy.  Even then, their persuasive value is diluted, as Plaintiff points out, by the presence of contemporaneous contrary authority from other federal district courts.
>
> Moreover, the courts' reasoning in Lorraine Motors and Hunt actually supports Plaintiff's interpretation of the term "commenced."  Although the courts were interpreting statutory language that is identical to the disputed provision in the instant case, there is a major difference between a statute that defines additional circumstances in which diversity of citizenship exists (such as the Class Action Fairness Act) and a statute that increases the amount-in-controversy requirement.  The latter attempts to restrict federal court jurisdiction, while the former attempts to expand it.  Both Hunt and Lorraine Motors rely heavily upon the principal that removal statutes are to be strictly construed, with all doubts resolved against removal.  Thus, in those cases, interpreting the term "commenced" as referring to the filing of the removal petition would serve that aim by restricting the number of preexisting state claims that could be removed.  In contrast, such an interpretation here would actually permit broader federal court jurisdiction by increasing the number of removable actions.  Given this, we remain convinced that "commenced" in the Act refers to the initial filing, not the removal date.

---

[20]The Tenth Circuit found no merit in the argument that Pfizer makes here, as case law exists directly opposing the argument that in jurisdictional cases a case is "commenced" upon removal to federal court.  Pritchett, 404 F.3d at 1237 (citing Kieffer, 167 F. Supp. at 402 as "holding that action is 'commenced' on initial filing date in state court and declining to impose higher amount-in-controversy requirement imposed prior to removal" and Rhinehart, 716 F. Supp. at 8 as holding the same).

<u>Pritchett</u>, 404 F.3d at 1237-38 (citing <u>Kieffer</u>, 167 F. Supp. at
402 and <u>Rhinehart</u>, 716 F. Supp. at 8 and explicitly holding that
a case is "commenced" on the date of filing with state court)
(internal citations and footnotes omitted, emphasis added).  As
initially foreshadowed during oral argument, Tr. at 12,[21] this
Court, after careful reflection and analysis, believes the more
persuasive argument to be that of Natale and Kwaak, namely that
such historical precedent addressed increases in the amount in
controversy provisions of diversity jurisdiction rather than the
scope of jurisdiction as this Court here considers.

### D.    Conclusion

As Judge Krieger stated:

> [S]everal additional reasons . . . compel the Court's result
> here.  First, the Court finds that such a conclusion gives
> the most natural reading to the plain meaning of the term
> "commenced" . . . .  [T]he most common definition of [the]
> word "commenced" refers to the beginning of an undertaking.
> This is the manner in which Fed. R. Civ. P. 3 uses the word,
> defining that "a civil action is commenced by filing of a
> complaint with the court."  To read the word "commenced" in
> the context of the Act to refer to the filing of a Notice of
> Removal would require a strained reading of the word in both
> the colloquial and legal sense.
>
> Second, the Court notes that although <u>Lorraine Motors</u> may
> reflect the general trend of authority with regard to the
> interpretation of the word "commenced" when Congress adjusts
> the amount in controversy requirement of 28 U.S.C. § 1332,
> the reasoning of that line of cases is not helpful in this

---

[21] In its recent opinion in <u>Miara</u> v. <u>First Allmerica Fin.
Life Ins. Co.</u>, -- F. Supp. 2d. --, 2005 WL 1463299 (D. Mass. June
16, 2005) at *39 n.57, this Court emphasized the invaluable
contribution and incalculable assistance provided to it in its
administration of justice by United States Court Reporters, and
in particular the court reporter assigned to this session.

circumstance.  A central theme underlying that line of
reasoning is that the increase in the jurisdiction threshold
represented a Congressional intent to successively <u>restrict</u>
the scope of federal jurisdiction.  Consequently, it was
reasonable for these courts to interpret the term
"commenced" in such a way as to give effect to that
Congressional intent.  Here, the general purpose of the Act
is to <u>broaden</u> federal jurisdiction in class actions.  <u>The
rationale giving effect to a Congressional intent to limit
federal jurisdiction is thus not applicable</u>.[22]

<u>Pritchett</u>, 360 F. Supp. 2d at 1180 (emphasis added in part).

     This Court fully concurs with Judge Krieger, who summarized

correctly "it <u>offends reason to permit the removal of a case</u>

<u>where the current requirements of diversity jurisdiction were not</u>

<u>present at the time the case was first filed in state court</u>."

<u>Id.</u> (citing the holding in <u>Sayers</u>, 732 F. Supp. at 656) (internal

quotations omitted, emphasis added); <u>see</u> <u>Hankins</u> at 3 ("Because

the [r]emoving Defendants <u>cannot rely on diversity conferred by</u>

<u>[the Act], which was not enacted at the time the State action was</u>

<u>filed</u>, [r]emoving Defendants must demonstrate diversity

jurisdiction according to 28 U.S.C. § 1332(a).") (emphasis

added).  It also agrees that the ramifications of such a

statutory interpretation would indeed be immense, and would

_____

     [22]Judge Krieger also noted the "apparent paradox" created by
interpreting the Act to broaden federal jurisdiction yet
rejecting <u>Lorraine Motors</u> which, if one were to assume its
interpretation of the word "commence," would likewise broaden
jurisdiction.  <u>Pritchett</u>, 360 F. Supp. 2d at 1180 n.5.  This is
reconciled and "that paradox vanishes once one recognizes that
although Congress generally intended the Act to broaden federal
jurisdiction, it also maintained a specific intention to apply
the Act only prospectively."  <u>Id.</u>

defeat the purpose of having a "gradual, incremental flow of newly-filed class actions that would result from a purely prospective application of the Act." Pritchett, 360 F. Supp. 2d at 1180.

This Court rules that a case is "commenced" for purposes of the Class Action Fairness Act when it is filed with the state court. This decision is supported by a "natural reading" of the statutory language[23] together with the lack of support in the legislative history demonstrating that the Act was to be in any way retroactive to a case already filed in the state court, no matter how close in time such filing was to the enactment of the new law. See Lott at 4 (holding that filing a class action in state court one day before the signing of the Act into law was sufficient to preclude the application of the Act)

**III. Kwaak's Motion to Remand on Pfizer's Alternative Grounds**

Pfizer argues, in the alternative, that the plaintiffs' claims in the Kwaak matter satisfy the amount in controversy so

---

[23] Berry at 6-7 (discussing the language of the Act, noting that "a statute cannot address all possible outcomes and situations, and language inevitably contains some imprecision; where the text does not provide a clear answer, a faithful interpretation of the statute necessarily involves more than the text itself . . . . [I]f legislative intent is clearly expressed in Committee Reports and other materials, judicial disregard for the explicit and uncontradicted statements contained therein may result in an interpretation that is wholly inconsistent with the statute that the legislature envisioned . . . . [T]he role of the Court is to faithfully implement the law as intended by the Legislature. In these circumstances, the legislative history is a proper tool of statutory interpretation.")

as to establish diversity jurisdiction.  Mem. in Opp'n to Remand to State Court [Civ. A. No. 05-10591 Doc. No. 12] at 14 ("Pfizer Mem.").  Pfizer argues that Kwaak seeks disgorgement in excess of $75,000.  Id.  Though Pfizer argues that the law is "well settled" as to the aggregation of claims for purposes of fulfilling the amount in controversy requirement, Charles Alan Wright and Arthur Miller, among other commentators, indicate that "[t]he rules relating to aggregating multiple claims to satisfy the amount in controversy requirement are in a <u>very unsatisfactory state</u>."  14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3704 (3d ed. 2005) (emphasis added).

Kwaak argues that diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) is lacking.  Kwaak Mem. at 12.  She denies that the amount in controversy for purposes of diversity jurisdiction is satisfied here because the class members' individual claims can be aggregated and argues that "[t]he Supreme Court has made crystal-clear that in class actions the claims of individual class members cannot be aggregated for the purpose of satisfying the 'amount in controversy' required for diversity jurisdiction, i.e., the requirement must be met by <u>each individual member of the plaintiff class</u>."  <u>Id.</u> (citing <u>Snyder</u> v. <u>Harris</u>, 394 U.S. 332, 336-337 (1969), and <u>Zahn</u> v. <u>International Paper Co.</u>, 414 U.S. 291, 300-301 (1973)) (emphasis added).  Kwaak notes that the District of Massachusetts naturally conforms to this position.

Id. (citing Ciardi v. F. Hoffman-LaRoche Ltd., No. Civ.A. 99-11936-GAO, 2000 WL 159320 at *2 (D. Mass. 2000) (O'Toole, J.) (unpublished opinion), and Hairston v. Home Loan and Inv. Bank, 814 F. Supp. 180, 181 & n.1 (D. Mass. 1993) (Tauro, J.)).

Kwaak emphasizes that the exception allowing aggregation of claims applies where "members of a proposed class assert 'a single title or right, in which they have a common and undivided interest." Id. at 12-13 (citing Zahn, 414 U.S. at 294) (emphasis added).  The Eleventh Circuit in Morrison v. Allstate Indem. Co., Kwaak highlights,  stated that having a "common and undivided interest" is "rather uncommon, existing only when the defendant owes an obligation to the group of plaintiffs as a group and not to the individuals severally."  228 F.3d at 1255, 1262 (11th Cir. 2000) (emphasis added).  In other words, emphasized the Eleventh Circuit, "[i]f the claims are derived from rights that [class members] hold in group status, then the claims are common and undivided.  If not, the claims are separate and distinct."  Id. (quoting Eagle v. American Tel. and Tel. Co., 769 F.2d 541, 546 (9th Cir. 1985)) (emphasis added).

Kwaak also notes that the creation of a common fund does not automatically render the plaintiffs' interests common.  Kwaak Mem. at 13.  As the Second Circuit has stated, "[i]t is of course commonplace to collect class action damages wholesale, put the proceeds in a single fund, and distribute the proceeds retail upon a showing of specific entitlement in accordance with the

33

judgment." Kwaak Mem. at 13 (quoting <u>Gilman</u> v. <u>BHC Sec., Inc.</u>,
104 F.3d 1418, 1427-1428 (2d Cir. 1997) (emphasizing that the
creation of such a fund "has nothing necessarily to do with
whether the plaintiffs shared a pre-existing (pre-litigation)
interest in the subject of the litigation")).  As echoed by the
Eleventh Circuit, "it is the <u>nature of the right asserted</u>, <u>not</u>
<u>that of the relief requested</u>, that determines whether the claims
of multiple plaintiffs may be aggregated." <u>Morrison</u>, 228 F.3d at
1264 (emphasis added).

In light of this case law, Kwaak contends that
"[a]ggregation is therefore inappropriate in disgorgement cases
where the claims of the class members arise from their individual
transactions with defendant, such that they would be able to
assert individual claims for relief." Kwaak Mem. at 13; <u>Gilman</u>,
104 F.3d at 1426 (deeming aggregation inappropriate in a
securities class action suit because the disgorgement claim was
designed to recover "payments received in respect of their
<u>individual</u> transactions, as accurately as that amount can be
calculated" (emphasis added)); <u>In re Ford Motor Co./Citibank</u>
<u>(South Dakota), N.A.</u>, 264 F.3d 952, 961 (9th Cir. 2001)
(rejecting aggregation of claims seeking disgorgement of billions
of dollars for "ill-gotten benefits" arising out of the
cancellation by defendants of a credit card rebate program, and
narrowing the issue to "whether the plaintiffs' claims are
consistent with a demand for damages based on their <u>individual</u>

34

<u>transactions</u> with the defendants." (internal quotation marks, citation, and alteration omitted, emphasis added); <u>Gattegno</u> v. <u>Sprint Corp.</u>, 297 F. Supp. 2d 372, 378 (D. Mass. 2003) (Keeton, J.) (rejecting, in a matter involving a common fund, the approach that the claims of wireless telephone customers alleging they were overcharged and stating "[t]he focus <u>should not be on the type of relief requested</u>, but rather on the <u>nature and value of the right asserted</u> . . . . [T]he issue turns <u>not</u> on whether the plaintiffs seek a 'common fund,' but on whether plaintiffs bring this case based in <u>individual</u> claims or in an <u>indivisible, common claim</u>." (internal citations omitted, emphasis added)); <u>id.</u> (noting that the claims were based on individual contracts with the defendant); <u>Pierson</u> v. <u>Source Perrier, S.A.</u>, 848 F. Supp. 1186, 1188 (E.D. Pa. 1994) (noting, in a case seeking disgorgement for misrepresentations regarding bottled water products, that the determination rested on the "<u>nature and value of the rights</u> that [plaintiffs] have asserted" and that disgorgement is simply "a means of obtaining money damages"); <u>see also</u> <u>Morrison</u>, 228 F.3d at 1264 (overturning a district court's decision to aggregate claims because, though an unjust enrichment claim, the claims resulted "from the defendants' alleged breach of <u>individual</u> insurance policies." (emphasis added)); Kwaak Mem. at 15-16 (collecting additional cases ruling aggregation inappropriate due to the existence of "separate and distinct" claims).

Kwaak convincingly argues here that plaintiffs here "were not defrauded <u>as a group</u> and <u>did not overpay as a group</u>." <u>Id.</u> at 16 (emphasis added). Each member of the class here "engaged in separate, distinct and individual purchases of a consumer product, each was entitled to sue defendant separately, and each can only recover to the extent of his or her loss." <u>Id.</u>; <u>see also</u> <u>Campbell</u> v. <u>General Motors Corp.</u>, 19 F. Supp. 2d 1260, 1268 (N.D. Ala. 1998) (holding that "unjust enrichment remedies do not provide a generalized recovery of a fixed fund for the class. Instead each plaintiff is entitled to defendants' profits which resulted from the wrongdoing to that particular plaintiff.").

It is important to address one of Pfizer's primary arguments, namely that Kwaak seeks disgorgement of <u>all</u> profits rather than individual damages. Pfizer Mem. at 18-19. Kwaak successfully refutes these repeated assertions made by Pfizer. Kwaak's First Amended Complaint is explicit:

> (1.) "Pfizer has sold millions of dollars in Listerine which it would not have otherwise sold had it made the proper disclosures, and it has been unjustly enriched at the expense of <u>Plaintiff and the class members</u>."

> (2.) "<u>Plaintiff and the class members</u> have conferred a benefit on Pfizer, and Pfizer has knowledge of this benefit and has <u>voluntarily accepted and retained the benefit conferred on it</u>."

> (3.) "Pfizer will be unjustly enriched if it is allowed to retain <u>such</u> funds [the "benefit" conferred by class members] and the Class is entitled to disgorgement of the <u>amount by which Pfizer has been unjustly enriched</u>."

Kwaak First Am. Compl. [Civ. A. No. 05-10591 Doc. No. 1 Attach.

1] ¶¶ 3, 71, 73 (emphasis added); Kwaak Reply Mem. [Civ. A. No. 05-10591 Doc. No. 14] at 6-7.

Pfizer relies heavily[24] on Berman v. Narragansett Racing Assoc., 414 F.2d 311, 315 (1st Cir. 1969) (involving purse winners who, as a group, claimed they were entitled to a certain percentage of the money wagered), where the court held that the interest was "common and undivided" so as to make aggregation proper. Kwaak distinguishes Berman, Kwaak Mem. at 15, as did Judge Keeton in Gattegno, 297 F. Supp. 2d at 378. Judge Keeton correctly noted that Berman did not involve individual agreements between the class members and the defendants. Id. Rather, Berman involved a "purse agreement" to pay annually, in the aggregate, "to the group of owners whose horses win purses." 414 F.2d at 313, 315 (noting that "no contractual rights [were] created between the defendants and the individual pursewinners" (emphasis added)).

Pfizer also relies on Durant v. Servicemaster Co., 147 F.

_____

[24]Pfizer also cites Judge Walter Jay Skinner's opinion in Ingerson v. Sharp, 423 F. Supp. 139, 142 n.2. (D. Mass. 1976) (relying on Berman v. Narragansett Racing Assoc., 414 F.2d 311 (1st Cir. 1969) discussed infra) in which Judge Skinner stated that "several plaintiffs need not hold their claims jointly so long as they assert 'an integrated right against the defendant.' An important element of the approach is that the defendants' total liability remain the same no matter how the 'fund' is apportioned." Judge Skinner's decision, however, was subsequently vacated by the First Circuit without opinion, substantially detracting from any persuasive value this Court would have ascribed it. Ingerson v. Sharp, 582 F.2d 1269 (1st Cir. 1978).

Supp. 2d 744, 749-51 (E.D. Mich. 2001), <u>Aetna U.S. Healthcare, Inc.</u> v. <u>Hoechst Aktiengesellschaft</u>, 48 F. Supp. 2d 37, 41 (D.D.C. 1999), <u>In re Microsoft Corp. Antitrust Litig.</u>, 127 F. Supp. 2d 702, 720-721 (D. Md. 2001), and <u>Gavriles</u> v. <u>Verizon Wireless</u>, 194 F. Supp. 2d 674 (E.D. Mich. 2002), for the proposition that where disgorgement is involved, removal and federal jurisdiction are proper. In <u>Gavriles</u>, argues Pfizer, Judge Gerald E. Rosen explained in dicta why the disgorgement claim in its view was a claim of a "common and undivided interest" in the defendant's profits:

> Disgorgement is an equitable remedy to force defendant to give up the <u>amount equal to the defendant's unjust enrichment</u> . . . . . A claim for disgorgement, if successful, results in a <u>pool of money</u> available for the plaintiffs. The <u>proceeds</u> from disgorgement are <u>not directly related</u> to <u>each plaintiff's actual damages</u> and would be distributed to plaintiffs who remained a party to the action.

<u>Id.</u> at 681. Pfizer argues that, as in <u>Durant</u>, "all putative class members have a 'common and undivided interest'" in Pfizer's profits because "one [class member's] failure to collect his share would result in a larger share for each remaining [class member]." Pfizer Mem. at 17 (relying on <u>Aetna</u>, 48 F. Supp. 2d at 41, for support of its argument that failure of one plaintiff to collect would not result in a decrease in the amount disgorged) (citation omitted, alteration in original). Pfizer argues further that in <u>Gilman</u>, the complaint specifically sought disgorgement based on "each individual customer's order" rather

than a disgorgement of all profits.  Id. at 18 (internal
quotation marks and citation omitted).

The case here is, however, identical to Gilman.  It is
evident to the Court based on Kwaak's First Amended Complaint and
filings with this Court that Kwaak seeks disgorgement of the
benefit conferred upon Pfizer by Kwaak and the class members, not
the disgorgement of all profits.  Kwaak successfully
distinguishes, therefore, Durant, Aetna, and Microsoft, and
substantially weakens Pfizer's argument.  Kwaak also properly
distinguishes Pfizer's citation to cases where plaintiffs sought
disgorgement of a "specific, identifiable fund,"  Kwaak Mem. at
17-18; Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft,
54 F. Supp. 2d 1042, 1049 (D. Kan. 1999) (stating that "[t]he
fact that plaintiffs seek disgorgement of the entire fund is not
dispositive of the issue.  The proper focus should . . . [be]
upon the nature and the value of the rights that they have
asserted."  (internal quotation marks and citation omitted)).

Likewise persuasive to this Court is a statement from Judge
Joseph E. Irenas of the District of New Jersey in Bishop v.
General Motors Corp., in which he writes that the "paradigm
cases" allowing aggregation "are those which involve a single
individual res, such as an estate, a piece of property (the
classic example) or an insurance policy.  These are matters that
cannot be adjudicated without implicating the rights of everyone
involved with the res."  925 F. Supp. 294, 298 (D.N.J. 1996)

(emphasis added).

This Court holds that federal jurisdiction is, here, likewise improper (1) in light of the persuasiveness of the decisions in, among other cases, <u>Gattegno</u>, <u>Ford Motor</u>, and <u>Pierson</u>, (2) given that the First Circuit decision in <u>Berman</u> is distinguishable as there a "group" was seeking disgorgement, and (3) given that the cases Pfizer largely relies upon are distinguishable as Kwaak does not seek disgorgement of all profits, but rather only the benefit conferred upon Pfizer by Kwaak and the class members

## IV.  Attorney's Fees and Costs

Natale and Kwaak argue that given Pfizer's "improper" removal, this Court ought grant them costs and attorneys' fees under 28 U.S.C. § 1447(c), which allows this Court to order Pfizer to pay "just costs and any actual expenses, including attorney fees incurred as a result of the removal."  Natale Mem. at 13 (noting accurately that such award is a "matter for the exercise of the sound discretion of the court" (citations omitted)); Kwaak at 19-20 (asserting that it "should not be forced to foot the bill for Pfizer's baseless and irresponsible removal of this case.").  Natale notes that "the purpose of such an award is not to punish defendants, but rather to reimburse plaintiffs for unnecessary litigation costs."  Natale Mem. at 13. Natale additionally argues as "Pfizer has itself tried this same removal argument in three separate cases and had it rejected each

time . . . . Plaintiff should not be forced to foot the bill for
Pfizer's irresponsible removal of this case."  Id. at 14.

This gives this court reason to pause.  On the one hand,
Pfizer should have the latitude to assert, and seek to determine,
its legal rights in various jurisdictions and seek interpretation
of this new Act, particularly given its recent enactment.  On the
other hand, Pfizer's argument has been repeatedly, this being at
least the fourth time, rejected by the federal courts.[25]  Though
this Court disagrees with Pfizer's characterization and assertion
that the grant of attorneys' fees and costs of this Court would
go against the "clear majority" of decisions and is not the
"sounder" view, Pfizer Mem. at 19-20, Pfizer persuades this Court
that its legal argument and position are "fairly supportable" or,
at a minimum, at least worthy of judicial consideration[26] in an
area where the interpretation of a new law may be said to be
"less than clear."  Alexander v. A.P. Green Indus. Inc., 44 F.
Supp. 2d 368, 374 (D. Me. 1999).  An award of fees and costs,
accordingly, would be improper.

---

[25]As discussed supra, the argument has been rejected once by
Judge Collins and twice by Judge Reagan.

[26]This Court's determination here is in line with the circuit
and district interpretations to date.  Should other courts
similarly interpret the "commence" statutory language, Pfizer's
latitude to seek judicial interpretation without being held
responsible for attorneys' fees and costs may narrow in the
future.

**V.    Certification to the First Circuit Court of Appeals**[27]

28 U.S.C. § 1292(b) provides, in pertinent part, that:

> [w]hen a district judge, in making in a civil action an
> order not otherwise appealable . . . shall be of the opinion
> that such order involves a <u>controlling question of law</u> as to
> which there is <u>substantial ground for difference of opinion</u>
> and that an immediate appeal from the order may <u>materially</u>
> <u>advance the ultimate termination of the litigation</u>, he shall
> so state in writing in such order.  The Court of Appeals
> which would have jurisdiction of an appeal of such action
> may thereupon, in its discretion, permit an appeal to be
> taken from such order, if application is made to it within
> ten days after the entry of the order.

28 U.S.C. § 1292(b) (emphasis added).  The First Circuit has

explained that

> [o]nly rare cases will qualify for the statutory anodyne;
> indeed, it is apodictic in this circuit that interlocutory
> certification of this sort 'should be used sparingly and
> only in exceptional circumstances, and where the proposed
> intermediate appeal presents one or more difficult and
> pivotal questions of law not settled by controlling
> authority.

<u>In re San Juan Dupont Plaza Hotel Fire Litig.</u>, 859 F.2d 1007,

1010 n.1 (1st Cir. 1988) (quoting <u>McGillicuddy</u> v. <u>Clements</u>, 746

F.2d 76, 76 n.1 (1st Cir. 1984)).

This Court had recent occasion to certify another important

and controlling question of law to the First Circuit Court of

Appeals in <u>Miara</u> v. <u>First Allmerica Fin. Life Ins. Co.</u>,  -- F.

---

[27]The Class Action Fairness Act has an express provision for
interlocutory appeal of remand orders.  28 U.S.C. § 1453(c)(1).
Here, however, having held that these cases are not subject to
that Act, consideration of interlocutory appeal prescinds from
traditional standards.

Supp. 2d --, 2005 WL 1463299 (D. Mass. Jun 16, 2005).[28]  While
one of the defendants in <u>Miara</u> requested this Court consider
certifying the question of law under section 1292(b), here the
court considers certification <u>motu proprio</u>.  This Court once
again believes this matter "involves a controlling question of
law as to which there is substantial ground for difference of
opinion and that an immediate appeal from [this] order may
materially advance the ultimate termination of the litigation."
28 U.S.C. § 1292(b).

As in <u>Miara</u>, 2005 WL 1463290 at *39, "[t]he matter here is
'sufficiently . . . important,' <u>San Juan Dupont</u>, 859 F.2d at 1010
n.1, 'constitutes an open question[,] and . . . the litigation
would benefit from prompt resolution of th[e] question.'
<u>Camacho</u> v. <u>Puerto Rico Ports Auth.</u>, 369 F.3d 570, 573 (1st Cir.
2004)."  The Court here interprets not only a new law, but "'an
important and unsettled question of controlling law.'"   <u>In re</u>
<u>Bank of New England Corp.</u>, 218 B.R. 643, 650 (B.A.P. 1st Cir.

---

[28]As this Court stated in <u>Miara</u>:
This Court appreciates that section 1292(b) certification
"should be used sparingly and only in exceptional
circumstances."  <u>Stone ex. rel. Estate of Stone</u> v. <u>Frontier</u>
<u>Airlines, Inc.</u>, 256 F. Supp. 2d 28, 47 (D. Mass. 2002)
(denying Section 1292(b) certification); <u>Fierro</u> v. <u>I.N.S.</u>,
81 F. Supp. 2d 167 (D. Mass. 1999) (certifying under section
1292(b) in the interest of judicial economy and efficiency
primarily because, there, the matter properly should have
been brought before the Court of Appeals in the first
place).
Certain instances, however, warrant section 1292(b)
certification.
2005 WL 1463299 at *38 n.53.

1998)(quoting <u>United States</u> v. <u>Sorren</u>, 605 F.2d 1211, 1213 (1st Cir. 1979)); <u>Miara</u>, 2005 WL 1463299 at *39.  Further, case law to date demonstrates marked litigant confusion and disagreement in this area, thus providing good reason for the First Circuit expeditiously to address this issue.  This litigation, as well as class action lawsuits filed within the state and federal courts within this Circuit, would certainly "benefit from prompt resolution" of this question.[29]

While this Court holds that "commenced" means the filing of a case in the state court, this Court's interpretation of the Act has persuasive value only, and a binding interpretation from the First Circuit now will clarify this issue and avoid confusion in this circuit in the application of this new and potentially far-reaching law. While timely resolution and remand is always ideal, this Court is of opinion that the issue here warrants a section 1292(b) interlocutory appeal and that certification to the United States Court of Appeals for the First Circuit is appropriate.

Therefore, pursuant to 28 U.S.C. § 1292(b), Pfizer shall have ten (10) days from the date of the entry of this Memorandum and Certification to appeal to the Court of Appeals for the First Circuit.  The controlling question of law worthy of First Circuit

---

[29]As would, of course, other circuits, given the value of a First Circuit decision on this issue as demonstrated by the value of the decisions of the Seventh and Tenth Circuits on this matter, and in light of the predictable increase in state class action lawsuits removed to federal court seeking judicial interpretation of section 9 of the Act.

review and certified to the First Circuit is: under section 9 of the Class Action Fairness Act of 2005, is a civil action "commenced" on the date a class action complaint is filed by a plaintiff in the state court or on the date a case is removed by a defendant to the federal court?

Pfizer is ordered to provide notice of such appeal, if any, to this Court.  The First Circuit may then exercise its statutory discretion to allow an immediate, interlocutory appeal with respect to the controlling question of law.  28 U.S.C. §§ 1292(b) and (c)(1).  If Pfizer opts not to appeal in the statutory ten-day period, or if the First Circuit, in its rightful discretion, declines to entertain this certification, this Court will promptly remand Natale's and Kwaak's actions to the Massachusetts Superior Court sitting in and for the County of Suffolk for appropriate resolution of such claims on the merits.

## VI.  Conclusion

### A.  Natale's and Kwaak's Motions to Remand Based on the Class Action Fairness Act

This Court rules that a case is "commenced" for purposes of the Class Action Fairness Act when it is filed with the state court.  As such, this Court would allow both Natale's and Kwaak's Motions to Remand.  Given that this matter, however, involves a controlling issue of law, as explained supra this Court certifies the following question to the United States Court of Appeals for the First Circuit: Is a civil action "commenced" under Section 9 of the Class Action Fairness Act of 2005 on the date a class action complaint is filed by a plaintiff in the state court or on the date a case is removed by a defendant to the federal court? Should Pfizer opt not to pursue an appeal, or should the First Circuit decline to exercise its discretion, this Court will promptly remand the matters to the Middlesex Superior Court.

### B.  Kwaak's Motion to Remand Based on Class Action Fairness Act and Alternative Grounds

This Court rules that diversity jurisdiction on Pfizer's alternative grounds, namely disgorgement and aggregation of claims to satisfy the amount in controversy, lacks merit and that federal jurisdiction is improper.

### C.  Attorneys' Fees and Costs

This Court denies Natale's and Kwaak's request for attorneys' fees and costs.

46

SO CERTIFIED AND ORDERED.


/s/ William G. Young
_____

    WILLIAM G. YOUNG
    CHIEF JUDGE